**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| YVONNE APODACA, on behalf of herself and all others similarly situated, | ) ) | No. _____ |
| | ) | Judge _____ |
| Plaintiff, | ) ) | |
| | ) | CASE BELOW: |
| v. | ) | Second Judicial District |
| | ) | County of Bernalillo |
| YOUNG AMERICAN INSURANCE COMPANY, | ) ) | New Mexico Case No.  D-202-CV-2018-01469 |
| | ) | |
| Defendant. | ) | |
| | ) | |

**NOTICE OF REMOVAL**

Defendant Young America Insurance Company (misnamed as Young American Insurance Company in the Complaint) ("Young America") hereby removes the above-captioned action from the Second Judicial District Court, County of Bernalillo, New Mexico, to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) and 1453, and pursuant to 28 U.S.C. §§ 1441 and 1446.  In support of this Notice of Removal, Young America states as follows.

I.      **NATURE OF THE CASE**

1.      On February 19, 2018, Plaintiff Yvonne Apodaca filed her Class Action Complaint for Breach of Statutory, Common Law, and Contractual Duties (the "Complaint") against Young America in the New Mexico Second Judicial District Court, County of Bernalillo, Case No. D-202-CV-2018-01469.   Plaintiff served the Complaint and summons on the New Mexico Superintendent of Insurance on March 30, 2018.  The Superintended thereafter served Young America on April 4, 2018.  (*See* Complaint and service papers, attached as Exhibit 1; *see also* Declaration of Edgar Meza ("Meza Dec.") at ¶ 4, attached as Exhibit 2.)

2.    Plaintiff alleges that she paid a premium to Young America for automobile insurance and that her policy included minimum underinsured motorist ("UIM") coverage limits of $25,000 per person and $50,000 per accident for bodily injury.  (Complaint ¶ 33.)  More specifically, as shown by the policy Declarations pages attached to the Complaint, Plaintiff paid a single premium for uninsured motorist ("UM") and UIM coverage with limits of $25,000 per person/$50,000 per accident for bodily injury and $10,000 per accident for property damage.  (*Id.* at Ex. 1.)  Young America does not charge and Plaintiff did not pay a separate premium for UIM coverage.

3.    Plaintiff alleges that Young America failed to fully inform her during the application and underwriting process and in the policy itself of New Mexico's "offset law" set forth in N.M. Stat. Ann. § 66-5-301(B), namely, that the recovery of UIM coverage benefits is reduced or offset by a tortfeasor's liability coverage.  (*Id.* ¶¶ 40, 44.)  As described by the New Mexico Supreme Court in *Schmick v. State Farm Mutual Insurance Company*, 103 N.M. 216, 223 (1985):

> An offset is inherent in our statutory definition of underinsured motorist.  The state of being underinsured exists when the aggregate of the insured's uninsured motorist coverage reduced by the tortfeasor's liability coverage is greater than zero.  Hence, offset is required.  Our statute limits the insured's recovery to the amount of uninsured motorist coverage purchased for the insured's benefit; that amount will be paid in part by the tortfeasor's liability carrier and the remainder by the insured's uninsured motorist insurance carrier. (citing N.M. Stat. Ann. § 66-5-301(B)).

4.    Plaintiff's position is that under New Mexico's offset law she will not receive benefits to which she alleges she is entitled where a tortfeasor's liability coverage is equal to Plaintiff's UIM coverage limits, and that her UIM coverage is "illusory."  (Compl. ¶¶ 27, 38.)  According to Plaintiff, Young America "failed to fully inform [Plaintiff] and other insureds during the application and policy writing process that a purchase of 25/50 underinsured coverage, when

triggered by a crash with a tortfeasor who has 25/50 bodily injury liability limits, will result in a payment of premium for which no payment of benefits will occur. . . ." (*Id.* ¶ 38.)

5.      Plaintiff further alleges that Young America "failed to inform [Plaintiff] and other insureds about premium costs corresponding to available levels of coverage and failed to offer their [sic] insureds a fair opportunity to reconsider the decision to select a higher amount of underinsured coverage or reject such coverage altogether." (*Id.* ¶ 37.) (*See also* ¶ 28 ("In violation of New Mexico law, Defendant had a duty to fully inform Plaintiff what the monthly premiums would be for the next available tier of coverage.").)

6.      Plaintiff alleges that on January 23, 2017, she was involved in a car accident in which the at-fault driver had bodily injury liability coverage of $25,000 per person. (*Id.* ¶¶ 8, 13, 16.) Plaintiff alleges that she sustained serious bodily injuries in the accident and "received the full extent of liability coverage carried by the tortfeasor, $25,000." (*Id.* ¶¶ 13, 17.) Plaintiff alleges that Young America denied her claim for UIM coverage, even though she paid a premium for that coverage, because her UIM limit of $25,000 was fully offset by the tortfeasor's liability coverage. (*Id.* ¶ 34.)

7.      Based on the foregoing allegations, Plaintiff asserts the following causes of action: (1) Count I: Negligence; (2) Count II: Violations of the New Mexico Unfair Trade Practices Act; (3) Count III: Violations of the New Mexico Unfair Insurance Practices Act; (4) Count IV: Breach of Contract and Claim for Defendant Motorist Coverage; (5) Count V: Breach of Contract and Convent of Good Faith and Fair Dealing; (6) Count VI: Injunctive Relief; (7) Count VII: Declaratory Judgment; and (8) Count VIII: Punitive Damages. (*Id.* at pp. 12-20.)

8.    Plaintiff further seeks to represent the following putative class:

All persons (and their heirs, executors, administrators, successors, and assigns) who, in the prior six years from the date of filing of this complaint, were a policyholder and/or insured, of a Motor Vehicle Policy issued by defendant where that policy did not and does not provide underinsured coverage paid for by the policyholder, and sold and solicited by the defendant, due to the application of an offset as set forth in NMSA 66-5-301, otherwise known as the New Mexico offset law or being a "difference" state". (*Id.* ¶ 44.)

9.    On behalf of herself and the putative class, Plaintiff seeks to recover from Young America compensatory damages, punitive damages, treble damages, declaratory relief, injunctive relief, and attorneys' fees. (*Id.* at pp. 20-21.)

## II.    YOUNG AMERICA HAS SATISFIED THE PROCEDURAL REQUISITES FOR REMOVAL

10.    Young America's removal of this action to this Court is timely. Plaintiff served her Complaint and summons on the New Mexico Superintendent of Insurance on March 30, 2018. The Superintendent then served Young America on April 4, 2018. (*See* Exs. 1 and 2 attached hereto.) Out of an abundance of caution, Young America is filing this Notice of Removal within 30 days of service of the Complaint on the Superintendent. Thirty days from service on Young America is the time allowed to remove under 28 U.S.C. § 1446(b)(1).

11.    Venue is proper in this Court because the Second Judicial District Court of the County of Bernalillo, New Mexico, is located in the District of New Mexico. *See* 28 U.S.C. § 1441(a) (a state-filed action subject to federal jurisdiction may be removed "to the district court . . . for the district and division embracing the place where such action is pending.").

12.    As required under 28 U.S.C. § 1446(a), Young America has attached copies of all state court pleadings, orders, and process in this matter. (*See* Complete State Court record and docket sheet, attached as Exhibit 3.)

13.     As required under 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon Plaintiff's counsel, and a copy is being filed with the Clerk of the New Mexico Second Judicial District Court, County of Bernalillo, New Mexico.

## III.    THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER CAFA

14.     Under CAFA, this Court has original jurisdiction over any asserted class action[1] that:  (1) includes at least one class member whose citizenship is diverse from that of the defendant; (2) involves an aggregate amount in controversy of $5 million or more, exclusive of interest and costs; and (3) has at least 100 putative class members.  *See* 28 U.S.C. § 1332(d), as amended by The Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4.  Each requirement is satisfied here.

### A.    Minimal Diversity of Citizenship Exists.

15.     CAFA's minimal diversity requirement is satisfied. While Plaintiff does not allege Young America's citizenship, Young America was, at the time of the filing of this action, and still is a corporation incorporated under the laws of the State of Texas with its principal place of business in El Paso, Texas.  (Meza Dec. ¶ 5.)  Although Young America does business in other states, El Paso, Texas is its center of direction, control, and coordination.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 91-93 (2010) (a corporation's principal place of business, for diversity jurisdiction purposes, is its nerve center).

---

[1] CAFA defines a "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B). Plaintiff titles her Complaint a "Class Action Complaint" and expressly seeks certification of a class of New Mexico insures pursuant to New Mexico's similar class action rule.   (*See* Compl. ¶¶ 46-50 (seeking certification of the class pursuant to Rule 1-023(A) and (B)(1), (B)(2), and (B)(3).)

16.     At the time this lawsuit was filed and as of the date of this removal, Plaintiff was alleged to be and is a citizen of the State of New Mexico. (Compl. ¶ 4.)  Moreover, Plaintiff seeks to represent a class comprised of other persons or entities in New Mexico, and most of those individuals are also citizens of New Mexico.

17.     Because Plaintiff and at least a portion of the alleged putative class are citizens of states other than Texas, the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A) is satisfied.

**B.     The Asserted Class Claims Place More Than $5 Million In Controversy.**

18.     CAFA confers original jurisdiction to the district courts "of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  *See* 28 U.S.C. § 1332(d)(2).

19.     The amount in controversy is "not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008).  As the Tenth Circuit stated, "the question at this stage in the proceedings isn't what damages the plaintiff will *likely* prove but what a factfinder *might* conceivably lawfully award. . . .  Even if it's highly improbable that the Plaintiffs will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard."  *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 912 (10th Cir. 2016).  *See also Valdez v. Metro. Prop. & Cas. Ins. Co.*, 867 F. Supp. 2d 1143, 1163-64 (D.N.M. 2012) ("The amount-in-controversy requirement is an estimate of the amount that will be put at issue in the course of the litigation.") (citation and internal quotation omitted).

20.     In keeping with this approach, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart*

*Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).  To satisfy this burden, a defendant may rely on the plaintiff's own allegations, as well as reasonable estimates and calculations as to the amount in controversy.  *See, e.g.*, *Barreras v. Travelers Home & Marine Ins. Co.*, No. 12-CV-0354 RB/RHS, 2012 WL 12870348, at *3 (D.N.M. Oct. 17, 2012) ("Even assuming that the [UIM] coverage increase is only $25,000 per policy for a total of at least $2,500,000, aggregating that amount with the potential punitive damages award and attorneys' fees would satisfy the [$5 million] amount in controversy requirement."); *Stanforth v. Farmers Ins. Co. of Arizona*, No. CV 09-1146, 2010 WL 11437167, at *3 (D.N.M. Apr. 22, 2010) (denying motion to remand where defendants' amount in controversy calculation was based on plaintiff's allegations and defendants' own data regarding payment of UIM claims).

21.     The only instance when an evidentiary showing is required at removal is if, *after* the defendant has filed the notice of removal, the plaintiff contests, or the court questions, the defendant's allegations.  *Dart Cherokee*, 135 S. Ct. at 554.  Even then, however, the removing party need only demonstrate jurisdictional facts by a preponderance of the evidence.  *Id.*  In other words, the defendant need not prove that damages *are* greater than the removal threshold; the defendant need only establish facts showing it is "*possible*" that the requisite amount is "in play." *McPhail*, 529 F.3d at 955 (emphasis in original).

22.     Young America denies that Plaintiff has stated viable claims or that any damages are owed to Plaintiff or the asserted class.  But what matters to the jurisdictional inquiry is the amount the class conceivably could recover assuming Plaintiff succeeded in her suit.  *See Dart Cherokee*, 135 S. Ct. at 554.

     1.   <u>Compensatory Damages</u>.

23.    Plaintiff seeks damages, in part, based on an alleged failure to pay amounts supposedly due for UIM coverage. (*See* Compl. ¶ 40 (alleging Young America "should be required to fully compensate [Plaintiff] for the injuries and/or actual damages she sustained as a result of the January 23, 2017 accident, via the underinsured benefits ($25,000.00) for which she paid a premium.").) Plaintiff alleges that her claims are typical of the putative class. (*Id.* ¶ 48.)

24.    As stated, the class period set forth in the class definition is six-years prior to the filing of the lawsuit. (*Id.* ¶ 44.) From February 19, 2012 to February 19, 2018, the date Plaintiff filed this lawsuit, approximately 62 New Mexico bodily injury claims were opened by Young America under UIM coverage with limits of $25,000 per person/$50,000 per accident where the claim was closed with no payment of UIM benefits. (Meza Dec. ¶ 6.) Under Plaintiff's theory, a $25,000 bodily injury payment is therefore "in play" for each of those 62 claims, amounting to $1,550,000 in controversy during the alleged six-year class period.

25.    In addition, Plaintiff's proposed class definition is not limited to those persons presenting bodily injury claims under their UIM coverage. The putative class would also presumably include those individuals who presented a UIM claim for property damage. (Compl. ¶ 44 (defining proposed class to include all persons who "were a policyholder and/or insured[] of a Motor Vehicle Policy issued by [Young America] where that policy did not and does not provide underinsured coverage. . . .").)

26.    From February 19, 2012 to February 19, 2018, approximately 75 New Mexico claims were opened by Young America under UIM property damage coverage with limits of $10,000 per accident where the claim was closed without payment of UIM benefits. (Meza Dec. ¶ 7.) Under Plaintiff's theory, a $10,000 property damage payment is presumably also "in play"

for each of these 75 claims, amounting to an additional $750,000 in controversy. Adding these claims to the 62 bodily injury claims discussed above, produces a minimum of $2,300,000 in controversy ($1,550,000 + $750,000).

2.    Punitive Damages.

27.    "Punitive damages may be considered in determining the requisite jurisdictional amount." *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003). A defendant does not have to prove that the plaintiff is more likely than not ultimately to recover punitive damages, "but merely that: (1) state law permits a punitive damages award for the claims in question; and (2) the total award, including compensatory and punitive damages, could exceed $5,000,000. . . . The defendant may point to facts alleged in the complaint, the nature of the claims, or evidence in the record to demonstrate that an award of punitive damages is possible." *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 (10th Cir. 2012) (citation omitted). Here, Plaintiff expressly seeks punitive damages. (Compl. ¶¶ 96, 104.)

28.    Young America denies that Plaintiff is entitled to such damages. However, in viewing the Complaint as pled, which is the standard for the removal analysis, those damages should be included for purposes of determining the amount in controversy.

29.    New Mexico courts have upheld punitive damage awards in a ratio of 7.4 to 1 against compensatory damages, *Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 976 P.2d 1, 18 (N.M. 1998) (affirming punitive damages award of $4,000,000 on $540,000 in compensatory damages), and a ratio of 18 to 1, *Akins v. United Steelworkers of Am.*, 208 P.3d 457, 468 (N.M. Ct. App. 2009) (affirming punitive damages award of $30,000 on $1,661.60).

30.    Just a trebling of the potential compensatory damage amount discussed in paragraph 26 above—*i.e.*, $2,300,000—would add $4,600,000 to the amount in controversy, for a

total of $6,900,000—well over CAFA's $5,000,000 threshold. But even at a 1 to 1 ratio, Plaintiff's demand for punitive damages pushes the amount in controversy to at least $4,600,000, without accounting for Plaintiff's additional demands for attorney fees and injunctive and declaratory relief. As discussed below, this additional requested relief may also be counted in determining the amount in controversy.

3.    Attorney Fees.

31.    Attorney fees, where specifically permitted by statute, may also be considered as part of the amount-in-controversy for purposes of federal jurisdiction. *Martinez-Wechsler v. Safeco Ins. Co. of Am.*, No. CIV 12-0738 KBM/ACT, 2012 WL 12892762, at *2 (D.N.M. Sep. 13, 2012). *See also Woodmen*, 342 F.3d at 1218 ("Because the UPA requires the award of attorneys' fees to a prevailing claimant, the potential award of attorneys' fees, in addition to compensatory and treble damages, should have been considered in determining whether Woodmen satisfied the jurisdictional amount."); *Barreras*, 2012 WL 12870348, at *3 ("Where a statute allows for the recovery of attorneys' fees, fees may be used in calculating the jurisdictional amount. . . . Here, UPA and other statutes under which Plaintiff asserts claims allow for the recovery of fees. Accordingly this amount, too, may count could count toward satisfying the jurisdictional minimum.") (internal citations omitted).

32.    Here, as in *Barreras*, Plaintiff seeks to recover attorney fees under the Unfair Trade Practices Act. (Compl. ¶ 63.) *See also* N.M. Stat. Ann. § 57-12-10(C) ("The court shall award attorney fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if the party prevails.") Plaintiff also alleges she is entitled to attorney fees pursuant to § 59A-16-30. (Compl. ¶ 84.) *See* N.M. Stat. Ann. § 59A-16-30 ("Any person covered by Chapter 59A, Article 16 NMSA 1978 who has suffered damages as a result of a

violation of that article by an insurer or agent is granted a right to bring an action in district court to recover actual damages. . . . The court may award attorneys' fees to the prevailing party if . . . B. the party charged with the violation of that article has willfully engaged in the violation.").

33.     In class actions, courts in the Tenth Circuit have authorized attorney fees of 20 to 40 percent of the class recovery.  *See, e.g.*, *In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F. Supp. 2d 1208, 1212 (D.N.M. 1998) ("this Court set attorneys' fees at 20% of the net recovery after expenses"); *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1249 (D.N.M. 2012) (setting attorneys' fees at "twenty-percent of the Settlement Fund -- $400,000.00 in fees," but noting "Twenty-percent in fees is below the average percentage of the class fund that courts award.  Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingency fee basis.") (citation and internal quotation omitted); *Robles v. Brake Masters Sys., Inc.*, No. CIV 10-0135 JB/WPL, 2011 WL 9717448, *19 (D.N.M. Jan. 31, 2011) (setting fee at 18.77% of the class recovery, but stating the "percentage is less than half Robles' counsels' contingency fee, which would have been at least 40%," and noting courts within the Tenth Circuit have approved attorneys' fees ranging from 25% to 40%); *Safier v. State Farm Fire & Cas Co.*, No. 09-801 JCH/ACT, 2010 WL 11493970, *7 (D.N.M. Jan. 15, 2010) (for purposes of CAFA jurisdiction, increasing amount in controversy by an additional 30 percent to account for plaintiff's attorney fee demand was "credible").

34.     Here, Plaintiff's claim for attorney fees increases the amount in controversy even further—*i.e.*, by at least 20 percent of the compensatory and punitive damage amounts discussed above.  Assuming even the lowest estimate of compensatory and punitive damages (*i.e.*, $4,600,000 in the aggregate), a 20 percent fee award increases the amount in controversy to $5,520,000 ($4,600,000 + $920,000), well above the $5,000,000 jurisdictional minimum.  This

amount would further increase to $5,980,000 if fees were awarded at the 30 percent range, as they could be under the above case law. Young America denies that such attorney fees would be appropriate, but they are properly considered for purposes of the amount in controversy analysis.

