**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| YVONNE APODACA, on behalf of herself )<br>And all others similarly situated,            )<br>                                                          )<br>              Plaintiff,                           )<br>                                                          )<br>       v.                                              )<br>                                                          )<br>YOUNG AMERICA INSURANCE                )<br>COMPANY, LOYA INSURANCE             )<br>COMPANY, and EP LOYA GROUP, LP,   )<br>                                                          )<br>              Defendants.                        )<br>                                                          ) | No. 1:18-cv-00399<br><br>Assigned to: Magistrate Judge Gregory B. Wormuth<br><br>Referred to: Magistrate Judge Jerry H. Ritter |

**FIRST AMENDED CLASS ACTION COMPLAINT FOR BREACH OF STATUTORY, COMMON LAW, AND CONTRACTUAL DUTIES**

Plaintiff Yvonne Apodaca ("Ms. Apodaca"), for herself and on behalf of the class defined herein, through her counsel, Will Ferguson & Associates, for her First Amended Complaint, approved by counsel pursuant to Rule 15(a)(2), states generally as follows:

1.      Defendants failed to act honestly and in good faith when they solicited and sold superfluous and illusory minimal limits underinsured motorist coverage to their insureds (in whole or in part) in violation of New Mexico law, and/or they denied claims for the benefits of that coverage. Basically, there is no such thing as "minimum limits underinsured motorist coverage". Nonetheless, Defendants sold such coverage to Ms. Apodaca and other class members.

2.      This conduct violates the New Mexico Unfair Practices Act, N.M.S.A.1978, § §57–12–1 *et seq.* ("UPA"); the New Mexico Unfair Insurance Practices Act N.M.S.A.1978, §§ 59A–16–1 *et seq.* ("UIPA"), and New Mexico common law.

3.      Ms. Apodaca brings this action on her own behalf, and on behalf of the many insured around the state who have been deceived by Defendants' practices.

# I.  <u>JURISDICTION AND VENUE:</u>

4.      Ms. Apodaca is now and was at all times material to this Complaint a resident of the City of Albuquerque, Bernalillo County, New Mexico.

5.      At all times material, Ms. Apodaca was covered by a policy of automotive insurance issued by Defendant Young America Insurance Company in the State of New Mexico, which provided her with underinsured coverage for injuries and damages described herein.

7.      Defendant Young America Insurance Company is an insurance company authorized to do business in the State of New Mexico.

8.      Defendant Young America Insurance Company is wholly owned by Defendant Loya Insurance Group.

9.      Defendant Loya Insurance Group is wholly owned by Defendant EP Loya Group, L.P.  (Defendant Young America Insurance Company, Defendant Loya Insurance Group, and Defendant EP Loya Group, L.P. are hereinafter collectively referred to as "Defendants").

10.     Defendants worked together as a joint venture to sell automobile policies to New Mexico residents, including Ms. Apodaca.  They are therefor jointly and severally liable for the acts and resulting damages contained herein.

6.      The acts complained of herein occurred in San Juan County, New Mexico.

7.      Jurisdiction and venue are proper in this Court.

## II.  GENERAL ALLEGATIONS COMMON TO ALL COUNTS OF THIS COMPLAINT: [1]

### MS. APODACA IS INJURED IN A CAR CRASH WITH AN UNDERINSURED MOTORIST

8.      On January 23, 2017, Ms. Apodaca sustained bodily injuries and other damages arising from an automobile collision that occurred in Albuquerque, New Mexico; Ms. Apodaca was not at fault for the crash.

9.      On January 23, 2017, Ms. Apodaca was a passenger in a vehicle traveling Southeast on San Mateo Boulevard, a public thoroughfare in the City of Albuquerque, Bernalillo County, New Mexico.  The vehicle Ms. Apodaca was traveling in had a green light to proceed straight through the intersection of San Mateo Boulevard and Pan American Fwy NE.