        4.    <u>Cost of Injunctive and Declaratory Relief</u>.

35.    "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Valdez*, 867 F. Supp. 2d at 1178. In measuring the value of the litigation, the Tenth Circuit follows the "either viewpoint rule," which considers the "value to the plaintiff or the cost to [the] defendant. . . ." *Lovell v. State Farm Mut. Auto Ins. Co.*, 466 F. 3d 893, 897 (10th Cir. 2006). *See also Frederick*, 683 F.3d at 1247 (noting jurisdictional amount may include "how much it would cost to satisfy the plaintiff's demands.")

36.    In *Keeling v. Esurance Ins. Co.*, 660 F.3d 273 (7th Cir. 2011), the plaintiff alleged that Esurance committed fraud by charging for UIM coverage that was worthless in light of the automobile insurance policy's restrictions. The Seventh Circuit held that the value of the injunctive relief was based on the loss of premiums or increase in claims payments Esurance could incur if the plaintiff prevailed. *Id.* at 274.

37.    In *Valdez*, 867 F. Supp. 2d at 1165, the court quoted *Keeling* with approval for the principle that the "the cost of prospective relief cannot be ignored in the calculation of the amount in controversy." Where an insurer-defendant would either have to "stop charging a premium or change the [policy] terms so that policyholders receive indemnity more frequently, it will suffer a financial loss." *See also Cox v. Allstate Ins. Co.*, No. CIV-07-1449-L, 2008 WL 2167027, *3 (W.D. Okla. May 22, 2008) (denying motion to remand; finding insurer met CAFA's amount in controversy requirement by presenting evidence that premium payments received in 2006 alone

far exceeded $5,000,000 where plaintiff sought the equitable remedy of disgorgement of benefits); *Armur v. Transamerica Life Ins. Co*., No. 10-2136-EFM, 2010 WL 4180459, *4 (D. Kan. Oct. 20, 2010) (denying motion to remand in dispute over premium rate increases; finding insurer met CAFA's amount in controversy requirement by multiplying anticipated annual premium rate increases by total number of policies).

38.    Here, a judgment in Plaintiff's favor would require Young America to reform its practice of applying New Mexico's offset law.  At a minimum, this would require Young America to reimburse future insureds with minimum UIM limits up to policy limits regardless of any payment by the tortfeasor's liability insurer.

39.    Assuming the number of future claims approximately tracks the number of past claims, Young America can expect to process approximately 50 UIM bodily injury claims over the next five years and 100 such claims in the next ten years.  Young America can further expect to process roughly 60 UIM property damage claims over the next five years and 120 such claims in the next ten years.  Accordingly, the future cost to Defendant could range anywhere from $1,850,000 ((50 x $25,000) + (60 x $10,000)) to $3,700,000 ((100 x $25,000) + (120 x $10,000)).

40.    Adding these amounts ($1,850,000 to $3,700,000) to the previously determined UIM claims closed without payment ($2,300,000), plus the potential amount of punitive damages ($2,300,000 to $4,600,000), plus potential attorney fees ($920,000 to $1,380,000), puts the amount in controversy in a range of $7,370,000 to $11,980,000, well in excess of the $5,000,000 jurisdictional requirement.[2]

41.    Accordingly, CAFA's $5,000,000 threshold is easily satisfied.

---

[2] This range would be even higher if attorney fees are based on a punitive damage award of $4,600,000 or greater.

C.      **Number of Proposed Class Members.**

42.     As required by 28 U.S.C. § 1332(d)(5), the number of members of the proposed class here is at least 100 persons.

43.     Plaintiff alleges that "the members of the Class are so numerous that joinder of all members of the Class is impracticable" (Compl. ¶ 48), and their claims span six years. (*Id.* ¶ 44.)

44.     For the six-year class period, Young America has thus far identified approximately 137 New Mexico claims opened under UIM coverage where the claim was closed with no payment. (Meza Dec. ¶¶ 6-7.) Therefore, it is clear that Plaintiff's putative class surpasses the 100-person threshold.

WHEREFORE, Young America respectfully requests that this Court assume full jurisdiction over this action.[3]

Date: April 27, 2018                     Respectfully submitted,

                                         */s/ Andrew B. Curtis*
                                         Andrew B. Curtis (D.N.M. Bar No. 10MC5-26)
                                         Gary M. Bellair (D.N.M. Bar No. 17-158)
                                         Craig, Terrill, Hale Grantham, L.L.P.
                                         FirstBank Centre
                                         9816 Slide Road, Suite 201
                                         Lubbock, TX 79424
                                         Telephone: (806) 744-3232
                                         Facsimile: (806) 744-2211

                                         *Attorneys for the Defendant Young America*
                                         *Insurance Company*

---

[3]Young America intends no admission of liability by this Notice and expressly reserves all defenses, motions, and pleas, including, without limitation, objections to the sufficiency of Plaintiff's pleadings, insufficiency of service of process, failure to join indispensable parties, and the propriety of class certification.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 27, 2018, a copy of the foregoing *Notice of Removal* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

I further certify that on April 27, 2018, a copy of the foregoing was also served by UPS Overnight Mail on the following:

Corinne L. Holt, Esq.
Adrian O. Vega, Esq.
Will Ferguson & Associates
1720 Louisiana Blvd., N.E., Suite 100
Albuquerque, NM 87110

*Counsel for Plaintiff*

/s/ Andrew B. Curtis
*One of the Attorneys for Defendant Young
America Insurance Company*

# EXHIBIT 1

STATE OF NEW MEXICO
**OFFICE OF SUPERINTENDENT OF INSURANCE**
Mailing Address: P.O. Box 1689, Santa Fe, NM 87504-1689
Physical Address: 1120 Paseo de Peralta, Room 428, Santa Fe, NM 87501
Main Phone: (505) 827-4601; Main Fax (505) 827-4734; Toll Free: 1-855-4-ASK-OSI
www.osi.state.nm.us

**SUPERINTENDENT OF
INSURANCE**
John G. Franchini – (505) 827-4299

**Service of Process**
Room 432
(505) 827-4241

**DEPUTY SUPERINTENDENT**
Robert Doucette – (505) 827-4439

March 30, 2018

Young America Insurance Company
Jose Ramirez
1800 North Lee Trevino, Ste. 201
El Paso, TX 79936

RE:    **YVONNE APODACA V. YOUNG AMERICA INSURANCE COMPANY
D-202-CV-2018-01469**

Dear Mr. President:

In accordance with the provisions of NMSA 1978, Sections 59A-5-31 & 59A-32, enclosed is a copy of a Summons, Complaint, Interrogatories, Requests for Production on the above styled cause. Service was accepted on your behalf on 3/30/2018.

Respectfully,

John G. Franchini, Superintendent

CERTIFIED MAIL   7012 3460 0000 1400 9108

| SUMMONS | |
|---|---|
| District Court: SECOND JUDICIAL Bernalillo County, New Mexico 400 Lomas NW Albuquerque, New Mexico 87701 Court Telephone No.:505-841-7451 | Case Number: D-202-CV-2018-01469 Assigned Judge: Victor S. Lopez |
| YVONNE APODACA on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>YOUNG AMERICAN INSURANCE COMPANY,<br>        Defendant. | Defendant:<br><br>Young American Insurance Company In Care Of: Office of Superintendent of Insurance P.O. Box 1689 Santa Fe, New Mexico 87504-1689 |

## TO THE ABOVE NAMED DEFENDANT(S): Take notice that

1.    A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2.    You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.    You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.    If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.    You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.    If you need an interpreter, you must ask for one in writing.

7.    You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6227; or 1-505-797-6066.

Dated at Albuquerque, New Mexico, this _____ day of __2/27/2018__, 2018.

JAMES A. NOEL
CLERK OF THE DISTRICT COURT

By: _Cathy Chavez, Deputy_

BY: _____
Corinne L. Holt
*Attorney for Plaintiff*
Will Ferguson & Associates
1720 Louisiana Blvd NE, Suite 100
Telephone: 505-243-5566 Fax: 505-243-5699
corinne@fergusonlaw.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

# RETURN[1]

STATE OF NEW MEXICO          )
                                                   )ss
COUNTY OF _____    )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _ county on the _____ day of_____, ___, by delivering a copy of this summons, a copy of the complaint and a copy of the initial discovery attached, in the following manner:

### (check one box and fill in appropriate blanks)

[ ] to the defendant _____ (used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint)

[ ] to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (used when service is by mail or commercial courier service).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]_____to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (used when the defendant is not presently at place of abode) and by mailing by first class mail to the defendant at_____ (insert defendant's last known mailing address) a copy of the summons and complaint.

[ ]_____to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (insert defendant's business address) and by mailing the summons and complaint by first class mail to the defendant at _____(insert defendant's last known mailing address).

[ ]_____to ___, an agent authorized to receive service of process for defendant _____

[ ]_____to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (used when defendant is a minor or an incompetent person).

[ ]_____to _____ (name of person), _____, (title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision).

Fees: _____

_____
Signature of person making service

_____
Title (if any)

Subscribed and sworn to before me this _____ day of _____, 2018

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

USE NOTES

1.    Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.
2.    If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988, as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013; as amended by Supreme Court Order No. 13-8300-022, effective for all cases pending or filed on or after December 31, 2013; as amended by Supreme Court Order No. 14-8300-017, effective for all cases pending or filed on or after December 31, 2014.]

**FILED IN MY OFFICE**
**DISTRICT COURT CLERK**
**2/19/2018 2:04:32 PM**
**James A. Noel**
**Catherine Chavez**

SECOND JUDICIAL COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO

**YVONNE APODACA**
**on behalf of herself and all others similarly situated,**

      **Plaintiff,**

v.                                                                **Case No.** D-202-CV-2018-01469

**YOUNG AMERICAN INSURANCE COMPANY,**

      **Defendant.**

## CLASS ACTION COMPLAINT FOR BREACH OF STATUTORY,
## COMMON LAW, AND CONTRACTUAL DUTIES

Plaintiff Yvonne Apodaca ("Ms. Apodaca"), for herself and on behalf of the class defined herein, through

her counsel, Will Ferguson & Associates, for her Complaint, states generally as follows:

1.    Defendant Young American Insurance Company (hereinafter referred to as "Defendant") failed to act honestly and in good faith when it solicited and sold superfluous and illusory minimal limits underinsured motorist coverage to their insureds (in whole or in part) in violation of New Mexico law, and/or it denied claims for the benefits of that coverage. Basically, there is no such thing as "minimum limits underinsured motorist coverage". Nonetheless, Defendant sold such coverage to Ms. Apodaca and other class members.

2.    This conduct violates the New Mexico Unfair Practices Act, N.M.S.A.1978, § §57–12–1 *et seq.* ("UPA"); the New Mexico Unfair Insurance Practices Act N.M.S.A.1978, §§ 59A–16–1 *et seq.* ("UIPA"), and New Mexico common law.

3.    Ms. Apodaca brings this action on her own behalf, and on behalf of the many insured around the state who have been deceived by Defendant's practices.

1

## I.   JURISDICTION AND VENUE:

4.      Ms. Apodaca is now and was at all times material to this Complaint a resident of the City of Albuquerque, Bernalillo County, New Mexico.

5.      At all times material, Ms. Apodaca was covered by a policy of automotive insurance issued by Defendant in the State of New Mexico, which provided her with underinsured coverage for injuries and damages described herein.

7.      Upon information and belief, Defendant is an insurance company authorized to do business in the State of New Mexico.

6.      The acts complained of herein occurred in Bernalillo County, New Mexico.

7.      Jurisdiction and venue are proper in this Court.

## II.   GENERAL ALLEGATIONS COMMON TO ALL COUNTS OF THIS COMPLAINT: [1]

### MS. APODACA IS INJURED IN A CAR CRASH WITH AN UNDERINSURED MOTORIST

8.      On January 23, 2017, Ms. Apodaca sustained bodily injuries and other damages arising from an automobile collision that occurred in Albuquerque, New Mexico; Ms. Apodaca was not at fault for the crash.

9.      On January 23, 2017, Ms. Apodaca was a passenger in a vehicle traveling Southeast on San Mateo Boulevard, a public thoroughfare in the City of Albuquerque, Bernalillo County, New Mexico.  The vehicle Ms. Apodaca was traveling in had a green light to proceed straight through the intersection of San Mateo Boulevard and Pan American Fwy NE.

---

[1]Except as context may otherwise require, the factual allegations hereof are based on information and belief.

2

10.     At the same time, Tortfeasor Ben Shriver ("tortfeasor") was traveling Northwest on San Mateo Boulevard and intended to turn left onto Pan American Fwy NE to head South on Pan American Fwy NE.

11.     As the vehicle Ms. Apodaca was a passenger in proceeded through the intersection, the tortfeasor drove into the vehicle causing a violent collision.

12.     the tortfeasor was arrested for aggravated driving while under the influence of liquor or drugs.

13.     As a result of the impact, Ms. Apodaca suffered serious bodily injuries and other damages.

14.     At the time of the collision, Ms. Apodaca was abiding by the traffic laws of the State of New Mexico and the City of Albuquerque.

15.     At the time of the occurrence, Ms. Apodaca was insured by Defendant with Policy No. 640513605912.

16.     The tortfeasor was an underinsured motorist at the time of the collision, pursuant to the terms of the Defendant's insurance policy of which Ms. Apodaca was an insured, and also under New Mexico law.

17.     Ms. Apodaca received the full extent of liability coverage carried by the tortfeasor, $25,000.00.

18.     Prior to the collision at issue, Ms. Apodaca had properly paid a premium for automobile coverage under the Young American Insurance Company auto insurance policy and had a reasonable expectation that she carried underinsured motorist coverage of $25,000.00 each person and $50,000.00 each accident.

3

19.    At the time of the collision, Ms. Apodaca was under the belief and had a reasonable expectation that she was entitled to underinsured benefits pursuant to the policy issued by Defendant.

### DEFENDANT DECEPTIVELY SOLICITS AND SELLS SUPERFLUOUS AND ILLUSORY UNDERINSURED COVERAGE TO MS. APODACA

20.    Ms. Apodaca incorporates by reference the preceding paragraphs as though they were stated fully herein.

21.    In a 2010 case entitled *Progressive v. Weed Warrior*, the New Mexico Supreme Court established that underinsured coverage is superfluous when the tortfeasor and the injured driver both carry the statutory minimum of liability and underinsured coverage. *Progressive Nw. Ins. Co. v. Weed Warrior Services*, 2010-NMSC-050, ¶ 10. 149 N.M. 157, 161, 245 P.3d 1209, 1213.

22.    On a date prior to the loss alleged, Ms. Apodaca met and consulted with Defendant's agents to purchase automobile insurance.

23.    Defendant's agents told Ms. Apodaca that she must be insured for the state mandated minimum automobile bodily injury insurance coverage of $25,000.00 per person and $50,000.00 per accident, and consequently Ms. Apodaca selected underinsured motorist coverage in the amount of $25,000.00 each person and $50,000.00 per accident.

24.    Defendant misrepresented to Ms. Apodaca that she would benefit from underinsured coverage when it knew, or should have known, that the coverage was meaningless. Defendant's misrepresentations or lack of representations were made, knowingly and willfully, with the intent to deceive and induce Ms. Apodaca in purchasing underinsured coverage.

4

25.    Based on the information provided by Defendant, Ms. Apodaca agreed to pay a premium for the State of New Mexico mandated minimum automobile bodily injury and uninsured/underinsured motorist coverage.

26.    Following the representations and misrepresentations alleged, Defendant issued to Ms. Apodaca an automobile insurance policy with corresponding endorsements ("policy").

27.    In violation of New Mexico law, the policy failed to state that underinsured coverage is illusory in the event of a covered occurrence, as in this case, involving a minimally insured driver.[2]

28.    In violation of New Mexico law, Defendant had a duty to fully inform Plaintiff what the monthly premiums would be for the next available tier of coverage.[3] Defendant breached that duty.

29.    Under New Mexico law, Defendant had a duty to act fairly, honestly, and in good faith when dealing with Ms. Apodaca. Defendant failed to do so when it failed to fully inform Ms. Apodaca of illusory underinsured coverage with a disproportionate premium/indemnification ratio when compared to the next tier of available coverage and to not materially misrepresent the terms of underinsured coverage. Defendant breached that duty.

### INSURANCE INVESTIGATION AND CLAIMS

30.    Following the motor vehicle collision, Ms. Apodaca promptly reported the occurrence to Defendant by and through its claims representatives.

---

[2]The minimum limit of bodily injury coverage in New Mexico is $25,000.00 per person / $50,000.00 per accident.
[3]Without the benefit of discovery, Plaintiff suggests that, at a conservative figure, the premium for $50,000.00 per person/$100,000.00 per accident, under similar circumstances of this case, would cost one and one half times the amount of minimal coverage. Therefore, at the time of the Plaintiff's collision, it is reasonable to believe that the Defendant would charge a premium of $120 for bodily injury coverage and $81 for un-and-underinsured coverage for a total of $201 for a combined coverage of $50,000.00 per person/$100,000.00 per accident.

31.    Defendant opened a claim, assigned claim number 375130, and assigned the adjustment of the matter to its adjuster Nicole Garcia.

32.    The policy issued by Defendant, insuring Ms. Apodaca shows liability coverage on five vehicles in the amount of $25,000 each person and $50,000 per accident, per vehicle. *See* **Exhibit 1**.

33.    The policy issued by Defendant, insuring Ms. Apodaca shows underinsured coverage on five vehicles in the amount of $25,000 per person and $50,000 per occurrence, per vehicle. *Id.*

34.    Ms. Apodaca, through counsel, demanded Defendant provide Ms. Apodaca with underinsured benefits for which Defendant solicited and for which Ms. Apodaca paid a premium and Defendant denied Ms. Apodaca 's claim for underinsured benefits under the policy. *See* **Exhibit 2.**

35.    Ms. Apodaca had a reasonable expectation that she would benefit from insurance premiums she paid for. In fact, under her policy, there were virtually no underinsured motorist benefits.

36.    Defendant, in violation of the New Mexico Unfair Practices Act, N.M.S.A.1978, § 57–12–1 *et seq.* ("UPA"); the New Mexico Unfair Insurance Practices Act N.M.S.A.1978, §§ 59A–16–1 *et seq.* ("UIPA"), and New Mexico common law, failed to offer their insureds sufficient information and knowledge regarding the superfluous, illusory, and deceptive coverage.

37.    Pursuant to New Mexico law, Defendant failed to inform Ms. Apodaca and other insureds about premium costs corresponding to the available levels of coverage and failed to offer their insureds a fair opportunity to reconsider the decision to select a higher amount of underinsured coverage or reject such coverage altogether.