10.      At the same time, Tortfeasor Ben Shriver ("tortfeasor") was traveling Northwest on San Mateo Boulevard and intended to turn left onto Pan American Fwy NE to head South on Pan American Fwy NE.

11.      As the vehicle Ms. Apodaca was a passenger in proceeded through the intersection, the tortfeasor drove into the vehicle causing a violent collision.

12.      the tortfeasor was arrested for aggravated driving while under the influence of liquor or drugs.

13.      As a result of the impact, Ms. Apodaca suffered serious bodily injuries and other damages.

14.      At the time of the collision, Ms. Apodaca was abiding by the traffic laws of the State of New Mexico and the City of Albuquerque.

---

[1]Except as context may otherwise require, the factual allegations hereof are based on information and belief.

15.    At the time of the occurrence, Ms. Apodaca was insured by Defendants with Policy No. 640513605912.

16.    The tortfeasor was an underinsured motorist at the time of the collision, pursuant to the terms of the Defendans' insurance policy of which Ms. Apodaca was an insured, and also under New Mexico law.

17.    Ms. Apodaca received the full extent of liability coverage carried by the tortfeasor, $25,000.00.

18.    Prior to the collision at issue, Ms. Apodaca had properly paid a premium for automobile coverage under the Young American Insurance Company auto insurance policy and had a reasonable expectation that she carried underinsured motorist coverage of $25,000.00 each person and $50,000.00 each accident.

19.    At the time of the collision, Ms. Apodaca was under the belief and had a reasonable expectation that she was entitled to underinsured benefits pursuant to the policy issued by Defendants.

### DEFENDANTS DECEPTIVELY SOLICITED AND SOLD SUPERFLUOUS AND ILLUSORY UNDERINSURED COVERAGE TO MS. APODACA

20.    Ms. Apodaca incorporates by reference the preceding paragraphs as though they were stated fully herein.

21.    In a 2010 case entitled *Progressive v. Weed Warrior*, the New Mexico Supreme Court established that underinsured coverage is superfluous when the tortfeasor and the injured driver both carry the statutory minimum of liability and underinsured coverage. *Progressive Nw. Ins. Co. v. Weed Warrior Services*, 2010-NMSC-050, ¶ 10. 149 N.M. 157, 161, 245 P.3d 1209, 1213.

22.    On a date prior to the loss alleged, Ms. Apodaca met and consulted with Defendants' agents to purchase automobile insurance.

23.    Defendants' agents told Ms. Apodaca that she must be insured for the state mandated minimum automobile bodily injury insurance coverage of $25,000.00 per person and $50,000.00 per accident, and consequently Ms. Apodaca selected underinsured motorist coverage in the amount of $25,000.00 each person and $50,000.00 per accident.

24.    Defendants misrepresented to Ms. Apodaca that she would benefit from underinsured coverage when they knew, or should have known, that the coverage was meaningless. Defendants' misrepresentations or lack of representations were made, knowingly and willfully, with the intent to deceive and induce Ms. Apodaca in purchasing underinsured coverage.

25.    Based on the information provided by Defendants, Ms. Apodaca agreed to pay a premium for the State of New Mexico mandated minimum automobile bodily injury and uninsured/underinsured motorist coverage.

26.    Following the representations and misrepresentations alleged, Defendants issued to Ms. Apodaca an automobile insurance policy with corresponding endorsements ("policy").

27.    In violation of New Mexico law, the policy failed to state that underinsured coverage is illusory in the event of a covered occurrence, as in this case, involving a minimally insured driver.[2]

---

[2]The minimum limit of bodily injury coverage in New Mexico is $25,000.00 per person / $50,000.00 per accident.

28.     In violation of New Mexico law, Defendants had a duty to fully inform Plaintiff what the monthly premiums would be for the next available tier of coverage.[3] Defendants breached that duty.