6

38.     In violation of New Mexico law, Defendant failed to fully inform Ms. Apodaca and other insureds during the application and policy writing process that a purchase of 25/50 underinsured coverage, when triggered by a crash with a tortfeasor who has 25/50 bodily injury liability limits, will result in a payment of premium for which no payment of benefits will occur and therefore violated Ms. Apodaca and other insureds reasonable expectations of benefiting from underinsured coverage.

39.     Pursuant to New Mexico law, the underinsured application, coverage, and the corresponding policy language must not be so complex such that a reasonable person would be unable to understand its full impact when he or she reads it. *See King v. Travelers Ins. Co.*, 1973-NMSC-013, 84 N.M. 550, 556, 505 P.2d 1226, 1232 and *Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, 111 N.M. 154, 159, 803 P.2d 243, 248.

40.     Because Defendant failed to fully inform Ms. Apodaca of the New Mexico offset law or that New Mexico is a "difference state" during the application and policy underwriting stages, in a manner consistent with the requirements imposed by, the UPA, the UIPA, and New Mexico common law, Defendant should be required to fully compensate Ms. Apodaca for the injuries and/or actual damages she sustained as a result of the January 23, 2017 accident, via the underinsured benefits ($25,000.00) for which she paid a premium.

## III.    CLASS ACTION ALLEGATIONS AND REQUEST TO CERTIFY CLASS:

41.     Ms. Apodaca incorporates by reference the preceding paragraphs as though they were stated fully herein.

42.     Upon information and belief, all insurance policies issued by the Defendant to New Mexico policyholders are uniform in all respects material to the claims brought herein and differ only in the limits identified in the endorsements included with such policies.

7

43.     Defendant committed the above-described unfair and/or deceptive practices, omissions of material fact, wrongful failures to provide underinsured coverage (or the full amount of such coverage to which Ms. Apodaca was entitled under applicable law), wrongful denials of claims for underinsured benefits, and/or breaches of the implied covenant of good faith and fair dealing against other Defendant' policyholders or insureds in New Mexico.

44.     This action is properly maintainable as a class action pursuant to Rule 1-023 NMRA. The Class is defined as follows:

> All persons (and their heirs, executors, administrators, successors, and assigns) who, in the prior six years from the date of filing of this complaint, were a policyholder and/or insured, of a Motor Vehicle Policy issued by defendant where that policy did not and does not provide underinsured coverage paid for by the policyholder, and sold and solicited by the defendant, due to the application of an offset as set forth in NMSA 66-5-301, otherwise known as the New Mexico offset law or being a "difference state".

45.     Excluded from the Class are all present or former officers and/or directors of Defendant, the "Referees" for purposes of the Evaluation Appeal process set forth below, Class Counsel and their resident relatives, and Defendant's counsel of record and their resident relatives.

46.     The proposed class definition is precise, objective, and presently ascertainable, and it is administratively feasible for the Court to easily ascertain whether a particular individual is a member.

47.     Certification of the Class is desirable and proper because there are predominant questions of law and fact in this case which are common to all members of the Class. Such common questions of law and fact include, but are not limited to:

8

a.  Whether Defendant's acts and practices constitute a breach of the Defendant's contractual obligations with respect to their New Mexico policyholders;

b.  Whether Defendant's acts and practices have breached the implied covenant of good faith and fair dealing with respect to the policies issued to New Mexicans;

c.  Whether Defendant's acts and practices violate Article 16 of the New Mexico Insurance Code;

d.  Whether Defendant's acts and practices constitute failure to state a material fact in connection with the sale of the Defendant's insurance policies;

e.  Whether Defendant's acts and practices have deceived or have had a tendency to deceive the Defendant's policyholders;

f.  Whether Defendant's acts and practices have been misleading or deceptive;

g.  The content, interpretation, and legal effect of the Defendant's standard application forms and other standard form documents, in so far as they relate to the acts and practices set forth above;

h.  The remedies available to Plaintiff and to the Defendant's other New Mexico policyholders or insureds, should it be determined that Defendant's acts and practices have violated their duties to New Mexico policyholders or insureds;

i.  The legal and/or factual applicability of affirmative defenses that may be alleged by Defendant.

48.  Certification of the Class is desirable and proper because Ms. Apodaca's claims are typical of the claims of the members of the Class Ms. Apodaca seeks to represent. Without limitation, Ms. Apodaca claims that Defendant' alleged acts and practices are in breach of the

common law and statutory duties alleged above are typical of the claims of the members of the Class.

49.    Certification of the Class is desirable and proper because Ms. Apodaca will fairly and adequately protect the interests of the Class she seeks to represent. There are no conflicts of interest between Ms. Apodaca and those of other members of the putative Class, and Ms. Apodaca is cognizant of her duties and responsibilities to the putative Class. Ms. Apodaca's attorneys are qualified, experienced, and able to conduct the proposed class action litigation.

48.    Certification of the Class is desirable and proper because the members of the Class are so numerous that joinder of all members of the Class is impracticable.

49.    This action should proceed as a class action under Rule l-023(B)(1) NMRA because the prosecution of separate actions by the individual members of the Class would create a risk of:

> a.  inconsistent or varying adjudications with respect to individual members would establish incompatible standards of conduct for them and/or Defendant; or
>
> b.  adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

50.    This action should also proceed as a class action under Rule 1 -023(B)(2) NMRA, because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to the Class. Ms. Apodaca seeks to establish the rights and obligations of the parties with respect to the claims at issue in this case and to enjoin Defendant from continuing to engage in those practices that

10

violate the duties, contractual, and legal obligations owed to Ms. Apodaca and the Class under New Mexico law.

51.    This action should also proceed as a class action under Rule 1-023(B)(3) NMRA. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

> a.  Common or generalized proof will predominate with respect to the essential elements of the claims at issue.
>
> b.  The common questions of law or fact that pertain to the Class predominate over any individual questions and any individual issues do not overwhelm the common ones.
>
> c.  No member of the Class has a substantial interest in individually controlling the prosecution of a separate action, but, if any such member or members wish to do so, they may exclude themselves from the Class upon the receipt of notice under Rule 1-023(C)(2) NMRA.
>
> d.  Upon information and belief, there are no pending lawsuits by members of the Plaintiff Class who may be similarly situated and which may potentially affect the matters raised in this action.
>
> e.  It is desirable to concentrate the litigation of these claims in this forum. The determination of the claims of all members of the Class in a single forum, and in a single proceeding, would be a fair and efficient means of resolving the issues raised in this litigation as between Defendant and the Defendant' policyholders and insureds within the Class described by Ms. Apodaca herein.

11

      f.   The difficulties likely to be encountered in the management of a class action in this litigation are reasonably manageable, especially when weighed against the virtual impossibility of affording adequate relief to the members of the Class through numerous separate actions.

52.    Ms. Apodaca seeks to certify a class pursuant to the Class Actions provisions of 1-023 NMRA, under New Mexico law, and based on the facts and allegations set forth herein.

## IV.   ALLEGATIONS AND CLAIMS:

### COUNT I:
### NEGLIGENCE

53.    Ms. Apodaca incorporates by reference the preceding paragraphs as if they were fully stated herein.

54.    Defendant had a duty to ensure Ms. Apodaca and other members of the class would be offered and obtain the maximum benefit of underinsured coverage and would not be sold illusory underinsured coverage.

55.    It was reasonably foreseeable that the underinsured coverage sold to the Plaintiff and other members of the class was, in large part, illusory and that Defendant materially misrepresented the terms of underinsured coverage.

56.    A reasonably prudent insurance company exercising ordinary care would offer and sell underinsured coverage that was not illusory and would not materially mispresent the terms of underinsured coverage.

57.    Defendant's actions and inactions, through its agents, employees, or others on its behalf, were negligent in that they breached the standard of care required of an insurance company issuing auto policies in New Mexico.

12

58.     As a result of Defendant's negligence, Ms. Apodaca and the Class, sustained actual damages for which Defendant is liable. Plaintiffs are entitled to punitive damages for actions of Defendant which were willful, reckless and wanton, and in bad faith.

**COUNT II:**
**VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT**

59.     Ms. Apodaca incorporates by reference the preceding paragraphs as if they were fully stated herein.

60.     There was in effect, at all times material, a state statute commonly known as the New Mexico Unfair Trade Practices Act, N.M.S.A.1978, § 57–12–2 to 58–12–10 ("UPA"), including but not limited to those subsections in Section 57-12-2(D)(7), (D)(14), (D)(15), (D)(17) and Section 57-12-2(E), which prohibits a person selling insurance from engaging in unfair or deceptive trade practices:

> D. "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Trade Practices Act [Chapter 57, Article 12 NMSA 1978], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead and includes but is not limited to:
>
>> (7) representing that the goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another;
>>
>> (14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;
>>
>> (15) stating that a transaction involves rights, remedies or obligations that it does not involve;
>>
>> (17) failure to deliver the quality or quantity of goods or services contracted for;
>
> E. "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease,

13

rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment:

(1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

(2) results in a gross disparity between the value received by a person and the price paid.

61.     Defendant failed to deliver the quality or quantity of services applied for and purchased by Ms. Apodaca and other insured by failing to provide insurance applications and policies containing sufficient information to fully inform a reasonably prudent person charged with the task of purchasing underinsured insurance, to which Ms. Apodaca was under the reasonable belief that such coverage existed, and to pay claims for insurance benefits sold and solicited by Defendant.

62.     Defendant, acting through their agents, adjusters, and employees, as set forth above, knowingly and willfully engaged in unfair trade practices in violation of Section 57-12-3, including but not limited to those subsections in Section 57-12-2(D)(7), (D)(l4), (D)(I5), (D)(17) and Section 57-12-2(E).

63.     Defendant's practices as described herein have resulted in actual damages, trebled, to Ms. Apodaca and the Class in an amount to be proven at trial, plus costs and reasonable attorney fees.

**COUNT III:**
**VIOLATIONS OF THE NEW MEXICO UNFAIR INSURANCE PRACTICES ACT**

64.     Ms. Apodaca re-alleges all previous paragraphs of this Complaint and incorporates the same as though set forth fully herein.

65.     There was in effect at all times material a State statute commonly known in the New Mexico Unfair Insurance Practices Act N.M.S.A.1978, §§ 59A–16–1 *et seq.* ("UIPA").

66.     Pursuant to N.M.S.A.1978, §§ 59A–16–30, the UIPA provides a right of action to any person covered by the UIPA who has suffered damages as a result of a violation of that article by an insurer or agent and is granted a right to bring an action in district court to recover actual damages.

67.     Ms. Apodaca was insured under the policy issued and adjusted by the Defendant.

68.     Defendant owed Ms. Apodaca the duties of good faith, fair dealing, and the accompanying fiduciary obligations.

69.     In the sale and provision of insurance, and in the handling of the underinsured motorist claim, Defendant failed to exercise good faith, unreasonably delayed payment, and failed to give the interests of its insured (Ms. Apodaca) the same consideration it gave its own interests.

70.     Defendant's failure to pay anything on Ms. Apodaca's underinsured motorist claims was unfounded, unreasonable, and in bad faith.

71.     Defendant misrepresented the terms of the policy sold and provided to Ms. Apodaca and other insureds, and/or failed to disclose material facts reasonably necessary to prevent other statements from being misleading; failed to implement and follow reasonable standards in the sale and provision of insurance; and failed to follow Defendant's own customary practices and procedures.

72.     Defendant's acts and failures to act were in reckless disregard of Ms. Apodaca's and other insureds' rights as an insured under the subject policy.

73.     Defendant's acts and practices took advantage of the lack of knowledge and experience of Ms. Apodaca and other insureds to a grossly unfair degree.

74.     Defendant failed to abide by its statutory duties under the UIPA, and such violations are negligence per se.

15

75.     Defendant misrepresented to its insured, pertinent facts or policy provisions relating to coverages at issue, in violation of NMSA § 59A-16-20(A).

76.     Defendant failed to acknowledge and act reasonably and promptly upon communications with respect to claims from its insureds arising under the policy, in violation of NMSA § 59A-16-20(B).

77.     Defendant failed to adopt and implement reasonable standards for the prompt investigation and processing of its insured's claims arising under the policy, in violation of NMSA § 59A-16-20(C).

78.     Defendant failed to properly affirm and pay the coverage for claims of its insured within a reasonable period of time after proof of loss requirements under the policy was completed and submitted by Ms. Apodaca, in violation of NMSA § 59A-16-20(D).

79.     Defendant did not attempt in good faith to effectuate prompt, fair and equitable settlement of Ms. Apodaca's claims in which liability has become reasonably clear, in violation of NMSA § 59A-16-20(E).

80.     Defendant compelled Ms. Apodaca to institute litigation to recover amounts due under the policies by offering substantially less (i.e. nothing) than the amounts claimed by Ms. Apodaca and that will ultimately be recovered in actions brought by Ms. Apodaca, in violation of NMSA § 59A-16-20(G).

81.     Defendant failed to promptly provide Ms. Apodaca with a reasonable explanation of the basis relied upon in the policy in relation to the facts and the applicable law for denial of her claims, in violation of NMSA § 59A-16-20(N).

82.     Defendant' failure to act in good faith and Defendant' violations of the UIPA are proximate causes of damages sustained by Ms. Apodaca.

16

83.     Defendant's conduct was in bad faith, malicious, willful, wanton, fraudulent and/or in reckless disregard of Ms. Apodaca's rights.

84.     Ms. Apodaca and other members of the Class are entitled to attorneys' fees and costs pursuant to §59A-16-30. As a direct and proximate result of Defendant' acts, omissions policies, and conduct in violating the UIPA, as set forth above, Ms. Apodaca and other members of the Class have sustained damages, in addition to the damages common to all counts of this Complaint, including but not limited to the actual damages incurred, the cost of prosecution of this lawsuit, attorneys' fees, and interest on the sums owed under the policy.   These injuries and damages are ongoing, permanent, and are expected to continue in the future.

**COUNT IV:**

**BREACH OF CONTRACT AND CLAIM FOR DEFENDANT MOTORIST COVERAGE**

85.     Ms. Apodaca incorporates by reference the preceding paragraphs as though they were stated fully herein.

86.     By issuing the policy in question to Ms. Apodaca, Defendant entered into a contract with Ms. Apodaca and entered into the same contractual obligations with each member of the Class Ms. Apodaca seeks to represent.

87.     By undertaking the acts described above, Defendant has wrongfully and unlawfully failed to provide underinsured coverage and/or denied underinsured claims for benefits to Ms. Apodaca and other members of the Class.

88.     By engaging in the conduct alleged herein, the Defendant breached their contractual obligations to Ms. Apodaca and to the Class.

89.     Pursuant to New Mexico law, and because of Defendant' breaches of their contractual obligations to Ms. Apodaca and to the Class, Ms. Apodaca and other members of the Class are entitled to actual damages, including but not limited to, underinsured coverage in an

17

amount equal to liability limits and may be entitled to payment of underinsured benefits, or payment of additional underinsured benefits accordingly and to damage to Ms. Apodaca and the Class in an amount to be proven at trial.

**COUNT V:**
**BREACH OF CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING**

90.     Ms. Apodaca re-alleges all previous paragraphs of this Complaint and incorporates the same as though set forth fully herein.

91.     By issuing the policies to Ms. Apodaca and the Class, Defendant entered into a contract with Ms. Apodaca and the Class.

92.     Defendant failed to perform its obligations under that contract.

93.     Implicit in the contract of insurance between Ms. Apodaca and Defendant was the covenant that Defendant would, at all times, act in good faith and deal honestly and fairly with Ms. Apodaca entitled to compensation for damages under her policy.

94.     Defendant breached the implied covenant of good faith and fair dealing, in one or more of the following ways, including but not limited to:

      a. Failing and refusing to acknowledge that the subject occurrence triggers the subject insurance policy;

      b. Failing and refusing to disclose, admit and acknowledge coverage in this matter;

      c. Failing and refusing to promptly and fairly investigate, process, determine and decide Ms. Apodaca's claims under the policy referenced above;

      d. Denying coverage to its insured, Ms. Apodaca, under the policy;

      e. Failing and refusing to cover its insured, Ms. Apodaca, under the underinsured motorist portion of the policy referenced above; and

18

       f.   Failing and refusing to mediate, resolve, and settle Ms. Apodaca's underinsured motorist claims.

95.    As a direct and proximate result Defendant's acts and omissions alleged herein, Ms. Apodaca has suffered damages in an amount to be proven at trial.

96.    Defendant's acts and omissions alleged herein and breach in the implied covenant of good faith and fair dealings were done intentionally, willfully, wantonly, grossly, maliciously and/or with reckless disregard for the rights of Ms. Apodaca. Accordingly, Ms. Apodaca and the Class are entitled to recover punitive damages in an amount to be determined by the jury and sufficient to punish the Defendant for its misconduct and to deter others from similar conduct in the future.

## COUNT VI:
## INJUNCTIVE RELIEF

97.    Ms. Apodaca incorporates by reference the preceding paragraphs as though they were stated fully herein.

98.    Ms. Apodaca and the Class are entitled to injunctive relief requiring that Defendant be enjoined from continuing practices that violate the duties, contractual, and legal obligations owed to Ms. Apodaca and the Class.

99.    Defendant must be compelled to stop their practice of failing to provide underinsured coverage benefits equal to the limits of liability coverage where they have failed to fully inform their insureds throughout the application and policy underwriting process.

19

## COUNT VII:
## DECLARATORY JUDGMENT

100.    Ms. Apodaca incorporates by reference the preceding paragraphs as though they were stated fully herein.

101.    An actual controversy exists between the parties thereby rendering declaratory relief proper pursuant to FRCP 57 and 28 U.S.C. 2201, the Declaratory Judgment Act.

102.    Ms. Apodaca and the Class are entitled to a declaratory judgment establishing the respective rights and obligations of the parties with respect to the claims set forth herein.

## COUNT VIII:
## PUNITIVE DAMAGES

103.    Ms. Apodaca incorporates by reference the preceding paragraphs as though they were stated fully herein.

104.    Defendant' conduct in failing to provide their insureds with underinsured policy benefits in an amount sold and solicited was willful, wanton, and in reckless disregard of Ms. Apodaca's rights and the rights of the Class.