29.     Under New Mexico law, Defendants had a duty to act fairly, honestly, and in good faith when dealing with Ms. Apodaca. Defendants failed to do so when they failed to fully inform Ms. Apodaca of illusory underinsured coverage with a disproportionate premium/indemnification ratio when compared to the next tier of available coverage and to not materially misrepresent the terms of underinsured coverage. Defendants breached that duty.

### INSURANCE INVESTIGATION AND CLAIMS

30.     Following the motor vehicle collision, Ms. Apodaca promptly reported the occurrence to Defendants by and through their claims representatives.

31.     Defendants opened a claim, assigned claim number 375130, and assigned the adjustment of the matter to its adjuster Nicole Garcia.

32.     The policy issued by Defendants, insuring Ms. Apodaca shows liability coverage on five vehicles in the amount of $25,000 each person and $50,000 per accident, per vehicle. *See* **Exhibit 1**.

33.     The policy issued by Defendants, insuring Ms. Apodaca shows underinsured coverage on five vehicles in the amount of $25,000 per person and $50,000 per occurrence, per vehicle. *Id.*

---

[3]Without the benefit of discovery, Plaintiff suggests that, at a conservative figure, the premium for $50,000.00 per person/$100,000.00 per accident, under similar circumstances of this case, would cost one and one half times the amount of minimal coverage. Therefore, at the time of the Plaintiff's collision, it is reasonable to believe that the Defendants would charge a premium of $120 for bodily injury coverage and $81 for un-and-underinsured coverage for a total of $201 for a combined coverage of $50,000.00 per person/$100,000.00 per accident.

34.    Ms. Apodaca, through counsel, demanded Defendants provide Ms. Apodaca with underinsured benefits for which Defendants solicited and for which Ms. Apodaca paid a premium and Defendants denied Ms. Apodaca 's claim for underinsured benefits under the policy.  *See* **Exhibit 2.**

35.    Ms. Apodaca had a reasonable expectation that she would benefit from insurance premiums she paid for. In fact, under her policy, there were virtually no underinsured motorist benefits.

36.    Defendants, in violation of the New Mexico Unfair Practices Act, N.M.S.A.1978, § 57–12–1 *et seq.* ("UPA"); the New Mexico Unfair Insurance Practices Act N.M.S.A.1978, §§ 59A–16–1 *et seq.* ("UIPA"), and New Mexico common law, failed to offer their insureds sufficient information and knowledge regarding the superfluous, illusory, and deceptive coverage.

37.    Pursuant to New Mexico law, Defendants failed to inform Ms. Apodaca and other insureds about premium costs corresponding to the available levels of coverage and failed to offer their insureds a fair opportunity to reconsider the decision to select a higher amount of underinsured coverage or reject such coverage altogether.

38.    In violation of New Mexico law, Defendants failed to fully inform Ms. Apodaca and other insureds during the application and policy writing process that a purchase of 25/50 underinsured coverage, when triggered by a crash with a tortfeasor who has 25/50 bodily injury liability limits, will result in a payment of premium for which no payment of benefits will occur and therefore violated Ms. Apodaca and other insureds reasonable expectations of benefiting from underinsured coverage.

39.    Pursuant to New Mexico law, the underinsured application, coverage, and the corresponding policy language must not be so complex such that a reasonable person would be

unable to understand its full impact when he or she reads it. *See King v. Travelers Ins. Co.,* 1973-NMSC-013, 84 N.M. 550, 556, 505 P.2d 1226, 1232 and *Romero v. Dairyland Ins. Co.,* 1990-NMSC-111, 111 N.M. 154, 159, 803 P.2d 243, 248.

40.    Because Defendants failed to fully inform Ms. Apodaca of the New Mexico offset law or that New Mexico is a "difference state" during the application and policy underwriting stages, in a manner consistent with the requirements imposed by, the UPA, the UIPA, and New Mexico common law, Defendants should be required to fully compensate Ms. Apodaca for the injuries and/or actual damages she sustained as a result of the January 23, 2017 accident, via the underinsured benefits ($25,000.00) for which she paid a premium.