WHEREFORE, Ms. Apodaca on her own and on behalf of the Class prays for judgment, injunctive, and declaratory relief against Defendant as follows:

A.    Certifying this action as a class action pursuant to Rule l-023(A) & (B) NMRA;

B.    Awarding compensatory damages to Ms. Apodaca and the Class for the damages done to them by Defendant in an amount to be proven at trial;

C.    Awarding punitive damages to Ms. Apodaca and the Class in an amount sufficient to punish Defendant for their willful and wanton conduct, and to deter them, and others similarly situated, from such conduct in the future in an amount to be proven at trial;

D.    Awarding Ms. Apodaca and the Class damages from Defendant as a result of its violations of UIPA, in an amount to be determined at trial and for attorneys' fees and costs;

E.      Awarding treble damages in accordance with the UPA which will deter Defendant and others from such unfair trade practices and wrongful conduct in the future and will punish them or the conduct set forth in this Complaint;

F.      Granting a declaratory judgment that establishes the rights and obligations of the parties with respect to the claims set forth herein;

G.      Granting injunctive relief as may be deemed proper by the Court to require Defendant to desist in the wrongful actions described herein;

H.      Awarding Ms. Apodaca and the Class their costs and expenses incurred in this action, including reasonable attorneys' fees, experts' fees, and costs; and

I.      Granting such other and further relief as the Court deems just and proper.

Respectfully Submitted:

WILL FERGUSON & ASSOCIATES

By: _____
        CORINNE L. HOLT
        ADRIAN O. VEGA
        1720 Louisiana Boulevard, N.E., Suite 100
        Albuquerque, NM 87110
        (505) 243-5566 Telephone
        (505) 243-5699 Facsimile
        *Attorneys for Plaintiff*

21

**YOUNG AMERICA INSURANCE COMPANY**
1800 LEE TREVINO, SUITE 201   EL PASO, TEXAS 79936

# DECLARATIONS
## NEW MEXICO PERSONAL
## AUTO POLICY NON-STACKING

| POLICY NUMBER | POLICY PERIOD | POLICY CHANGE EFFECTIVE DATE | AGENT NUMBER | |
|---|---|---|---|---|
| 64  513605912 | FROM **12/31/16** TO   **1/30/17**   TERM **01**   MONTHS<br>COVERAGE BEGINS AT 12:01 A.M. STANDARD TIME OR AT THE TIME YOUR PREMIUM WAS RECEIVED WHICHEVER IS LATER | **12/31/16** | **133** | **07186** |

| NAMED INSURED AND MAILING ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| **YVONNE APODACA**<br>**327 LAGUNITAS RD SW**<br>**ALBUQUERQUE     NM     87105** | **RDY INSURANCE AGENCY**<br>**1720 BRIDGE SW, STE K**<br>**ALBUQUERQUE, NM               87105**<br>**800 554-0595** |

**COVERAGES/PREMIUMS** COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY ARE SHOWN FOR THE COVERAGE.

| AUTO | I-LIABILITY BODILY INJURY | | PROPERTY DAMAGE | II-MEDICAL PAYMENTS | III-UNINSURED/UNDERINSURED MOTORISTS BODILY INJURY | | PROPERTY DAMAGE 250 DED | IV-COVERAGE FOR DAMAGE TO YOUR AUTO COMPREHENSIVE DEDUCTIBLE | COLLISION DEDUCTIBLE | TOWING AND LABOR COST | RENTAL REIMB 30 DAYS MAXIMUM |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 25000 | 50000 | 10000 | | 25000 | 50000 | 10000 | 1000 | 1000 | | 30 PER DAY |
| 2 | 25000 | 50000 | 10000 | | | UNSTACKED | | | | | |
| 3 | 25000 | 50000 | 10000 | | | | | | | | |
| 4 | 25000 | 50000 | 10000 | | | | | | | | |
| 5 | 25000 | 50000 | 10000 | | | | | | | | |
| | EACH PERSON | EACH ACCIDENT | | EACH PERSON | EACH PERSON | EACH ACCIDENT | | | | | |
| 1 | 35 | | 26 | | 12 | | 12 | 29 | 36 | | 7 |
| 2 | 40 | | 29 | | STACKING COVERAGE | | | | | | |
| 3 | 28 | | 20 | | OFFERED AND | | | | | | |
| 4 | 27 | | 20 | | REJECTED | | | | | | |
| 5 | 27 | | 20 | | | | | | | | |
| | | DOLLARS | | DOLLARS | | DOLLARS | | | | | DOLLARS |

| | | | | |
|---|---|---|---|---|
| | SUB TOTAL | POLICY FEE | TOTAL | INSTALLMENT FEE |
| | 368.00 | | 374.00 | 6.00 |

**DESCRIPTION OF AUTO**     \*\*\* THIS POLICY CONTAINS A NAMED DRIVER EXCLUSION \*\*\*

| AUTO | YEAR | MAKE | MODEL | VIN NUMBER | DRIVER | TERRITORY | SYMBOL | SPECIAL EQUIP |
|---|---|---|---|---|---|---|---|---|
| 1 | 2012 | FORD | FOCUS | 1FAHP3F20CL313650 | 3 | 14 | 10 | |
| 2 | 2006 | NSSN | ARMADA SE/ | 5N1AA08B46N736406 | 4 | 14 | 17 | |
| 3 | 2002 | FORD | F-250 | 1FTNW20S02EA77054 | 2 | 14 | 14 | |
| 4 | 2004 | DODG | RAM | 1D7HA16D64J132959 | 1 | 14 | 15 | |
| 5 | 2011 | FORD | ESCAPE | 1FMCU9DG0BKB28481 | 1 | 14 | 14 | |

ANY LOSS UNDER PART D IS PAYABLE AS INTEREST MAY APPEAR TO THE NAMED INSURED AND

| | | | | |
|---|---|---|---|---|
| 1 | ONE MAIN FINANCIAL | PO BOX 200049 | KENNESAW | GA 30156-0000 |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |

THE AUTO(S) DESCRIBED IN THIS POLICY IS PRINCIPALLY GARAGED AT THE ABOVE ADDRESS UNLESS OTHERWISE STATED

| | |
|---|---|
| 1 | 87105-0000 |
| 2 | 87105-0000 |
| 3 | 87105-0000 |
| 4 | 87105-0000 |
| 5 | 87105-0000 |

**FOR INFORMATION, OR TO MAKE A COMPLAINT, CALL 1-800-554-0595**
**CLAIMS INFORMATION 1-800-880-0472**

By
Chief Executive Officer and Secretary

PROCESSED ON:  **12/31/16**

YA-NM-64-0001 (10-16)    \*\*\* Si desea una [EXHIBIT 1] me al 1-800-554-0595 \*\*\*

**DECLARATIONS**
**NEW MEXICO PERSONAL**
**AUTO POLICY NON-STACKING**

**YOUNG AMERICA INSURANCE COMPANY**
1800 LEE TREVINO, SUITE 201   EL PASO, TEXAS 79936

| POLICY NUMBER | POLICY PERIOD | POLICY CHANGE EFFECTIVE DATE | AGENT NUMBER |
|---|---|---|---|
| 64  513605912 | FROM **1/30/17** TO **3/01/17**  TERM **01**  MONTHS<br>COVERAGE BEGINS AT 12:01 A.M. STANDARD TIME OR AT THE TIME YOUR PREMIUM WAS RECEIVED WHICHEVER IS LATER | 1/30/17 | 133    07186 |

| NAMED INSURED AND MAILING ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| YVONNE APODACA<br>327 LAGUNITAS RD SW<br>ALBUQUERQUE    NM    87105 | RDY INSURANCE AGENCY<br>1720 BRIDGE SW, STE K<br>ALBUQUERQUE, NM             87105<br>800 554-0595 |

**COVERAGES/PREMIUMS** COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY ARE SHOWN FOR THE COVERAGE.

| AUTO | I-LIABILITY BODILY INJURY | PROPERTY DAMAGE | II-MEDICAL PAYMENTS | III-UNINSURED/UNDERINSURED MOTORISTS BODILY INJURY | PROPERTY DAMAGE 250 DED | IV-COVERAGE FOR DAMAGE TO YOUR AUTO COMPREHENSIVE DEDUCTIBLE | COLLISION DEDUCTIBLE | TOWING AND LABOR COST | RENTAL REIMB 30 DAYS MAXIMUM |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 25000  50000 | 10000 | | 25000  50000  10000 | | 1000 | 1000 | | 30 PER DAY |
| 2 | 25000  50000 | 10000 | | UNSTACKED | | | | | |
| 3 | 25000  50000 | 10000 | | | | | | | |
| 4 | 25000  50000 | 10000 | | | | | | | |
| 5 | 25000  50000 EACH PERSON  EACH ACCIDENT | 10000 | EACH PERSON | EACH PERSON   EACH ACCIDENT | | | | | |
| 1 | 35 | 26 | | 12 | 12 | 29 | 36 | | 7 |
| 2 | 40 | 29 | | STACKING COVERAGE | | | | | |
| 3 | 28 | 20 | | OFFERED AND | | | | | |
| 4 | 27 | 20 | | REJECTED | | | | | |
| 5 | 27  DOLLARS | 20 | DOLLARS | DOLLARS | | | | | DOLLARS |

| | SUB TOTAL | POLICY FEE | TOTAL | INSTALLMENT FEE |
|---|---|---|---|---|
| | 368.00 | | 374.00 | 6.00 |

**DESCRIPTION OF AUTO**      *** THIS POLICY CONTAINS A NAMED DRIVER EXCLUSION ***

| AUTO | YEAR | MAKE | MODEL | VIN NUMBER | DRIVER | TERRITORY | SYMBOL | SPECIAL EQUIP |
|---|---|---|---|---|---|---|---|---|
| 1 | 2012 | FORD | FOCUS | 1FAHP3F20CL313650 | 3 | 14 | 10 | |
| 2 | 2006 | NSSN | ARMADA SE/ | 5N1AA08B46N736406 | 4 | 14 | 17 | |
| 3 | 2002 | FORD | F-250 | 1FTNW20S02EA77054 | 2 | 14 | 14 | |
| 4 | 2004 | DODG | RAM | 1D7HA16D64J132959 | 1 | 14 | 15 | |
| 5 | 2011 | FORD | ESCAPE | 1FMCU9DG0BKB28481 | 1 | 14 | 14 | |

ANY LOSS UNDER PART D IS PAYABLE AS INTEREST MAY APPEAR TO THE NAMED INSURED AND

| 1 | ONE MAIN FINANCIAL | PO BOX 200049 | KENNESAW | GA 30156-0000 |
|---|---|---|---|---|
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |

THE AUTO(S) DESCRIBED IN THIS POLICY IS PRINCIPALLY GARAGED AT THE ABOVE ADDRESS UNLESS OTHERWISE STATED

| 1 | 87105-0000 |
|---|---|
| 2 | 87105-0000 |
| 3 | 87105-0000 |
| 4 | 87105-0000 |
| 5 | 87105-0000 |

**FOR INFORMATION, OR TO MAKE A COMPLAINT, CALL 1-800-554-0595**
**CLAIMS INFORMATION 1-800-880-0472**

By _____
Chief Executive Officer and Secretary

PROCESSED ON:   **1/30/17**

YA-NM-64-0001 (10-16)   *** Si desea una explicación en Español, llame al 1-800-554-0595 ***

**DECLARATIONS**
**NEW MEXICO PERSONAL**
**AUTO POLICY NON-STACKING**

**YOUNG AMERICA INSURANCE COMPANY**
1800 LEE TREVINO, SUITE 201    EL PASO, TEXAS 79936

| POLICY NUMBER | POLICY PERIOD | POLICY CHANGE EFFECTIVE DATE | AGENT NUMBER |
|---|---|---|---|
| 64  513605912 | FROM **1/30/17**  TO  **3/01/17**    TERM  **01**   MONTHS<br>COVERAGE BEGINS AT 12:01 A.M. STANDARD TIME OR AT THE TIME YOUR PREMIUM<br>WAS RECEIVED WHICHEVER IS LATER | 1/30/17 | 133    07186 |

| NAMED INSURED AND MAILING ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| YVONNE APODACA<br>327 LAGUNITAS RD SW<br>ALBUQUERQUE    NM    87105 | RDY INSURANCE AGENCY<br>1720 BRIDGE SW, STE K<br>ALBUQUERQUE, NM    87105<br>800 554-0595 |

**COVERAGES/PREMIUMS** COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY ARE SHOWN FOR THE COVERAGE.

| AUTO | I-LIABILITY BODILY INJURY | | PROPERTY DAMAGE | II-MEDICAL PAYMENTS | III-UNINSURED/UNDERINSURED MOTORISTS BODILY INJURY | | PROPERTY DAMAGE 250 DED | IV-COVERAGE FOR DAMAGE TO YOUR AUTO COMPREHENSIVE DEDUCTIBLE | COLLISION DEDUCTIBLE | TOWING AND LABOR COST | RENTAL REIMB 30 DAYS MAXIMUM |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 25000 | 50000 | 10000 | | 25000 | 50000 | 10000 | | | | |
| 2 | 25000 | 50000 | 10000 | | | UNSTACKED | | | | | |
| 3 | 25000 | 50000 | 10000 | | | | | | | | |
| 4 | 25000 | 50000 | 10000 | | | | | | | | |
| | EACH PERSON | EACH ACCIDENT | | EACH PERSON | EACH PERSON | EACH ACCIDENT | | | | | |
| 1 | 40 | | 29 | | 12 | | 12 | | | | |
| 2 | 39 | | 29 | | | STACKING COVERAGE | | | | | |
| 3 | 28 | | 20 | | | OFFERED AND | | | | | |
| 4 | 27 | | 20 | | | REJECTED | | | | | |
| | | DOLLARS | | DOLLARS | | DOLLARS | | | | | DOLLARS |

| | SUB TOTAL | POLICY FEE | TOTAL | INSTALLMENT FEE |
|---|---|---|---|---|
| | 256.00 | | 262.00 | 6.00 |

**DESCRIPTION OF AUTO**              *** THIS POLICY CONTAINS A NAMED DRIVER EXCLUSION ***

| AUTO | YEAR | MAKE | MODEL | VIN NUMBER | DRIVER | TERRITORY | SYMBOL | SPECIAL EQUIP |
|---|---|---|---|---|---|---|---|---|
| 1 | 2011 | FORD | ESCAPE | 1FMCU9DG0BKB2B4B1 | 4 | 14 | 14 | |
| 2 | 2006 | NSSN | ARMADA SE/ | 5N1AA0BB46N736406 | 3 | 14 | 17 | |
| 3 | 2002 | FORD | F-250 | 1FTNW20SO2EA77054 | 2 | 14 | 14 | |
| 4 | 2004 | DODG | RAM | 1D7HA16D64J132959 | 1 | 14 | 15 | |

ANY LOSS UNDER PART D IS PAYABLE AS INTEREST MAY APPEAR TO THE NAMED INSURED AND

1
2
3
4

THE AUTO(S) DESCRIBED IN THIS POLICY IS PRINCIPALLY GARAGED AT THE ABOVE ADDRESS UNLESS OTHERWISE STATED

| 1 | 87105-0000 |
| 2 | 87105-0000 |
| 3 | 87105-0000 |
| 4 | 87105-0000 |

**FOR INFORMATION, OR TO MAKE A COMPLAINT, CALL 1-800-554-0595**
**CLAIMS INFORMATION 1-800-880-0472**

By _____
Chief Executive Officer and Secretary

PROCESSED ON:    **1/30/17**

YA NM-64-0001 (10 16)    *** Si desea una explicación en Español, llame al 1-800-554-0595 ***

**YOUNG AMERICA INSURANCE COMPANY**
1800 LEE TREVINO, SUITE 201    EL PASO, TEXAS 79936

**DECLARATIONS**
**NEW MEXICO PERSONAL**
**AUTO POLICY NON-STACKING**

| POLICY NUMBER | POLICY PERIOD | POLICY CHANGE EFFECTIVE DATE | AGENT NUMBER |
|---|---|---|---|
| 64  513605912 | FROM  **3/01/17**  TO  **3/31/17**  TERM  **01**  MONTHS<br>COVERAGE BEGINS AT 12:01 A.M. STANDARD TIME OR AT THE TIME YOUR PREMIUM WAS RECEIVED WHICHEVER IS LATER | **3/01/17** | **133    07186** |

| NAMED INSURED AND MAILING ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| YVONNE APODACA<br>327 LAGUNITAS RD SW<br>ALBUQUERQUE    NM    87105 | **RDY INSURANCE AGENCY**<br>**1720 BRIDGE SW, STE K**<br>**ALBUQUERQUE, NM                  87105**<br>**800 554-0595** |

**COVERAGES/PREMIUMS** COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY ARE SHOWN FOR THE COVERAGE

| A U T O | I-LIABILITY | | | II-MEDICAL PAYMENTS | III-UNINSURED/UNDERINSURED MOTORISTS | | IV-COVERAGE FOR DAMAGE TO YOUR AUTO | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | BODILY INJURY | | PROPERTY DAMAGE | | BODILY INJURY | PROPERTY DAMAGE 250 DED | COMPREHENSIVE DEDUCTIBLE | COLLISION DEDUCTIBLE | TOWING AND LABOR COST | RENTAL REIMB 30 DAYS MAXIMUM |
| 1 | 25000 | 50000 | 10000 | | 25000  50000 | 10000 | | | | |
| 2 | 25000 | 50000 | 10000 | | UNSTACKED | | | | | |
| 3 | 25000 | 50000 | 10000 | | | | | | | |
| 4 | 25000 | 50000 | 10000 | | | | | | | |
| | EACH PERSON | EACH ACCIDENT | | EACH PERSON | EACH PERSON | EACH ACCIDENT | | | | |
| 1 | 40 | 29 | | | 12 | 12 | | | | |
| 2 | 39 | 29 | | | STACKING COVERAGE | | | | | |
| 3 | 29 | 21 | | | OFFERED AND | | | | | |
| 4 | 28 | 20 | | | REJECTED | | | | | |
| | | DOLLARS | | DOLLARS | | DOLLARS | | | | DOLLARS |

| | SUB TOTAL | POLICY FEE | TOTAL | INSTALLMENT FEE |
|---|---|---|---|---|
| | 259.00 | | 265.00 | 6.00 |

**DESCRIPTION OF AUTO**          *** THIS POLICY CONTAINS A NAMED DRIVER EXCLUSION ***

| AUTO | YEAR | MAKE | MODEL | VIN NUMBER | DRIVER | TERRITORY | SYMBOL | SPECIAL EQUIP |
|---|---|---|---|---|---|---|---|---|
| 1 | 2011 | FORD | ESCAPE | 1FMCU9DG0BKB28481 | 4 | 14 | 14 | |
| 2 | 2006 | NSSN | ARMADA SE/ | 5N1AA08846N736406 | 3 | 14 | 17 | |
| 3 | 2002 | FORD | F-250 | 1FTNW20S02EA77054 | 1 | 14 | 14 | |
| 4 | 2004 | DODG | RAM | 1D7HA16D64J132959 | 2 | 14 | 15 | |

ANY LOSS UNDER PART D IS PAYABLE AS INTEREST MAY APPEAR TO THE NAMED INSURED AND

1
2
3
4

THE AUTO(S) DESCRIBED IN THIS POLICY IS PRINCIPALLY GARAGED AT THE ABOVE ADDRESS UNLESS OTHERWISE STATED

| 1 | 87105-0000 |
|---|---|
| 2 | 87105-0000 |
| 3 | 87105-0000 |
| 4 | 87105-0000 |

**FOR INFORMATION, OR TO MAKE A COMPLAINT, CALL 1-800-554-0595**
**CLAIMS INFORMATION 1-800-880-0472**

By _____
Chief Executive Officer and Secretary

PROCESSED ON:    **3/01/17**

YA-NM-64-0001 (10 16)    *** Si desea una explicación en Español, llame al 1-800-554-0595 ***

SACC Fax Server        2/15/2018 5:36:41 PM  PAGE   2/002    Fax Server

# YOUNG AMERICA INSURANCE COMPANY

CLAIMS DIVISION

February 15, 2018

64 / 513605912
WILL FERGUSON & ASSOCIATES
1720 LOUISIANA BLVD NE STE 100
ALBUQUERQUE, NM 87110

RE: Claim Number : 375 - 00130
    Insured      : YVONNE APODACA
    Claimant(s)  : FRANK APODACA, YVONNE APODACA
    Date of Loss : 1/23/2017

Dear WILL FERGUSON & ASSOCIATES,

This is in response to your letters of 1/15/17 (I believe you meant 1/15/18) and 2/15/17 regarding the potential UIM and UMPD claims for Frank and Yvonne Apodaca.