## III.    CLASS ACTION ALLEGATIONS AND REQUEST TO CERTIFY CLASS:

41.    Ms. Apodaca incorporates by reference the preceding paragraphs as though they were stated fully herein.

42.    Upon information and belief, all insurance policies issued by the Defendants to New Mexico policyholders are uniform in all respects material to the claims brought herein and differ only in the limits identified in the endorsements included with such policies.

43.    Defendants committed the above-described unfair and/or deceptive practices, omissions of material fact, wrongful failures to provide underinsured coverage (or the full amount of such coverage to which Ms. Apodaca was entitled under applicable law), wrongful denials of claims for underinsured benefits, and/or breaches of the implied covenant of good faith and fair dealing against other policyholders or insureds in New Mexico.

44.    This action is properly maintainable as a class action pursuant to Rule 1-023 NMRA. The Class is defined as follows:

> All persons (and their heirs, executors, administrators, successors, and assigns) who, in the prior six years from the date of filing of this complaint, were a

policyholder and/or insured, of a Motor Vehicle Policy issued by Defendants where that policy did not and does not provide underinsured coverage paid for by the policyholder, and sold and solicited by the Defendants, due to the application of an offset as set forth in NMSA 66-5-301, otherwise known as the New Mexico offset law or being a "difference state".

45.     Excluded from the Class are all present or former officers and/or directors of Defendants, the "Referees" for purposes of the Evaluation Appeal process set forth below, Class Counsel and their resident relatives, and Defendants' counsel of record and their resident relatives.

46.     The proposed class definition is precise, objective, and presently ascertainable, and it is administratively feasible for the Court to easily ascertain whether a particular individual is a member.

47.     Certification of the Class is desirable and proper because there are predominant questions of law and fact in this case which are common to all members of the Class. Such common questions of law and fact include, but are not limited to:

a.   Whether Defendants' acts and practices constitute a breach of the Defendants' contractual obligations with respect to their New Mexico policyholders;

b.   Whether Defendants' acts and practices have breached the implied covenant of good faith and fair dealing with respect to the policies issued to New Mexicans;

c.   Whether Defendants' acts and practices violate Article 16 of the New Mexico Insurance Code;

d.   Whether Defendants' acts and practices constitute failure to state a material fact in connection with the sale of the Defendants' insurance policies;

e.   Whether Defendants' acts and practices have deceived or have had a tendency to deceive Defendants' policyholders;

f.   Whether Defendants' acts and practices have been misleading or deceptive;

g.  The content, interpretation, and legal effect of Defendants' standard application forms and other standard form documents, in so far as they relate to the acts and practices set forth above;

h.  The remedies available to Ms. Apodaca and to Defendants' other New Mexico policyholders or insureds, should it be determined that Defendants' acts and practices have violated their duties to New Mexico policyholders or insureds;

i.  The legal and/or factual applicability of affirmative defenses that may be alleged by Defendants.

48.    Certification of the Class is desirable and proper because Ms. Apodaca's claims are typical of the claims of the members of the Class Ms. Apodaca seeks to represent. Without limitation, Ms. Apodaca claims that Defendants' alleged acts and practices are in breach of the common law and statutory duties alleged above and are typical of the claims of the members of the Class.

49.    Certification of the Class is desirable and proper because Ms. Apodaca will fairly and adequately protect the interests of the Class she seeks to represent. There are no conflicts of interest between Ms. Apodaca and those of other members of the putative Class, and Ms. Apodaca is cognizant of her duties and responsibilities to the putative Class. Ms. Apodaca's attorneys are qualified, experienced, and able to conduct the proposed class action litigation.

48.    Certification of the Class is desirable and proper because the members of the Class are so numerous that joinder of all members of the Class is impracticable.