You have made a Demand of YAIC's UIMBI Limits of $25,000/$50,000 and our UMPD limit of $10,000.

With regard to the UIMBI claim, we have conferred with Counsel regarding New Mexico Law concerning the viability of such a claim. We have been advised that we are entitled to a full offset of the Torteasors Policy payments. You advised us that your client's were each paid $25,000 by Progressive. We were additionally advised that any specific Punitive Damages being claimed fall within the UIMBI Limit and are subject to the same offset. We were advised this is based on NM Case Law, as determined by the Court of Appeals.

Based on the information we were provided, we do not believe there is any viable UIMBI claims for either of your clients. If you have information to the contrary, please advise us as soon as possible, along with any documentation you wish us to consider.

With regard to the UMPD claim, we have been advised the same principles apply. In this case, you have told us that Progressive offered $7559.87 for their Vehicle. We assume that Progressive did go ahead and pay our insured's this amount (unless you advise to the contrary) and therefore, we are entitled to an offset, which would leave $2440.13 out of the $10,000 UMPD Coverage our insured carries. Therefore we believe that our insured's are entitled to collect up to this amount and offer same accordingly.

If our offer (of the UMPD available monies) is acceptable to you, please advise and forward drafting instructions and a W-9 and we will issue the check.

If you have any further questions or wish to discuss further, please feel free to contact me.

Sincerely,
**JACK ELAM**
Claim Representative
210-647-9291
Office Hours: Mon - Fri 8:00 to 5:00 CST

***NEW MEXICO RESIDENTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

[X] HOME OFFICE
    P.O. BOX 972450
    EL PASO, TX 79997
    TEL: (915) 590-5692
    1-800-880-0472



EXHIBIT
2



**To: Corine L. Holt**
Company:
Fax: 5052435699
Phone:

**From:**
Fax:
Phone:
E-mail: jacky.elam@fredloya.com

**NOTES:**

**Date and time of transmission:** Thursday, February 15, 2018 5:36:18 PM
**Number of pages including this cover sheet:** 02

SECOND JUDICIAL COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO

**YVONNE APODACA**
**on behalf of herself and all others similarly situated,**

      **Plaintiff,**

v.                                      **Case No. <u>D-202-CV-2018--1469</u>**

**YOUNG AMERICAN INSURANCE COMPANY,**

      **Defendant.**

### PLAINTIFF YVONNE APODACA'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT YOUNG AMERICAN INSURANCE COMPANY

    COMES NOW, Plaintiff Yvonne Apodaca, for herself and on behalf of all others similarly situated, by and through her counsel, Will Ferguson & Associates (Adrian O. Vega and Corinne L. Holt), and propounds her First Set of Interrogatories and Requests for Production.

    <u>**INTERROGATORY NO. 1:**</u>    Please identify completely the individual answering these Interrogatories. Please include in your answer, the relationship of this individual with the Defendant.

    <u>**ANSWER**</u>:

    <u>**INTERROGATORY NO. 2:**</u>    Does Defendant expect to call expert witnesses to testify at trial or a class certification hearing? If so, then for each expert witness:

        a.    Identify the witness by name, address, telephone number and job title;

        b.    State the subject matter in which the expert is expected to testify;

1

     c.     State the substance of the facts and opinions to which the expert is expected to testify; and

     d.     Summarize the grounds for each opinion; and

     e.     List all other cases by caption and name in which the expert has testified, in trial or by deposition, either as an expert of fact witness.

     **ANSWER**:

     **INTERROGATORY NO. 3:**     For each fact witness Defendant may call to testify at trial or a class certification hearing, please identify by name, address, telephone number and job title, and the subject matter and substance of the expected testimony.  Also list all other cases by caption and name in which the witness has testified, in trial or by deposition, either as an expert or fact witness.

     **ANSWER**:

     **INTERROGATORY NO. 4:**     Please identify all exhibits Defendant may use at the trial of this matter and identify by name, title, address and phone number the person having custody of said exhibits, writings, documents and things and identify by location or place where said writings, documents and things are located.

     **ANSWER**:

**INTERROGATORY NO. 5:**    Please describe how Defendant supervises and trains New Mexico insurance agents to solicit and sell its product, specifically underinsured motorist coverage, to New Mexico motorists.

**ANSWER:**

**INTERROGATORY NO. 6:**    Please state the names and last known contact information for the insurance agents, brokers, and agencies authorized to sell and solicit Defendant's underinsured coverage during the relevant class period.

**ANSWER:**

**INTERROGATORY NO. 7:**    Please fully and completely describe how Defendant sells and solicits underinsured motorist coverage in New Mexico.

**ANSWER:**

**INTERROGATORY NO. 8:**    Please fully and completely describe when Defendant applies an offset to its underinsured motorist coverage in New Mexico.

**ANSWER:**

3

**INTERROGATORY NO. 9:**     Please fully and completely describe all processes by which Defendant authorizes, certifies, or otherwise permits insurance agents, brokers, and agencies to sell Defendant's insurance policies in New Mexico during the last six years.

**ANSWER:**

**INTERROGATORY NO. 10:**     In the last six years, has Defendant chosen not to apply an offset to underinsured motorist coverage in New Mexico? If so, for each matter, please identify the matter with specificity and explain who received the underinsured motorist coverage; what coverage was received; why underinsured motorist coverage was received; and how Defendant made its decision not to apply and offset.

**ANSWER:**

**INTERROGATORY NO. 11:**     In the last six years, how many times has Defendant sold minimal limits coverage (denied coverage) to New Mexico residents? Of those, please identified, please state:

A) How many minimal limits coverage policies are currently in effect in New Mexico;

B) The number of times a Defendant has denied coverage based on the theory that an offset should be applied because a tortfeasor also had a 25/50 bodily injury liability limit policy; and,

C) Explain in detail how much money Defendant saved by denying coverage identified in item (B) above.

4

**ANSWER:**


**INTERROGATORY NO. 12:**    Please    fully    and    completely    describe    when
Defendant applies an offset to its underinsured motorist coverage in New Mexico and explain
completely how it arrives at that decision.

**ANSWER:**


**INTERROGATORY NO. 13:**    What is Defendant's net worth for the last six years
and how does it arrive at that figure?

**ANSWER:**


## REQUESTS FOR PRODUCTION


**REQUEST FOR PRODUCTION NO. 1:** Please produce Yvonne Apodaca's complete
Claim File.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 2:** Please produce the complete Claim Files for
the individuals identified within the putative class.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:** Please produce Claim Files for the individuals that purchased underinsured motorist coverage from Defendant within six years prior to the filing of this lawsuit and submitted a claim for underinsured motorist coverage. This request shall include, but not be limited to, the following:

A) Closed claims which were denied claims due to application of an "offset";

B) Paid claims; and,

C) Pending claims.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 4:** Please produce the Applications for Auto Insurance submitted to Defendant by each member of the putative class.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 5:** Please produce a list of names, including last known contact information if not a current employee, agent, or contractor, of anyone who touched, worked, was assigned to, and/or handled any of the claim files of the putative class.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 6:** Please produce a list of names, including last known contact information if not a current employee, agent, or contractor, of anyone who touched, worked, was assigned to, and/or handled any of the claim files of the putative class.

6

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:** Please produce a list of Defendant's sales representatives' names assigned to New Mexico and its surrounding regions during the last six years form the filing of this lawsuit to present. This request shall include last known contact information if not a current employee, agent, or contractor for Defendant.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8:** Please produce any and all communications, written or electronic, between Defendant and its New Mexico agents, brokers, and agencies regarding underinsured motorist coverage.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:** Please produce any and all contracts, agreements, memorandums of understanding, and/or promises entered into with New Mexico insurance agents and/or insurance agencies during the relevant class period.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 10:** Please produce all policies, procedures, guidelines, algorithms, protocols utilized or otherwise enacted for the purpose of processing claims.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11:** Please produce Defendant's balance sheets, profit/loss statements, and any other financial materials Defendant utilizes to calculate its net worth for the last six years.

**RESPONSE:**

Respectfully Submitted:

WILL FERGUSON & ASSOCIATES

By: _____
CORINNE L. HOLT
ADRIAN O. VEGA
1720 Louisiana Boulevard, N.E., Suite 100
Albuquerque, NM 87110
(505) 243-5566 Telephone
(505) 243-5699 Facsimile
*Attorneys for Plaintiff*

# New Mexico Courts
## Case Lookup

Exit

| Name Search | Case Number Search | DWI Search |
|---|---|---|
| Case Detail | | |

## Yvonne Apodaca v. Young American Insurance Company

| CASE DETAIL | | | |
|---|---|---|---|
| **CASE NUMBER** | **CURRENT JUDGE** | **FILING DATE** | **COURT** |
| D-202-CV-201801469 | Lopez, Victor S. | 02/19/2018 | ALBUQUERQUE DISTRICT |

| PARTIES TO THIS CASE | | | |
|---|---|---|---|
| **PARTY TYPE** | **PARTY DESCRIPTION** | **PARTY #** | **PARTY NAME** |
| D | Defendant | 1 | YOUNG AMERICAN INSURANCE COMPANY |
| P | Plaintiff | 1 | APODACA YVONNE |
| | | | ATTORNEY: HOLT CORINNE L. |

| CIVIL COMPLAINT DETAIL | | | | |
|---|---|---|---|---|
| **COMPLAINT DATE** | **COMPLAINT SEQ #** | **COMPLAINT DESCRIPTION** | **DISPOSITION** | **DISPOSITION DATE** |
| 02/19/2018 | 1 | OPN: COMPLAINT | | |
| **COA SEQUENCE #** | **COA DESCRIPTION** | | | |
| 1 | Trade Practices Act | | | |
| **PARTY NAME** | **PARTY TYPE** | | **PARTY #** | |

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISPOSITION | DISPOSITION DATE |
|---|---|---|---|---|
| 01/19/2018 | 1 | OPN: COMPLAINT | | |
| **COA SEQUENCE #** | **COA DESCRIPTION** | | | |
| 1 | Breach of Contract | | | |
| **PARTY NAME** | **PARTY TYPE** | | **PARTY #** | |

| REGISTER OF ACTIONS ACTIVITY | | | | | |
|---|---|---|---|---|---|
| **EVENT DATE** | **EVENT DESCRIPTION** | **EVENT RESULT** | **PARTY TYPE** | **PARTY #** | **AMOUNT** |
| 02/27/2018 | | | | | |
| 02/19/2018 | ARB: CERT NOT SUBJECT | | | | |
| 02/19/2018 | JURY DEMAND 12 PERSON | | | | |
| 02/19/2018 | OPN: COMPLAINT | | | | |

| JUDGE ASSIGNMENT HISTORY | | | |
|---|---|---|---|
| ASSIGNMENT DATE | JUDGE NAME | SEQUENCE # | ASSIGNMENT EVENT DESCRIPTION |
| 02/19/2018 | Lopez, Victor S. | 1 | INITIAL ASSIGNMENT |

Return    Print

©2007 New Mexico Courts

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

YVONNE APODACA, on behalf of herself ⟩     No. _____
and all others similarly situated, ⟩
⟩
Plaintiff, ⟩     CASE BELOW:
⟩     Second Judicial District
v. ⟩     County of Bernalillo
⟩     New Mexico
YOUNG AMERICAN INSURANCE ⟩     Case No. D-202-CV-2018-01469
COMPANY, ⟩
⟩
Defendant. ⟩

**DECLARATION OF EDGAR MEZA**

I, Edgar Meza, being duly sworn, declare as follows:

1.      I am over the age of 21 years and a resident of the State of Texas.

2.      I am the Vice President of Claims for Young America Insurance Company ("Young America"), and am authorized to execute this Declaration on behalf of Young America.

3.      I have knowledge of the facts set forth in this Declaration, both personally and through my review of business records made and kept in the regular course of Young America's business by those whose regular job function it is to make and keep such records, and consultation with informed Young America personnel.

4.      Young America was served with the Complaint and summons in the above-captioned action on April 4, 2018.

5.      Young America was, at the time the above-captioned action was filed on February 19, 2018, and still is, a corporation incorporated under the laws of the State of Texas with its principal place of business in El Paso, Texas.

6.      My review of Young America's business records shows that, from February 19, 2012 to February 19, 2018, in New Mexico, Young America had approximately 62 underinsured

motorist ("UIM") bodily injury claims in which the insured had UIM bodily injury coverage limits of $25,000 per person and $50,000 per accident where the claim was closed without payment of UIM benefits.

7.     My review of Young America's business records also shows that, from February 19, 2012 to February 19, 2018, in New Mexico, Young America had approximately 75 UIM property damage claims in which the insured had UIM property damage coverage limits of $10,000 per accident where the claim was closed without payment of UIM benefits.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:  April 27, 2018

_____
Edgar Meza

# EXHIBIT 3

FILED IN MY OFFICE
DISTRICT COURT CLERK
2/19/2018 2:04:32 PM
James A. Noel
Catherine Chavez

SECOND JUDICIAL COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO


**YVONNE APODACA**
**on behalf of herself and all others similarly situated,**

      **Plaintiff,**

**v.**                                       Case No. <u>D-202-CV-2018-01469</u>

**YOUNG AMERICAN INSURANCE COMPANY,**

      **Defendant.**

### CLASS ACTION COMPLAINT FOR BREACH OF STATUTORY, <u>COMMON LAW, AND CONTRACTUAL DUTIES</u>

      Plaintiff Yvonne Apodaca ("Ms. Apodaca"), for herself and on behalf of the class defined herein, through

her counsel, Will Ferguson & Associates, for her Complaint, states generally as follows:

      1.    Defendant Young American Insurance Company (hereinafter referred to as "Defendant") failed to act honestly and in good faith when it solicited and sold superfluous and illusory minimal limits underinsured motorist coverage to their insureds (in whole or in part) in violation of New Mexico law, and/or it denied claims for the benefits of that coverage. Basically, there is no such thing as "minimum limits underinsured motorist coverage". Nonetheless, Defendant sold such coverage to Ms. Apodaca and other class members.

      2.    This conduct violates the New Mexico Unfair Practices Act, N.M.S.A.1978, § §57–12–1 *et seq.* ("UPA"); the New Mexico Unfair Insurance Practices Act N.M.S.A.1978, §§ 59A–16–1 *et seq.* ("UIPA"), and New Mexico common law.

      3.    Ms. Apodaca brings this action on her own behalf, and on behalf of the many insured around the state who have been deceived by Defendant's practices.

1

## I.  JURISDICTION AND VENUE:

4.      Ms. Apodaca is now and was at all times material to this Complaint a resident of the City of Albuquerque, Bernalillo County, New Mexico.

5.      At all times material, Ms. Apodaca was covered by a policy of automotive insurance issued by Defendant in the State of New Mexico, which provided her with underinsured coverage for injuries and damages described herein.

7.      Upon information and belief, Defendant is an insurance company authorized to do business in the State of New Mexico.

6.      The acts complained of herein occurred in Bernalillo County, New Mexico.

7.      Jurisdiction and venue are proper in this Court.

## II.  GENERAL ALLEGATIONS COMMON TO ALL COUNTS OF THIS COMPLAINT: [1]

### MS. APODACA IS INJURED IN A CAR CRASH WITH AN UNDERINSURED MOTORIST

8.      On January 23, 2017, Ms. Apodaca sustained bodily injuries and other damages arising from an automobile collision that occurred in Albuquerque, New Mexico; Ms. Apodaca was not at fault for the crash.

9.      On January 23, 2017, Ms. Apodaca was a passenger in a vehicle traveling Southeast on San Mateo Boulevard, a public thoroughfare in the City of Albuquerque, Bernalillo County, New Mexico.  The vehicle Ms. Apodaca was traveling in had a green light to proceed straight through the intersection of San Mateo Boulevard and Pan American Fwy NE.

---

[1]Except as context may otherwise require, the factual allegations hereof are based on information and belief.

2

10.     At the same time, Tortfeasor Ben Shriver ("tortfeasor") was traveling Northwest on San Mateo Boulevard and intended to turn left onto Pan American Fwy NE to head South on Pan American Fwy NE.

11.     As the vehicle Ms. Apodaca was a passenger in proceeded through the intersection, the tortfeasor drove into the vehicle causing a violent collision.

12.     the tortfeasor was arrested for aggravated driving while under the influence of liquor or drugs.

13.     As a result of the impact, Ms. Apodaca suffered serious bodily injuries and other damages.

14.     At the time of the collision, Ms. Apodaca was abiding by the traffic laws of the State of New Mexico and the City of Albuquerque.

15.     At the time of the occurrence, Ms. Apodaca was insured by Defendant with Policy No. 640513605912.

16.     The tortfeasor was an underinsured motorist at the time of the collision, pursuant to the terms of the Defendant's insurance policy of which Ms. Apodaca was an insured, and also under New Mexico law.

17.     Ms. Apodaca received the full extent of liability coverage carried by the tortfeasor, $25,000.00.

18.     Prior to the collision at issue, Ms. Apodaca had properly paid a premium for automobile coverage under the Young American Insurance Company auto insurance policy and had a reasonable expectation that she carried underinsured motorist coverage of $25,000.00 each person and $50,000.00 each accident.