49.    This action should proceed as a class action under Rule l-023(B)(1) NMRA because the prosecution of separate actions by the individual members of the Class would create a risk of:

    a.   inconsistent or varying adjudications with respect to individual members would establish incompatible standards of conduct for them and/or Defendants; or

    b.   adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

50.    This action should also proceed as a class action under Rule 1 -023(B)(2) NMRA, because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to the Class. Ms. Apodaca seeks to establish the rights and obligations of the parties with respect to the claims at issue in this case and to enjoin Defendants from continuing to engage in those practices that violate the duties, contractual, and legal obligations owed to Ms. Apodaca and the Class under New Mexico law.

51.    This action should also proceed as a class action under Rule 1-023(B)(3) NMRA. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

    a.   Common or generalized proof will predominate with respect to the essential elements of the claims at issue.

    b.   The common questions of law or fact that pertain to the Class predominate over any individual questions and any individual issues do not overwhelm the common ones.

c.  No member of the Class has a substantial interest in individually controlling the prosecution of a separate action, but, if any such member or members wish to do so, they may exclude themselves from the Class upon the receipt of notice under Rule 1-023(C)(2) NMRA.

d.  Upon information and belief, there are no pending lawsuits by members of the Plaintiff Class who may be similarly situated and which may potentially affect the matters raised in this action.

e.  It is desirable to concentrate the litigation of these claims in this forum. The determination of the claims of all members of the Class in a single forum, and in a single proceeding, would be a fair and efficient means of resolving the issues raised in this litigation as between Defendants and Defendants' policyholders and insureds within the Class described by Ms. Apodaca herein.

f.  The difficulties likely to be encountered in the management of a class action in this litigation are reasonably manageable, especially when weighed against the virtual impossibility of affording adequate relief to the members of the Class through numerous separate actions.

52.  Ms. Apodaca seeks to certify a class pursuant to the Class Actions provisions of 1-023 NMRA, under New Mexico law, and based on the facts and allegations set forth herein.

## IV.    ALLEGATIONS AND CLAIMS:

### COUNT I:
### NEGLIGENCE

53.    Ms. Apodaca incorporates by reference the preceding paragraphs as if they were fully stated herein.

54.    Defendants had a duty to ensure Ms. Apodaca and other members of the class would be offered and obtain the maximum benefit of underinsured coverage and would not be sold illusory underinsured coverage.

55.    It was reasonably foreseeable that the underinsured coverage sold to Ms. Apodaca and other members of the class was, in large part, illusory and that Defendants materially misrepresented the terms of underinsured coverage.

56.    A reasonably prudent insurance company exercising ordinary care would offer and sell underinsured coverage that was not illusory and would not materially mispresent the terms of underinsured coverage.

57.    Defendants' actions and inactions, through its agents, employees, or others on its behalf, were negligent in that they breached the standard of care required of an insurance company issuing auto policies in New Mexico.

58.    As a result of Defendants' negligence, Ms. Apodaca and the Class, sustained actual damages for which Defendants are liable. Plaintiffs are entitled to punitive damages for actions of Defendants which were willful, reckless and wanton, and in bad faith.

## COUNT II:
## VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT

59.    Ms. Apodaca incorporates by reference the preceding paragraphs as if they were fully stated herein.

60.    There was in effect, at all times material, a state statute commonly known as the New Mexico Unfair Trade Practices Act, N.M.S.A.1978, § 57–12–2 to 58–12–10 ("UPA"), including but not limited to those subsections in Section 57-12-2(D)(7), (D)(l4), (D)(15), (D)(l7) and Section 57-12-2(E), which prohibits a person selling insurance from engaging in unfair or deceptive trade practices:

> D. "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Trade Practices Act [Chapter 57, Article 12 NMSA 1978], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead and includes but is not limited to:
>
>> (7) representing that the goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another;
>>
>> (14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;
>>
>> (15) stating that a transaction involves rights, remedies or obligations that it does not involve;
>>
>> (17) failure to deliver the quality or quantity of goods or services contracted for;
>
> E. "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment:
>
>> (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

14

(2) results in a gross disparity between the value received by a person and the price paid.