19.     At the time of the collision, Ms. Apodaca was under the belief and had a reasonable expectation that she was entitled to underinsured benefits pursuant to the policy issued by Defendant.

### DEFENDANT DECEPTIVELY SOLICITS AND SELLS SUPERFLUOUS AND ILLUSORY UNDERINSURED COVERAGE TO MS. APODACA

20.     Ms. Apodaca incorporates by reference the preceding paragraphs as though they were stated fully herein.

21.     In a 2010 case entitled *Progressive v. Weed Warrior*, the New Mexico Supreme Court established that underinsured coverage is superfluous when the tortfeasor and the injured driver both carry the statutory minimum of liability and underinsured coverage. *Progressive Nw. Ins. Co. v. Weed Warrior Services*, 2010-NMSC-050, ¶ 10. 149 N.M. 157, 161, 245 P.3d 1209, 1213.

22.     On a date prior to the loss alleged, Ms. Apodaca met and consulted with Defendant's agents to purchase automobile insurance.

23.     Defendant's agents told Ms. Apodaca that she must be insured for the state mandated minimum automobile bodily injury insurance coverage of $25,000.00 per person and $50,000.00 per accident, and consequently Ms. Apodaca selected underinsured motorist coverage in the amount of $25,000.00 each person and $50,000.00 per accident.

24.     Defendant misrepresented to Ms. Apodaca that she would benefit from underinsured coverage when it knew, or should have known, that the coverage was meaningless. Defendant's misrepresentations or lack of representations were made, knowingly and willfully, with the intent to deceive and induce Ms. Apodaca in purchasing underinsured coverage.

4

25.     Based on the information provided by Defendant, Ms. Apodaca agreed to pay a premium for the State of New Mexico mandated minimum automobile bodily injury and uninsured/underinsured motorist coverage.

26.     Following the representations and misrepresentations alleged, Defendant issued to Ms. Apodaca an automobile insurance policy with corresponding endorsements ("policy").

27.     In violation of New Mexico law, the policy failed to state that underinsured coverage is illusory in the event of a covered occurrence, as in this case, involving a minimally insured driver.[2]

28.     In violation of New Mexico law, Defendant had a duty to fully inform Plaintiff what the monthly premiums would be for the next available tier of coverage.[3] Defendant breached that duty.

29.     Under New Mexico law, Defendant had a duty to act fairly, honestly, and in good faith when dealing with Ms. Apodaca. Defendant failed to do so when it failed to fully inform Ms. Apodaca of illusory underinsured coverage with a disproportionate premium/indemnification ratio when compared to the next tier of available coverage and to not materially misrepresent the terms of underinsured coverage. Defendant breached that duty.

### INSURANCE INVESTIGATION AND CLAIMS

30.     Following the motor vehicle collision, Ms. Apodaca promptly reported the occurrence to Defendant by and through its claims representatives.

---

[2] The minimum limit of bodily injury coverage in New Mexico is $25,000.00 per person / $50,000.00 per accident.
[3] Without the benefit of discovery, Plaintiff suggests that, at a conservative figure, the premium for $50,000.00 per person/$100,000.00 per accident, under similar circumstances of this case, would cost one and one half times the amount of minimal coverage. Therefore, at the time of the Plaintiff's collision, it is reasonable to believe that the Defendant would charge a premium of $120 for bodily injury coverage and $81 for un-and-underinsured coverage for a total of $201 for a combined coverage of $50,000.00 per person/$100,000.00 per accident.

5

31.    Defendant opened a claim, assigned claim number 375130, and assigned the adjustment of the matter to its adjuster Nicole Garcia.

32.    The policy issued by Defendant, insuring Ms. Apodaca shows liability coverage on five vehicles in the amount of $25,000 each person and $50,000 per accident, per vehicle. *See* **Exhibit 1**.

33.    The policy issued by Defendant, insuring Ms. Apodaca shows underinsured coverage on five vehicles in the amount of $25,000 per person and $50,000 per occurrence, per vehicle. *Id.*

34.    Ms. Apodaca, through counsel, demanded Defendant provide Ms. Apodaca with underinsured benefits for which Defendant solicited and for which Ms. Apodaca paid a premium and Defendant denied Ms. Apodaca 's claim for underinsured benefits under the policy. *See* **Exhibit 2**.

35.    Ms. Apodaca had a reasonable expectation that she would benefit from insurance premiums she paid for. In fact, under her policy, there were virtually no underinsured motorist benefits.

36.    Defendant, in violation of the New Mexico Unfair Practices Act, N.M.S.A.1978, § 57–12–1 *et seq.* ("UPA"); the New Mexico Unfair Insurance Practices Act N.M.S.A.1978, §§ 59A–16–1 *et seq.* ("UIPA"), and New Mexico common law, failed to offer their insureds sufficient information and knowledge regarding the superfluous, illusory, and deceptive coverage.

37.    Pursuant to New Mexico law, Defendant failed to inform Ms. Apodaca and other insureds about premium costs corresponding to the available levels of coverage and failed to offer their insureds a fair opportunity to reconsider the decision to select a higher amount of underinsured coverage or reject such coverage altogether.

6

38.     In violation of New Mexico law, Defendant failed to fully inform Ms. Apodaca and other insureds during the application and policy writing process that a purchase of 25/50 underinsured coverage, when triggered by a crash with a tortfeasor who has 25/50 bodily injury liability limits, will result in a payment of premium for which no payment of benefits will occur and therefore violated Ms. Apodaca and other insureds reasonable expectations of benefiting from underinsured coverage.

39.     Pursuant to New Mexico law, the underinsured application, coverage, and the corresponding policy language must not be so complex such that a reasonable person would be unable to understand its full impact when he or she reads it. *See King v. Travelers Ins. Co.*, 1973-NMSC-013, 84 N.M. 550, 556, 505 P.2d 1226, 1232 and *Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, 111 N.M. 154, 159, 803 P.2d 243, 248.

40.     Because Defendant failed to fully inform Ms. Apodaca of the New Mexico offset law or that New Mexico is a "difference state" during the application and policy underwriting stages, in a manner consistent with the requirements imposed by, the UPA, the UIPA, and New Mexico common law, Defendant should be required to fully compensate Ms. Apodaca for the injuries and/or actual damages she sustained as a result of the January 23, 2017 accident, via the underinsured benefits ($25,000.00) for which she paid a premium.

**III.    CLASS ACTION ALLEGATIONS AND REQUEST TO CERTIFY CLASS:**

41.     Ms. Apodaca incorporates by reference the preceding paragraphs as though they were stated fully herein.

42.     Upon information and belief, all insurance policies issued by the Defendant to New Mexico policyholders are uniform in all respects material to the claims brought herein and differ only in the limits identified in the endorsements included with such policies.

7

43.    Defendant committed the above-described unfair and/or deceptive practices, omissions of material fact, wrongful failures to provide underinsured coverage (or the full amount of such coverage to which Ms. Apodaca was entitled under applicable law), wrongful denials of claims for underinsured benefits, and/or breaches of the implied covenant of good faith and fair dealing against other Defendant' policyholders or insureds in New Mexico.

44.    This action is properly maintainable as a class action pursuant to Rule 1-023 NMRA. The Class is defined as follows:

> All persons (and their heirs, executors, administrators, successors, and assigns) who, in the prior six years from the date of filing of this complaint, were a policyholder and/or insured, of a Motor Vehicle Policy issued by defendant where that policy did not and does not provide underinsured coverage paid for by the policyholder, and sold and solicited by the defendant, due to the application of an offset as set forth in NMSA 66-5-301, otherwise known as the New Mexico offset law or being a "difference state".

45.    Excluded from the Class are all present or former officers and/or directors of Defendant, the "Referees" for purposes of the Evaluation Appeal process set forth below, Class Counsel and their resident relatives, and Defendant's counsel of record and their resident relatives.

46.    The proposed class definition is precise, objective, and presently ascertainable, and it is administratively feasible for the Court to easily ascertain whether a particular individual is a member.

47.    Certification of the Class is desirable and proper because there are predominant questions of law and fact in this case which are common to all members of the Class. Such common questions of law and fact include, but are not limited to:

8

a. Whether Defendant's acts and practices constitute a breach of the Defendant's contractual obligations with respect to their New Mexico policyholders;

b. Whether Defendant's acts and practices have breached the implied covenant of good faith and fair dealing with respect to the policies issued to New Mexicans;

c. Whether Defendant's acts and practices violate Article 16 of the New Mexico Insurance Code;

d. Whether Defendant's acts and practices constitute failure to state a material fact in connection with the sale of the Defendant's insurance policies;

e. Whether Defendant's acts and practices have deceived or have had a tendency to deceive the Defendant's policyholders;

f. Whether Defendant's acts and practices have been misleading or deceptive;

g. The content, interpretation, and legal effect of the Defendant's standard application forms and other standard form documents, in so far as they relate to the acts and practices set forth above;

h. The remedies available to Plaintiff and to the Defendant's other New Mexico policyholders or insureds, should it be determined that Defendant's acts and practices have violated their duties to New Mexico policyholders or insureds;

i. The legal and/or factual applicability of affirmative defenses that may be alleged by Defendant.

48. Certification of the Class is desirable and proper because Ms. Apodaca's claims are typical of the claims of the members of the Class Ms. Apodaca seeks to represent. Without limitation, Ms. Apodaca claims that Defendant' alleged acts and practices are in breach of the

9

common law and statutory duties alleged above are typical of the claims of the members of the Class.

49.     Certification of the Class is desirable and proper because Ms. Apodaca will fairly and adequately protect the interests of the Class she seeks to represent. There are no conflicts of interest between Ms. Apodaca and those of other members of the putative Class, and Ms. Apodaca is cognizant of her duties and responsibilities to the putative Class. Ms. Apodaca's attorneys are qualified, experienced, and able to conduct the proposed class action litigation.

48.     Certification of the Class is desirable and proper because the members of the Class are so numerous that joinder of all members of the Class is impracticable.

49.     This action should proceed as a class action under Rule l-023(B)(1) NMRA because the prosecution of separate actions by the individual members of the Class would create a risk of:

> a.   inconsistent or varying adjudications with respect to individual members would establish incompatible standards of conduct for them and/or Defendant; or
>
> b.   adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

50.     This action should also proceed as a class action under Rule 1 -023(B)(2) NMRA, because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to the Class. Ms. Apodaca seeks to establish the rights and obligations of the parties with respect to the claims at issue in this case and to enjoin Defendant from continuing to engage in those practices that

violate the duties, contractual, and legal obligations owed to Ms. Apodaca and the Class under New Mexico law.

51.    This action should also proceed as a class action under Rule 1-023(B)(3) NMRA. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

  a.   Common or generalized proof will predominate with respect to the essential elements of the claims at issue.

  b.   The common questions of law or fact that pertain to the Class predominate over any individual questions and any individual issues do not overwhelm the common ones.

  c.   No member of the Class has a substantial interest in individually controlling the prosecution of a separate action, but, if any such member or members wish to do so, they may exclude themselves from the Class upon the receipt of notice under Rule 1-023(C)(2) NMRA.

  d.   Upon information and belief, there are no pending lawsuits by members of the Plaintiff Class who may be similarly situated and which may potentially affect the matters raised in this action.

  e.   It is desirable to concentrate the litigation of these claims in this forum. The determination of the claims of all members of the Class in a single forum, and in a single proceeding, would be a fair and efficient means of resolving the issues raised in this litigation as between Defendant and the Defendant' policyholders and insureds within the Class described by Ms. Apodaca herein.

f.  The difficulties likely to be encountered in the management of a class action in this litigation are reasonably manageable, especially when weighed against the virtual impossibility of affording adequate relief to the members of the Class through numerous separate actions.

52.  Ms. Apodaca seeks to certify a class pursuant to the Class Actions provisions of 1-023 NMRA, under New Mexico law, and based on the facts and allegations set forth herein.

## IV.  ALLEGATIONS AND CLAIMS:

### COUNT I:
### NEGLIGENCE

53.  Ms. Apodaca incorporates by reference the preceding paragraphs as if they were fully stated herein.

54.  Defendant had a duty to ensure Ms. Apodaca and other members of the class would be offered and obtain the maximum benefit of underinsured coverage and would not be sold illusory underinsured coverage.

55.  It was reasonably foreseeable that the underinsured coverage sold to the Plaintiff and other members of the class was, in large part, illusory and that Defendant materially misrepresented the terms of underinsured coverage.

56.  A reasonably prudent insurance company exercising ordinary care would offer and sell underinsured coverage that was not illusory and would not materially mispresent the terms of underinsured coverage.

57.  Defendant's actions and inactions, through its agents, employees, or others on its behalf, were negligent in that they breached the standard of care required of an insurance company issuing auto policies in New Mexico.

12

58.    As a result of Defendant's negligence, Ms. Apodaca and the Class, sustained actual damages for which Defendant is liable. Plaintiffs are entitled to punitive damages for actions of Defendant which were willful, reckless and wanton, and in bad faith.

## COUNT II:
## VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT

59.    Ms. Apodaca incorporates by reference the preceding paragraphs as if they were fully stated herein.

60.    There was in effect, at all times material, a state statute commonly known as the New Mexico Unfair Trade Practices Act, N.M.S.A.1978, § 57–12–2 to 58–12–10 ("UPA"), including but not limited to those subsections in Section 57-12-2(D)(7), (D)(14), (D)(15), (D)(17) and Section 57-12-2(E), which prohibits a person selling insurance from engaging in unfair or deceptive trade practices:

> D. "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Trade Practices Act [Chapter 57, Article 12 NMSA 1978], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead and includes but is not limited to:
>
>> (7) representing that the goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another;
>>
>> (14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;
>>
>> (15) stating that a transaction involves rights, remedies or obligations that it does not involve;
>>
>> (17) failure to deliver the quality or quantity of goods or services contracted for;
>
> E. "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease,

rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment:

> (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

> (2) results in a gross disparity between the value received by a person and the price paid.

61.     Defendant failed to deliver the quality or quantity of services applied for and purchased by Ms. Apodaca and other insured by failing to provide insurance applications and policies containing sufficient information to fully inform a reasonably prudent person charged with the task of purchasing underinsured insurance, to which Ms. Apodaca was under the reasonable belief that such coverage existed, and to pay claims for insurance benefits sold and solicited by Defendant.

62.     Defendant, acting through their agents, adjusters, and employees, as set forth above, knowingly and willfully engaged in unfair trade practices in violation of Section 57-12-3, including but not limited to those subsections in Section 57-12-2(D)(7), (D)(l4), (D)(I5), (D)(17) and Section 57-12-2(E).

63.     Defendant's practices as described herein have resulted in actual damages, trebled, to Ms. Apodaca and the Class in an amount to be proven at trial, plus costs and reasonable attorney fees.

**COUNT III:**
**VIOLATIONS OF THE NEW MEXICO UNFAIR INSURANCE PRACTICES ACT**

64.     Ms. Apodaca re-alleges all previous paragraphs of this Complaint and incorporates the same as though set forth fully herein.

65.     There was in effect at all times material a State statute commonly known in the New Mexico Unfair Insurance Practices Act N.M.S.A.1978, §§ 59A–16–1 *et seq.* ("UIPA").

66.    Pursuant to N.M.S.A.1978, §§ 59A–16–30, the UIPA provides a right of action to any person covered by the UIPA who has suffered damages as a result of a violation of that article by an insurer or agent and is granted a right to bring an action in district court to recover actual damages.

67.    Ms. Apodaca was insured under the policy issued and adjusted by the Defendant.

68.    Defendant owed Ms. Apodaca the duties of good faith, fair dealing, and the accompanying fiduciary obligations.

69.    In the sale and provision of insurance, and in the handling of the underinsured motorist claim, Defendant failed to exercise good faith, unreasonably delayed payment, and failed to give the interests of its insured (Ms. Apodaca) the same consideration it gave its own interests.

70.    Defendant's failure to pay anything on Ms. Apodaca's underinsured motorist claims was unfounded, unreasonable, and in bad faith.

71.    Defendant misrepresented the terms of the policy sold and provided to Ms. Apodaca and other insureds, and/or failed to disclose material facts reasonably necessary to prevent other statements from being misleading; failed to implement and follow reasonable standards in the sale and provision of insurance; and failed to follow Defendant's own customary practices and procedures.

72.    Defendant's acts and failures to act were in reckless disregard of Ms. Apodaca's and other insureds' rights as an insured under the subject policy.

73.    Defendant's acts and practices took advantage of the lack of knowledge and experience of Ms. Apodaca and other insureds to a grossly unfair degree.

74.    Defendant failed to abide by its statutory duties under the UIPA, and such violations are negligence per se.

15

75.    Defendant misrepresented to its insured, pertinent facts or policy provisions relating to coverages at issue, in violation of NMSA § 59A-16-20(A).

76.    Defendant failed to acknowledge and act reasonably and promptly upon communications with respect to claims from its insureds arising under the policy, in violation of NMSA § 59A-16-20(B).

77.    Defendant failed to adopt and implement reasonable standards for the prompt investigation and processing of its insured's claims arising under the policy, in violation of NMSA § 59A-16-20(C).

78.    Defendant failed to properly affirm and pay the coverage for claims of its insured within a reasonable period of time after proof of loss requirements under the policy was completed and submitted by Ms. Apodaca, in violation of NMSA § 59A-16-20(D).

79.    Defendant did not attempt in good faith to effectuate prompt, fair and equitable settlement of Ms. Apodaca's claims in which liability has become reasonably clear, in violation of NMSA § 59A-16-20(E).

80.    Defendant compelled Ms. Apodaca to institute litigation to recover amounts due under the policies by offering substantially less (i.e. nothing) than the amounts claimed by Ms. Apodaca and that will ultimately be recovered in actions brought by Ms. Apodaca, in violation of NMSA § 59A-16-20(G).

81.    Defendant failed to promptly provide Ms. Apodaca with a reasonable explanation of the basis relied upon in the policy in relation to the facts and the applicable law for denial of her claims, in violation of NMSA § 59A-16-20(N).

82.    Defendant' failure to act in good faith and Defendant' violations of the UIPA are proximate causes of damages sustained by Ms. Apodaca.

83.     Defendant's conduct was in bad faith, malicious, willful, wanton, fraudulent and/or in reckless disregard of Ms. Apodaca's rights.

84.     Ms. Apodaca and other members of the Class are entitled to attorneys' fees and costs pursuant to §59A-16-30. As a direct and proximate result of Defendant' acts, omissions policies, and conduct in violating the UIPA, as set forth above, Ms. Apodaca and other members of the Class have sustained damages, in addition to the damages common to all counts of this Complaint, including but not limited to the actual damages incurred, the cost of prosecution of this lawsuit, attorneys' fees, and interest on the sums owed under the policy.  These injuries and damages are ongoing, permanent, and are expected to continue in the future.