61.    Defendants failed to deliver the quality or quantity of services applied for and purchased by Ms. Apodaca and other insureds by failing to provide insurance applications and policies containing sufficient information to fully inform a reasonably prudent person charged with the task of purchasing underinsured insurance, to which Ms. Apodaca was under the reasonable belief that such coverage existed, and to pay claims for insurance benefits sold and solicited by Defendants.

62.    Defendants, acting through their agents, adjusters, and employees, as set forth above, knowingly and willfully engaged in unfair trade practices in violation of Section 57-12-3, including but not limited to those subsections in Section 57-12-2(D)(7), (D)(l4), (D)(I5), (D)(17) and Section 57-12-2(E).

63.    Defendants' practices as described herein have resulted in actual damages, trebled, to Ms. Apodaca and the Class in an amount to be proven at trial, plus costs and reasonable attorney fees.

## COUNT III:
## VIOLATIONS OF THE NEW MEXICO UNFAIR INSURANCE PRACTICES ACT

64.    Ms. Apodaca re-alleges all previous paragraphs of this Complaint and incorporates the same as though set forth fully herein.

65.    There was in effect at all times material a State statute commonly known in the New Mexico Unfair Insurance Practices Act N.M.S.A.1978, §§ 59A–16–1 *et seq.* ("UIPA").

66.    Pursuant to N.M.S.A.1978, §§ 59A–16–30, the UIPA provides a right of action to any person covered by the UIPA who has suffered damages as a result of a violation of that article

by an insurer or agent and is granted a right to bring an action in district court to recover actual damages.

67.     Ms. Apodaca was insured under the policy issued and adjusted by Defendants.

68.     Defendants owed Ms. Apodaca the duties of good faith, fair dealing, and the accompanying fiduciary obligations.

69.     In the sale and provision of insurance, and in the handling of the underinsured motorist claim, Defendants failed to exercise good faith, unreasonably delayed payment, and failed to give the interests of its insured (Ms. Apodaca) the same consideration they gave their own interests.

70.     Defendants' failure to pay anything on Ms. Apodaca's underinsured motorist claims was unfounded, unreasonable, and in bad faith.

71.     Defendants misrepresented the terms of the policy sold and provided to Ms. Apodaca and other insureds, and/or failed to disclose material facts reasonably necessary to prevent other statements from being misleading; failed to implement and follow reasonable standards in the sale and provision of insurance; and failed to follow Defendants' own customary practices and procedures.

72.     Defendants' acts and failures to act were in reckless disregard of Ms. Apodaca's and other insureds' rights as an insured under the subject policy.

73.     Defendants' acts and practices took advantage of the lack of knowledge and experience of Ms. Apodaca and other insureds to a grossly unfair degree.

74.     Defendants failed to abide by their statutory duties under the UIPA, and such violations are negligence per se.

75.    Defendants misrepresented to its insureds, pertinent facts or policy provisions relating to coverages at issue, in violation of NMSA § 59A-16-20(A).

76.    Defendants failed to acknowledge and act reasonably and promptly upon communications with respect to claims from its insureds arising under the policy, in violation of NMSA § 59A-16-20(B).

77.    Defendants failed to adopt and implement reasonable standards for the prompt investigation and processing of their insured's claims arising under the policy, in violation of NMSA § 59A-16-20(C).

78.    Defendants failed to properly affirm and pay the coverage for claims of their insureds within a reasonable period of time after proof of loss requirements under the policy were completed and submitted by Ms. Apodaca, in violation of NMSA § 59A-16-20(D).