## COUNT IV:
## BREACH OF CONTRACT AND CLAIM FOR DEFENDANT MOTORIST COVERAGE

85.     Ms. Apodaca incorporates by reference the preceding paragraphs as though they were stated fully herein.

86.     By issuing the policy in question to Ms. Apodaca, Defendant entered into a contract with Ms. Apodaca and entered into the same contractual obligations with each member of the Class Ms. Apodaca seeks to represent.

87.     By undertaking the acts described above, Defendant has wrongfully and unlawfully failed to provide underinsured coverage and/or denied underinsured claims for benefits to Ms. Apodaca and other members of the Class.

88.     By engaging in the conduct alleged herein, the Defendant breached their contractual obligations to Ms. Apodaca and to the Class.

89.     Pursuant to New Mexico law, and because of Defendant' breaches of their contractual obligations to Ms. Apodaca and to the Class, Ms. Apodaca and other members of the Class are entitled to actual damages, including but not limited to, underinsured coverage in an

17

amount equal to liability limits and may be entitled to payment of underinsured benefits, or payment of additional underinsured benefits accordingly and to damage to Ms. Apodaca and the Class in an amount to be proven at trial.

## COUNT V:
## BREACH OF CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING

90.    Ms. Apodaca re-alleges all previous paragraphs of this Complaint and incorporates the same as though set forth fully herein.

91.    By issuing the policies to Ms. Apodaca and the Class, Defendant entered into a contract with Ms. Apodaca and the Class.

92.    Defendant failed to perform its obligations under that contract.

93.    Implicit in the contract of insurance between Ms. Apodaca and Defendant was the covenant that Defendant would, at all times, act in good faith and deal honestly and fairly with Ms. Apodaca entitled to compensation for damages under her policy.

94.    Defendant breached the implied covenant of good faith and fair dealing, in one or more of the following ways, including but not limited to:

   a.    Failing and refusing to acknowledge that the subject occurrence triggers the subject insurance policy;

   b.    Failing and refusing to disclose, admit and acknowledge coverage in this matter;

   c.    Failing and refusing to promptly and fairly investigate, process, determine and decide Ms. Apodaca's claims under the policy referenced above;

   d.    Denying coverage to its insured, Ms. Apodaca, under the policy;

   e.    Failing and refusing to cover its insured, Ms. Apodaca, under the underinsured motorist portion of the policy referenced above; and

18

f.    Failing and refusing to mediate, resolve, and settle Ms. Apodaca's underinsured

motorist claims.

95.    As a direct and proximate result Defendant's acts and omissions alleged herein, Ms.

Apodaca has suffered damages in an amount to be proven at trial.

96.    Defendant's acts and omissions alleged herein and breach in the implied covenant

of good faith and fair dealings were done intentionally, willfully, wantonly, grossly, maliciously

and/or with reckless disregard for the rights of Ms. Apodaca.  Accordingly, Ms. Apodaca and the

Class are entitled to recover punitive damages in an amount to be determined by the jury and

sufficient to punish the Defendant for its misconduct and to deter others from similar conduct in

the future.

## COUNT VI:
## INJUNCTIVE RELIEF

97.    Ms. Apodaca incorporates by reference the preceding paragraphs as though they

were stated fully herein.

98.    Ms. Apodaca and the Class are entitled to injunctive relief requiring that Defendant

be enjoined from continuing practices that violate the duties, contractual, and legal obligations

owed to Ms. Apodaca and the Class.

99.    Defendant must be compelled to stop their practice of failing to provide

underinsured coverage benefits equal to the limits of liability coverage where they have failed to

fully inform their insureds throughout the application and policy underwriting process.

## COUNT VII:
## DECLARATORY JUDGMENT

100.    Ms. Apodaca incorporates by reference the preceding paragraphs as though they were stated fully herein.

101.    An actual controversy exists between the parties thereby rendering declaratory relief proper pursuant to FRCP 57 and 28 U.S.C. 2201, the Declaratory Judgment Act.

102.    Ms. Apodaca and the Class are entitled to a declaratory judgment establishing the respective rights and obligations of the parties with respect to the claims set forth herein.

## COUNT VIII:
## PUNITIVE DAMAGES

103.    Ms. Apodaca incorporates by reference the preceding paragraphs as though they were stated fully herein.

104.    Defendant' conduct in failing to provide their insureds with underinsured policy benefits in an amount sold and solicited was willful, wanton, and in reckless disregard of Ms. Apodaca's rights and the rights of the Class.

WHEREFORE, Ms. Apodaca on her own and on behalf of the Class prays for judgment, injunctive, and declaratory relief against Defendant as follows:

A.      Certifying this action as a class action pursuant to Rule l-023(A) & (B) NMRA;

B.      Awarding compensatory damages to Ms. Apodaca and the Class for the damages done to them by Defendant in an amount to be proven at trial;

C.      Awarding punitive damages to Ms. Apodaca and the Class in an amount sufficient to punish Defendant for their willful and wanton conduct, and to deter them, and others similarly situated, from such conduct in the future in an amount to be proven at trial;

D.      Awarding Ms. Apodaca and the Class damages from Defendant as a result of its violations of UIPA, in an amount to be determined at trial and for attorneys' fees and costs;

E.    Awarding treble damages in accordance with the UPA which will deter Defendant and others from such unfair trade practices and wrongful conduct in the future and will punish them or the conduct set forth in this Complaint;

F.    Granting a declaratory judgment that establishes the rights and obligations of the parties with respect to the claims set forth herein;

G.    Granting injunctive relief as may be deemed proper by the Court to require Defendant to desist in the wrongful actions described herein;

H.    Awarding Ms. Apodaca and the Class their costs and expenses incurred in this action, including reasonable attorneys' fees, experts' fees, and costs; and

I.    Granting such other and further relief as the Court deems just and proper.

Respectfully Submitted:

WILL FERGUSON & ASSOCIATES

By: _____
CORINNE L. HOLT
ADRIAN O. VEGA
1720 Louisiana Boulevard, N.E., Suite 100
Albuquerque, NM 87110
(505) 243-5566 Telephone
(505) 243-5699 Facsimile
*Attorneys for Plaintiff*

21

# DECLARATIONS
### NEW MEXICO PERSONAL
### AUTO POLICY NON-STACKING

**YOUNG AMERICA INSURANCE COMPANY**
1800 LEE TREVINO, SUITE 201   EL PASO, TEXAS 79936

| POLICY NUMBER | POLICY PERIOD | POLICY CHANGE EFFECTIVE DATE | AGENT NUMBER |
|---|---|---|---|
| 64  513605912 | FROM **12/31/16** TO **1/30/17** TERM **01** MONTHS  COVERAGE BEGINS AT 12:01 A.M. STANDARD TIME OR AT THE TIME YOUR PREMIUM WAS RECEIVED WHICHEVER IS LATER | 12/31/16 | 133   07186 |

| NAMED INSURED AND MAILING ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| **YVONNE APODACA**  **327 LAGUNITAS RD SW**  **ALBUQUERQUE      NM    87105** | **RDY INSURANCE AGENCY**  **1720 BRIDGE SW, STE K**  **ALBUQUERQUE, NM**        **87105**  **800 554-0595** |

**COVERAGES/PREMIUMS** COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY ARE SHOWN FOR THE COVERAGE.

| AUTO | I-LIABILITY BODILY INJURY | PROPERTY DAMAGE | II-MEDICAL PAYMENTS | III-UNINSURED/UNDERINSURED MOTORISTS BODILY INJURY | PROPERTY DAMAGE 250 DED | IV-COMPREHENSIVE DEDUCTIBLE | COLLISION DEDUCTIBLE | TOWING AND LABOR COST | RENTAL REIMB 30 DAYS MAXIMUM |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 25000 50000 | 10000 | | 25000  50000 | 10000 | 1000 | 1000 | | |
| 2 | 25000 50000 | 10000 | | UNSTACKED | | | | | 30 PER DAY |
| 3 | 25000 50000 | 10000 | | | | | | | |
| 4 | 25000 50000 | 10000 | | | | | | | |
| 5 | 25000 50000 | 10000 | | | | | | | |
| | EACH PERSON     EACH ACCIDENT | | EACH PERSON | EACH PERSON     EACH ACCIDENT | | | | | |
| 1 | 35 | 26 | | 12 | 12 | 29 | 36 | | 7 |
| 2 | 40 | 29 | | STACKING COVERAGE | | | | | |
| 3 | 28 | 20 | | OFFERED AND | | | | | |
| 4 | 27 | 20 | | REJECTED | | | | | |
| 5 | 27 | 20 | | | | | | | |
| | DOLLARS | | DOLLARS | DOLLARS | | | | | DOLLARS |

| | SUB TOTAL | POLICY FEE | TOTAL | INSTALLMENT FEE |
|---|---|---|---|---|
| | 368.00 | | 374.00 | 6.00 |

**DESCRIPTION OF AUTO**          *** THIS POLICY CONTAINS A NAMED DRIVER EXCLUSION ***

| AUTO | YEAR | MAKE | MODEL | VIN NUMBER | DRIVER | TERRITORY | SYMBOL | SPECIAL EQUIP |
|---|---|---|---|---|---|---|---|---|
| 1 | 2012 | FORD | FOCUS | 1FAHP3F20CL313650 | 3 | 14 | 10 | |
| 2 | 2006 | NSSN | ARMADA SE/ | 5N1AA08B46N736406 | 4 | 14 | 17 | |
| 3 | 2002 | FORD | F-250 | 1FTNW20S02EA77054 | 2 | 14 | 14 | |
| 4 | 2004 | DODG | RAM | 1D7HA16D64J132959 | 1 | 14 | 15 | |
| 5 | 2011 | FORD | ESCAPE | 1FMCU9DG0BKB28481 | 1 | 14 | 14 | |

| | ANY LOSS UNDER PART D IS PAYABLE AS INTEREST MAY APPEAR TO THE NAMED INSURED AND | | |
|---|---|---|---|
| 1 | ONE MAIN FINANCIAL | PO BOX 200049 | KENNESAW     GA 30156-0000 |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

| | THE AUTO(S) DESCRIBED IN THIS POLICY IS PRINCIPALLY GARAGED AT THE ABOVE ADDRESS UNLESS OTHERWISE STATED |
|---|---|
| 1 | 87105-0000 |
| 2 | 87105-0000 |
| 3 | 87105-0000 |
| 4 | 87105-0000 |
| 5 | 87105-0000 |

## FOR INFORMATION, OR TO MAKE A COMPLAINT, CALL 1-800-554-0595
## CLAIMS INFORMATION 1-800-880-0472

By _____
Chief Executive Officer and Secretary

PROCESSED ON:  12/31/16

**EXHIBIT 1**

YA-NM-64-0001 (10 16)    *** Si desea una [...] me al 1-800-554-0595 ***

**YOUNG AMERICA INSURANCE COMPANY**
1800 LEE TREVINO, SUITE 201   EL PASO, TEXAS 79936

# DECLARATIONS
### NEW MEXICO PERSONAL
### AUTO POLICY NON-STACKING

| POLICY NUMBER | POLICY PERIOD | POLICY CHANGE EFFECTIVE DATE | AGENT NUMBER |
|---|---|---|---|
| 64  513605912 | FROM  **1/30/17**  TO  **3/01/17**   TERM **01**  MONTHS<br>COVERAGE BEGINS AT 12:01 A.M. STANDARD TIME OR AT THE TIME YOUR PREMIUM WAS RECEIVED WHICHEVER IS LATER | 1/30/17 | 133   07186 |

| NAMED INSURED AND MAILING ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| YVONNE APODACA<br>327 LAGUNITAS RD SW<br>ALBUQUERQUE      NM    87105 | **RDY INSURANCE AGENCY**<br>**1720 BRIDGE SW, STE K**<br>**ALBUQUERQUE, NM**           **87105**<br>**800 554-0595** |

**COVERAGES/PREMIUMS** COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY ARE SHOWN FOR THE COVERAGE.

| AUTO | I-LIABILITY | | II-MEDICAL PAYMENTS | III-UNINSURED/UNDERINSURED MOTORISTS | | IV-COVERAGE FOR DAMAGE TO YOUR AUTO | | | |
|---|---|---|---|---|---|---|---|---|---|
| | BODILY INJURY | PROPERTY DAMAGE | | BODILY INJURY | PROPERTY DAMAGE 250 DED | COMPREHENSIVE DEDUCTIBLE | COLLISION DEDUCTIBLE | TOWING AND LABOR COST | RENTAL REIMB 30 DAYS MAXIMUM |
| 1 | 25000  50000 | 10000 | | 25000  50000  10000 | | 1000 | 1000 | | 30 PER DAY |
| 2 | 25000  50000 | 10000 | | UNSTACKED | | | | | |
| 3 | 25000  50000 | 10000 | | | | | | | |
| 4 | 25000  50000 | 10000 | | | | | | | |
| 5 | 25000  50000 | 10000 | | | | | | | |
| | EACH PERSON     EACH ACCIDENT | | EACH PERSON | EACH PERSON   EACH ACCIDENT | | | | | |
| 1 | 35 | 26 | | 12 | 12 | 29 | 36 | | 7 |
| 2 | 40 | 29 | | STACKING COVERAGE | | | | | |
| 3 | 28 | 20 | | OFFERED AND | | | | | |
| 4 | 27 | 20 | | REJECTED | | | | | |
| 5 | 27 | 20 | | | | | | | |
| | | DOLLARS | DOLLARS | | DOLLARS | | | | DOLLARS |

| | SUB TOTAL | POLICY FEE | TOTAL | INSTALLMENT FEE |
|---|---|---|---|---|
| | 368.00 | | 374.00 | 6.00 |

**DESCRIPTION OF AUTO**          *** THIS POLICY CONTAINS A NAMED DRIVER EXCLUSION ***

| AUTO | YEAR | MAKE | MODEL | VIN NUMBER | DRIVER | TERRITORY | SYMBOL | SPECIAL EQUIP |
|---|---|---|---|---|---|---|---|---|
| 1 | 2012 | FORD | FOCUS | 1FAHP3F20CL313650 | 3 | 14 | 10 | |
| 2 | 2006 | NSSN | ARMADA SE/ | 5N1AA08B46N736406 | 4 | 14 | 17 | |
| 3 | 2002 | FORD | F-250 | 1FTNW20S02EA77054 | 2 | 14 | 14 | |
| 4 | 2004 | DODG | RAM | 1D7HA16D64J132959 | 1 | 14 | 15 | |
| 5 | 2011 | FORD | ESCAPE | 1FMCU9DG0BKB28481 | 1 | 14 | 14 | |

ANY LOSS UNDER PART D IS PAYABLE AS INTEREST MAY APPEAR TO THE NAMED INSURED AND

| 1 | ONE MAIN FINANCIAL | PO BOX 200049 | KENNESAW | GA 30156-0000 |
|---|---|---|---|---|
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |

THE AUTO(S) DESCRIBED IN THIS POLICY IS PRINCIPALLY GARAGED AT THE ABOVE ADDRESS UNLESS OTHERWISE STATED

| 1 | 87105-0000 |
|---|---|
| 2 | 87105-0000 |
| 3 | 87105-0000 |
| 4 | 87105-0000 |
| 5 | 87105-0000 |

**FOR INFORMATION, OR TO MAKE A COMPLAINT, CALL 1-800-554-0595**
**CLAIMS INFORMATION 1-800-880-0472**

By _____
Chief Executive Officer and Secretary

PROCESSED ON:   **1/30/17**

YA-NM-64-0001 (10 16)   *** Si desea una explicación en Español, llame al 1-800-554-0595 ***

**YOUNG AMERICA INSURANCE COMPANY**
1800 LEE TREVINO, SUITE 201    EL PASO, TEXAS 79936

**DECLARATIONS**
NEW MEXICO PERSONAL
AUTO POLICY NON-STACKING

| POLICY NUMBER | POLICY PERIOD | POLICY CHANGE EFFECTIVE DATE | AGENT NUMBER |
|---|---|---|---|
| 64  513605912 | FROM **1/30/17** TO **3/01/17**  TERM **01**  MONTHS  COVERAGE BEGINS AT 12:01 A.M. STANDARD TIME OR AT THE TIME YOUR PREMIUM WAS RECEIVED WHICHEVER IS LATER | 1/30/17 | 133    07186 |

| NAMED INSURED AND MAILING ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| **YVONNE APODACA**  **327 LAGUNITAS RD SW**  **ALBUQUERQUE      NM    87105** | **RDY INSURANCE AGENCY**  **1720 BRIDGE SW, STE K**  **ALBUQUERQUE, NM**      **87105**  **800 554-0595** |

**COVERAGES/PREMIUMS** COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY ARE SHOWN FOR THE COVERAGE.

| AUTO | I-LIABILITY BODILY INJURY | PROPERTY DAMAGE | II-MEDICAL PAYMENTS | III-UNINSURED/UNDERINSURED MOTORISTS BODILY INJURY | PROPERTY DAMAGE 250 DED | IV-COVERAGE FOR DAMAGE TO YOUR AUTO COMPREHENSIVE DEDUCTIBLE | COLLISION DEDUCTIBLE | TOWING AND LABOR COST | RENTAL REIMB 30 DAYS MAXIMUM |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 25000  50000 | 10000 | | 25000  50000   10000 | | | | | |
| 2 | 25000  50000 | 10000 | | UNSTACKED | | | | | |
| 3 | 25000  50000 | 10000 | | | | | | | |
| 4 | 25000  50000 | 10000 | | | | | | | |
| | EACH PERSON      EACH ACCIDENT | | EACH PERSON | EACH PERSON      EACH ACCIDENT | | | | | |
| 1 | 40              29 | | | 12              12 | | | | | |
| 2 | 39              29 | | | STACKING COVERAGE | | | | | |
| 3 | 28              20 | | | OFFERED AND | | | | | |
| 4 | 27              20 | | | REJECTED | | | | | |
| | DOLLARS | | DOLLARS | DOLLARS | | | | | DOLLARS |

| | SUB TOTAL | POLICY FEE | TOTAL | INSTALLMENT FEE |
|---|---|---|---|---|
| | 256.00 | | 262.00 | 6.00 |

**DESCRIPTION OF AUTO**          *** THIS POLICY CONTAINS A NAMED DRIVER EXCLUSION ***

| AUTO | YEAR | MAKE | MODEL | VIN NUMBER | DRIVER | TERRITORY | SYMBOL | SPECIAL EQUIP |
|---|---|---|---|---|---|---|---|---|
| 1 | 2011 | FORD | ESCAPE | 1FMCU9DG0BKB28481 | 4 | 14 | 14 | |
| 2 | 2006 | NSSN | ARMADA SE/ | 5N1AA08B46N736406 | 3 | 14 | 17 | |
| 3 | 2002 | FORD | F-250 | 1FTNW20S02EA77054 | 2 | 14 | 14 | |
| 4 | 2004 | DODG | RAM | 1D7HA16D64J132959 | 1 | 14 | 15 | |