79.    Defendants did not attempt in good faith to effectuate prompt, fair and equitable settlement of Ms. Apodaca's claims in which liability has become reasonably clear, in violation of NMSA § 59A-16-20(E).

80.    Defendants compelled Ms. Apodaca to institute litigation to recover amounts due under the policies by offering substantially less (i.e. nothing) than the amounts claimed by Ms. Apodaca and that will ultimately be recovered in actions brought by Ms. Apodaca, in violation of NMSA § 59A-16-20(G).

81.    Defendants failed to promptly provide Ms. Apodaca with a reasonable explanation of the basis relied upon in the policy in relation to the facts and the applicable law for denial of her claims, in violation of NMSA § 59A-16-20(N).

82.    Defendants' failure to act in good faith and Defendants' violations of the UIPA are proximate causes of damages sustained by Ms. Apodaca.

83. Defendants' conduct was in bad faith, malicious, willful, wanton, fraudulent and/or in reckless disregard of Ms. Apodaca's rights.

84. Ms. Apodaca and other members of the Class are entitled to attorneys' fees and costs pursuant to §59A-16-30. As a direct and proximate result of Defendants' acts, omissions policies, and conduct in violating the UIPA, as set forth above, Ms. Apodaca and other members of the Class have sustained damages, in addition to the damages common to all counts of this Complaint, including but not limited to the actual damages incurred, the cost of prosecution of this lawsuit, attorneys' fees, and interest on the sums owed under the policy. These injuries and damages are ongoing, permanent, and are expected to continue in the future.

## COUNT IV:
## BREACH OF CONTRACT AND CLAIM FOR UNDERINSURED MOTORIST COVERAGE

85. Ms. Apodaca incorporates by reference the preceding paragraphs as though they were stated fully herein.

86. By issuing the policy in question to Ms. Apodaca, Defendants entered into a contract with Ms. Apodaca and entered into the same contractual obligations with each member of the Class Ms. Apodaca seeks to represent.

87. By undertaking the acts described above, Defendants have wrongfully and unlawfully failed to provide underinsured coverage and/or denied underinsured claims for benefits to Ms. Apodaca and other members of the Class.

88. By engaging in the conduct alleged herein, Defendants breached their contractual obligations to Ms. Apodaca and to the Class.

89. Pursuant to New Mexico law, and because of Defendants' breaches of their contractual obligations to Ms. Apodaca and to the Class, Ms. Apodaca and other members of the

Class are entitled to actual damages, including but not limited to, underinsured coverage in an amount equal to liability limits and may be entitled to payment of underinsured benefits, or payment of additional underinsured benefits accordingly and damages to Ms. Apodaca and the Class in an amount to be proven at trial.

## <u>COUNT V:</u>
## BREACH OF CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING

90.     Ms. Apodaca re-alleges all previous paragraphs of this Complaint and incorporates the same as though set forth fully herein.

91.     By issuing the policies to Ms. Apodaca and the Class, Defendants entered into a contract with Ms. Apodaca and the Class.

92.     Defendants failed to perform their obligations under that contract.

93.     Implicit in the contract of insurance between Ms. Apodaca and Defendants was the covenant that Defendants would, at all times, act in good faith and deal honestly and fairly with Ms. Apodaca.

94.     Defendants breached the implied covenant of good faith and fair dealing, in one or more of the following ways, including but not limited to:

    a.  Failing and refusing to acknowledge that the subject occurrence triggers the subject insurance policy;

    b.  Failing and refusing to disclose, admit and acknowledge coverage in this matter;

    c.  Failing and refusing to promptly and fairly investigate, process, determine and decide Ms. Apodaca's claims under the policy referenced above;

    d.  Denying coverage to its insured, Ms. Apodaca, under the policy;

    e.  Failing and refusing to cover its insured, Ms. Apodaca, under the underinsured motorist portion of the policy referenced above; and

f.   Failing and refusing to mediate, resolve, and settle Ms. Apodaca's underinsured

motorist claims.