ANY LOSS UNDER PART D IS PAYABLE AS INTEREST MAY APPEAR TO THE NAMED INSURED AND

1
2
3
4

THE AUTO(S) DESCRIBED IN THIS POLICY IS PRINCIPALLY GARAGED AT THE ABOVE ADDRESS UNLESS OTHERWISE STATED

| 1 | 87105-0000 |
|---|---|
| 2 | 87105-0000 |
| 3 | 87105-0000 |
| 4 | 87105-0000 |

**FOR INFORMATION, OR TO MAKE A COMPLAINT, CALL 1-800-554-0595**
**CLAIMS INFORMATION 1-800-880-0472**

By
Chief Executive Officer and Secretary

PROCESSED ON:    **1/30/17**

YA-NM-64-0001 (10 16)    *** Si desea una explicación en Español, llame al 1-800-554-0595 ***

# DECLARATIONS
## NEW MEXICO PERSONAL
## AUTO POLICY NON-STACKING

**YOUNG AMERICA INSURANCE COMPANY**
1800 LEE TREVINO, SUITE 201   EL PASO, TEXAS 79936

| POLICY NUMBER | POLICY PERIOD | POLICY CHANGE EFFECTIVE DATE | AGENT NUMBER | |
|---|---|---|---|---|
| 64  513605912 | FROM **3/01/17** TO **3/31/17**  TERM **01**  MONTHS<br>COVERAGE BEGINS AT 12:01 A.M. STANDARD TIME OR AT THE TIME YOUR PREMIUM WAS RECEIVED WHICHEVER IS LATER | **3/01/17** | 133 | 07186 |

| NAMED INSURED AND MAILING ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| YVONNE APODACA<br>327 LAGUNITAS RD SW<br>ALBUQUERQUE      NM      87105 | **RDY INSURANCE AGENCY**<br>**1720 BRIDGE SW, STE K**<br>**ALBUQUERQUE, NM**              87105<br>800 554-0595 |

**COVERAGES/PREMIUMS** COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY ARE SHOWN FOR THE COVERAGE.

| A U T O | I-LIABILITY | | II-MEDICAL PAYMENTS | III-UNINSURED/UNDERINSURED MOTORISTS | | IV-COVERAGE FOR DAMAGE TO YOUR AUTO | | | |
|---|---|---|---|---|---|---|---|---|---|
| | BODILY INJURY | PROPERTY DAMAGE | | BODILY INJURY | PROPERTY DAMAGE 250 DED | COMPREHENSIVE DEDUCTIBLE | COLLISION DEDUCTIBLE | TOWING AND LABOR COST | RENTAL REIMB 30 DAYS MAXIMUM |
| 1 | 25000  50000 | 10000 | | 25000  50000 | 10000 | | | | |
| 2 | 25000  50000 | 10000 | | UNSTACKED | | | | | |
| 3 | 25000  50000 | 10000 | | | | | | | |
| 4 | 25000  50000 | 10000 | | | | | | | |
| | EACH PERSON | EACH ACCIDENT | EACH PERSON | EACH PERSON | EACH ACCIDENT | | | | |
| 1 | 40 | 29 | | 12 | 12 | | | | |
| 2 | 39 | 29 | | STACKING COVERAGE | | | | | |
| 3 | 29 | 21 | | OFFERED AND | | | | | |
| 4 | 28 | 20 | | REJECTED | | | | | |
| | DOLLARS | | DOLLARS | DOLLARS | | | | DOLLARS | |

| | SUB TOTAL | POLICY FEE | TOTAL | INSTALLMENT FEE |
|---|---|---|---|---|
| | 259.00 | | 265.00 | 6.00 |

**DESCRIPTION OF AUTO**             *** THIS POLICY CONTAINS A NAMED DRIVER EXCLUSION ***

| AUTO | YEAR | MAKE | MODEL | VIN NUMBER | DRIVER | TERRITORY | SYMBOL | SPECIAL EQUIP |
|---|---|---|---|---|---|---|---|---|
| 1 | 2011 | FORD | ESCAPE | 1FMCU9DG0BKB28481 | 4 | 14 | 14 | |
| 2 | 2006 | NSSN | ARMADA SE/ | 5N1AA08846N736406 | 3 | 14 | 17 | |
| 3 | 2002 | FORD | F-250 | 1FTNW20S02EA77054 | 1 | 14 | 14 | |
| 4 | 2004 | DODG | RAM | 1D7HA16D64J132959 | 2 | 14 | 15 | |

ANY LOSS UNDER PART D IS PAYABLE AS INTEREST MAY APPEAR TO THE NAMED INSURED AND

1
2
3
4

THE AUTO(S) DESCRIBED IN THIS POLICY IS PRINCIPALLY GARAGED AT THE ABOVE ADDRESS UNLESS OTHERWISE STATED

| 1 | 87105-0000 |
| 2 | 87105-0000 |
| 3 | 87105-0000 |
| 4 | 87105-0000 |

## FOR INFORMATION, OR TO MAKE A COMPLAINT, CALL 1-800-554-0595
## CLAIMS INFORMATION 1-800-880-0472

By _____
Chief Executive Officer and Secretary

PROCESSED ON:   **3/01/17**

YA-NM-64-0001 (10 16)   *** Si desea una explicación en Español, llame al 1-800-554-0595 ***

SACC Fax Server        2/15/2018 5:36:41 PM   PAGE   2/002   Fax Server

# YOUNG AMERICA INSURANCE COMPANY
### CLAIMS DIVISION

February 15, 2018

64 / 513605912
WILL FERGUSON & ASSOCIATES
1720 LOUISIANA BLVD NE STE 100
ALBUQUERQUE, NM 87110

RE: Claim Number : 375 - 00130
    Insured       : YVONNE APODACA
    Claimant(s)   : FRANK APODACA, YVONNE APODACA
    Date of Loss  : 1/23/2017

Dear WILL FERGUSON & ASSOCIATES,

This is in response to your letters of 1/15/17 (I believe you meant 1/15/18) and 2/15/17 regarding the potential UIM and UMPD claims for Frank and Yvonne Apodaca.

You have made a Demand of YAIC's UIMBI Limits of $25,000/$50,000 and our UMPD limit of $10,000.

With regard to the UIMBI claim, we have conferred with Counsel regarding New Mexico Law concerning the viability of such a claim. We have been advised that we are entitled to a full offset of the Torteasors Policy payments. You advised us that your client's were each paid $25,000 by Progressive. We were additionally advised that any specific Punitive Damages being claimed fall within the UIMBI Limit and are subject to the same offset. We were advised this is based on NM Case Law, as determined by the Court of Appeals.

Based on the information we were provided, we do not believe there is any viable UIMBI claims for either of your clients. If you have information to the contrary, please advise us as soon as possible, along with any documentation you wish us to consider.

With regard to the UMPD claim, we have been advised the same principles apply. In this case, you have told us that Progressive offered $7559.87 for their Vehicle. We assume that Progressive did go ahead and pay our insured's this amount (unless you advise to the contrary) and therefore, we are entitled to an offset, which would leave $2440.13 out of the $10,000 UMPD Coverage our insured carries. Therefore we believe that our insured's are entitled to collect up to this amount and offer same accordingly.

If our offer (of the UMPD available monies) is acceptable to you, please advise and forward drafting instructions and a W-9 and we will issue the check.

If you have any further questions or wish to discuss further, please feel free to contact me.

Sincerely,
***JACK ELAM***
Claim Representative
210-647-9291
Office Hours: Mon - Fri 8:00 to 5:00 CST

***NEW MEXICO RESIDENTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

| X | HOME OFFICE
P.O. BOX 972450
EL PASO, TX 79997
TEL: (915) 590-5692
1-800-880-0472


EXHIBIT
a
exhibitsticker.com

# FAX

**To: Corine L. Holt**

Company:
Fax: 5052435699
Phone:

**From:**

Fax:
Phone:
E-mail: jacky.elam@fredloya.com

## NOTES:

**Date and time of transmission:** Thursday, February 15, 2018 5:36:18 PM
**Number of pages including this cover sheet:** 02

FILED IN MY OFFICE
DISTRICT COURT CLERK
2/19/2018 2:04:32 PM
James A. Noel
Catherine Chavez

SECOND JUDICIAL COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO


**YVONNE APODACA**
**on behalf of herself and all others similarly situated,**

       **Plaintiff,**

v.                                                          Case No.    D-202-CV-2018-01469

**YOUNG AMERICAN INSURANCE COMPANY,**

       **Defendant.**

### JURY DEMAND

Plaintiff Yvonne Apodaca by and through her undersigned counsel of record, WILL

FERGUSON & ASSOCIATES (Corinne L. Holt and Adrian O. Vega), hereby demands a trial

by jury of twelve (12) jurors in the above entitled and numbered cause and states Plaintiff has

paid a jury fee in the amount of $300.00.


                        Respectfully Submitted:

                        WILL FERGUSON & ASSOCIATES

                        BY: _____

                        CORINNE L. HOLT
                        ADRIAN O. VEGA
                        1720 Louisiana Blvd NE, Suite 100
                        Albuquerque, NM 87110
                        T 505-243-5566 / F 505-243-5699
                        *Attorneys for Plaintiff*

FILED IN MY OFFICE
DISTRICT COURT CLERK
2/19/2018 2:04:32 PM
James A. Noel
Catherine Chavez

SECOND JUDICIAL COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO

**YVONNE APODACA**
**on behalf of herself and all others similarly situated,**

       **Plaintiff,**

v.                                     Case No. _D-202-CV-2018-01469_

**YOUNG AMERICAN INSURANCE COMPANY,**

       **Defendant.**

### PLAINTIFF'S CERTIFICATION
### REGARDING ARBITRATION UNDER RULE LR2-603

CORINNE L. HOLT, counsel for Plaintiff, certifies that:

____    This case <u>is</u> subject to referral to arbitration under Local Rule 603. No party seeks relief other than a money judgment and no party seeks and award in excess of $25,000 inclusive of punitive damages and exclusive of interest, costs and attorneys' fees.

_X_    This case <u>is not</u> subject to referral to arbitration under Local Rule 603 because at least one party seeks relief other than a money judgment and/or at least one party seeks an award in excess of $25,000 inclusive of punitive damages and exclusive of interest, costs and attorneys' fees.

Respectfully Submitted:

WILL FERGUSON & ASSOCIATES

BY: _____
     CORINNE L. HOLT
     ADRIAN O. VEGA
     1720 Louisiana Blvd NE, Suite 100
     Albuquerque, NM 87110
     T 505-243-5566 / F 505-243-5699
     *Attorneys for Plaintiff*

# CASE DOCKET
## CASE NO. D-202-CV-2018-01469

| | | |
|---|---|---|
| Yvonne Apodaca | § | Location: **2nd District** |
| | § | Judicial Officer: **Lopez, Victor S.** |
| v. | § | Filed on: **02/19/2018** |
| | § | |
| Young American Insurance Company | | |

### CASE INFORMATION

**File Date** 01/19/2018                                    Case Type: **Tort**

| **Cause of Action** | **Description/Remedy** | Case | **02/19/2018** | **Pending, Jury** |
|---|---|---|---|---|
| Breach of Contract | Action | Status: | **Trial** | |

**File Date** 02/19/2018

**Cause of Action**          **Description/Remedy**
Trade Practices Act          Action

| DATE | CASE ASSIGNMENT |
|---|---|

**Current Case Assignment**
Case Number          D-202-CV-2018-01469
Court                2nd District
Date Assigned        02/19/2018
Judicial Officer     Lopez, Victor S.

### PARTY INFORMATION

| | | *Lead Attorneys* |
|---|---|---|
| Plaintiff | Apodaca, Yvonne | **Holt, Corinne L.** |
| | | *Retained* |
| | | 505-243-5566(W) |
| Defendant | **Young American Insurance Company** | |

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 01/19/2018 | **Cause of Action**  Breach of Contract  ()  Action Type  Action | |
| 02/19/2018 | **Cause of Action**  Trade Practices Act  ()  Action Type  Action | |
| 02/19/2018 | OPN: COMPLAINT | |
| 02/19/2018 | JURY DEMAND 12 PERSON | |
| 02/19/2018 | ARB: CERT NOT SUBJECT | |
| 02/27/2018 | **Summons**  Young American Insurance Company  Unserved | |

| DATE | FINANCIAL INFORMATION | |
|---|---|---|

| | | |
|---|---|---|
| **Plaintiff** Apodaca, Yvonne | | |
| Total Charges | | 432.00 |
| Total Payments and Credits | | 432.00 |
| **Balance Due as of 4/24/2018** | | **0.00** |

2ND JUDICIAL DISTRICT COURT IN BERNALILLO COUNTY

# CASE DOCKET

## CASE NO. D-202-CV-2018-01469

```
************************************************************
```
ENTIRE FILE AS LISTED ON ATTACHED DOCKET
```
************************************************************
```

STATE OF NEW MEXICO    )
                          )ss.
COUNTY OF BERNALILLO )

       I the undersigned, Clerk of the District Court of the Second Judicial District of the State of New Mexico, within and for the County of Bernalillo, do hereby certify the above and foregoing to be a true, correct and complete copy of ENTIRE FILE AS LISTED ON ATTACHED DOCKET, **YVONNE APODACA ON BEHALF OF HERSELF AND ALL OTHERS SIMILARL SITUATED VS YOUNG AMERICAN INSURANCE COMPANY** case number **CV-2018-01469** as the same remains on file and of record in my office.

       WITNESS my hand and the seal of said Court this 24TH Day of April, 2018.



JAMES A. NOEL
CLERK OF THE DISTRICT COURT

By: _____

**Deputy**

JS 44  (Rev. 08/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

**DEFENDANTS**

**(b)**  County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❑ 1  U.S. Government
Plaintiff
- ❑ 3  Federal Question
*(U.S. Government Not a Party)*

- ❑ 2  U.S. Government
Defendant
- ❑ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❑ 1 | ❑ 1 | Incorporated *or* Principal Place of Business In This State | ❑ 4 | ❑ 4 |
| Citizen of Another State | ❑ 2 | ❑ 2 | Incorporated *and* Principal Place of Business In Another State | ❑ 5 | ❑ 5 |
| Citizen or Subject of a Foreign Country | ❑ 3 | ❑ 3 | Foreign Nation | ❑ 6 | ❑ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❑ 625 Drug Related Seizure of Property 21 USC 881 | ❑ 422 Appeal 28 USC 158 | ❑ 375 False Claims Act |
| ❑ 120 Marine | ❑ 310 Airplane | ❑ 365 Personal Injury - Product Liability | ❑ 690 Other | ❑ 423 Withdrawal 28 USC 157 | ❑ 376 Qui Tam (31 USC 3729(a)) |
| ❑ 130 Miller Act | ❑ 315 Airplane Product Liability | ❑ 367 Health Care/ | | | ❑ 400 State Reapportionment |
| ❑ 140 Negotiable Instrument | ❑ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ❑ 410 Antitrust |
| ❑ 150 Recovery of Overpayment & Enforcement of Judgment | ❑ 330 Federal Employers' Liability | Product Liability | | ❑ 820 Copyrights | ❑ 430 Banks and Banking |
| ❑ 151 Medicare Act | ❑ 340 Marine | ❑ 368 Asbestos Personal Injury Product | | ❑ 830 Patent | ❑ 450 Commerce |
| ❑ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❑ 345 Marine Product Liability | Liability | | ❑ 840 Trademark | ❑ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❑ 470 Racketeer Influenced and Corrupt Organizations |
| ❑ 153 Recovery of Overpayment of Veteran's Benefits | ❑ 350 Motor Vehicle | ❑ 370 Other Fraud | ❑ 710 Fair Labor Standards Act | ❑ 861 HIA (1395ff) | ❑ 480 Consumer Credit |
| ❑ 160 Stockholders' Suits | ❑ 355 Motor Vehicle Product Liability | ❑ 371 Truth in Lending | ❑ 720 Labor/Management Relations | ❑ 862 Black Lung (923) | ❑ 490 Cable/Sat TV |
| ❑ 190 Other Contract | ❑ 360 Other Personal Injury | ❑ 380 Other Personal Property Damage | ❑ 740 Railway Labor Act | ❑ 863 DIWC/DIWW (405(g)) | ❑ 850 Securities/Commodities/ Exchange |
| ❑ 195 Contract Product Liability | ❑ 362 Personal Injury - Medical Malpractice | ❑ 385 Property Damage Product Liability | ❑ 751 Family and Medical Leave Act | ❑ 864 SSID Title XVI | ❑ 890 Other Statutory Actions |
| ❑ 196 Franchise | | | ❑ 790 Other Labor Litigation | ❑ 865 RSI (405(g)) | ❑ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❑ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ❑ 893 Environmental Matters |
| ❑ 210 Land Condemnation | ❑ 440 Other Civil Rights | **Habeas Corpus:** | | ❑ 870 Taxes (U.S. Plaintiff or Defendant) | ❑ 895 Freedom of Information Act |
| ❑ 220 Foreclosure | ❑ 441 Voting | ❑ 463 Alien Detainee | | ❑ 871 IRS—Third Party 26 USC 7609 | ❑ 896 Arbitration |
| ❑ 230 Rent Lease & Ejectment | ❑ 442 Employment | ❑ 510 Motions to Vacate Sentence | | | ❑ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❑ 240 Torts to Land | ❑ 443 Housing/ Accommodations | ❑ 530 General | | | ❑ 950 Constitutionality of State Statutes |
| ❑ 245 Tort Product Liability | ❑ 445 Amer. w/Disabilities - Employment | ❑ 535 Death Penalty | **IMMIGRATION** | | |
| ❑ 290 All Other Real Property | ❑ 446 Amer. w/Disabilities - Other | **Other:** | ❑ 462 Naturalization Application | | |
| | ❑ 448 Education | ❑ 540 Mandamus & Other | ❑ 465 Other Immigration Actions | | |
| | | ❑ 550 Civil Rights | | | |
| | | ❑ 555 Prison Condition | | | |
| | | ❑ 560 Civil Detainee - Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

- ❑ 1  Original Proceeding
- ❑ 2  Removed from State Court
- ❑ 3  Remanded from Appellate Court
- ❑ 4  Reinstated or Reopened
- ❑ 5  Transferred from Another District *(specify)*
- ❑ 6  Multidistrict Litigation - Transfer
- ❑ 8  Multidistrict Litigation - Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII.  REQUESTED IN COMPLAINT:

❑ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ❑ Yes   ❑ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #               AMOUNT                 APPLYING IFP                 JUDGE                 MAG. JUDGE