95.    As a direct and proximate result Defendants' acts and omissions alleged herein, Ms.

Apodaca has suffered damages in an amount to be proven at trial.

96.    Defendants' acts and omissions alleged herein and breach of the implied covenant

of good faith and fair dealing were done intentionally, willfully, wantonly, grossly, maliciously

and/or with reckless disregard for the rights of Ms. Apodaca.  Accordingly, Ms. Apodaca and the

Class are entitled to recover punitive damages in an amount to be determined by the jury and

sufficient to punish Defendants for their misconduct and to deter others from similar conduct in

the future.

## COUNT VI:
## INJUNCTIVE RELIEF

97.    Ms. Apodaca incorporates by reference the preceding paragraphs as though they

were stated fully herein.

98.    Ms. Apodaca and the Class are entitled to injunctive relief requiring that Defendants

be enjoined from continuing practices that violate the duties, contractual, and legal obligations

owed to Ms. Apodaca and the Class.

99.    Defendants must be compelled to stop their practice of failing to provide

underinsured coverage benefits equal to the limits of liability coverage where they have failed to

fully inform their insureds throughout the application and policy underwriting process.

<u>**COUNT VII:**</u>
**DECLARATORY JUDGMENT**

100.    Ms. Apodaca incorporates by reference the preceding paragraphs as though they were stated fully herein.

101.    An actual controversy exists between the parties thereby rendering declaratory relief proper pursuant to FRCP 57 and 28 U.S.C. 2201, the Declaratory Judgment Act.

102.    Ms. Apodaca and the Class are entitled to a declaratory judgment establishing the respective rights and obligations of the parties with respect to the claims set forth herein.

<u>**COUNT VIII:**</u>
**PUNITIVE DAMAGES**

103.    Ms. Apodaca incorporates by reference the preceding paragraphs as though they were stated fully herein.

104.    Defendants' conduct in failing to provide their insureds with underinsured policy benefits in an amount sold and solicited was willful, wanton, and in reckless disregard of Ms. Apodaca's rights and the rights of the Class.

WHEREFORE, Ms. Apodaca on her own and on behalf of the Class prays for judgment, injunctive, and declaratory relief against Defendants as follows:

A.    Certifying this action as a class action pursuant to Rule l-023(A) & (B) NMRA;

B.    Awarding compensatory damages to Ms. Apodaca and the Class for the damages done to them by Defendants in an amount to be proven at trial;

C.    Awarding punitive damages to Ms. Apodaca and the Class in an amount sufficient to punish Defendants for their willful and wanton conduct, and to deter them, and others similarly situated, from such conduct in the future in an amount to be proven at trial;

D.    Awarding Ms. Apodaca and the Class damages from Defendants as a result of their violations of UIPA, in an amount to be determined at trial and for attorneys' fees and costs;

E.      Awarding treble damages in accordance with the UPA which will deter Defendants and others from such unfair trade practices and wrongful conduct in the future and will punish them or the conduct set forth in this Complaint;

F.      Granting a declaratory judgment that establishes the rights and obligations of the parties with respect to the claims set forth herein;

G.      Granting injunctive relief as may be deemed proper by the Court to require Defendants to desist in the wrongful actions described herein;

H.      Awarding Ms. Apodaca and the Class their costs and expenses incurred in this action, including reasonable attorneys' fees, experts' fees, and costs; and

I.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Yvonne Apodaca hereby demands trial by jury on all issues so triable.

Respectfully Submitted:

WILL FERGUSON & ASSOCIATES


By: */s/ Corinne L. Holt*
CORINNE L. HOLT
ADRIAN O. VEGA
1720 Louisiana Boulevard, N.E., Suite 100
Albuquerque, NM 87110
(505) 243-5566 Telephone
(505) 243-5699 Facsimile
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2018, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.


*<u>Corinne L. Holt</u>*
Corinne L. Holt