# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

YVONNE APODACA, on behalf of herself
and all others similarly situated,

      Plaintiff,

v.                                                 No. CIV 18-0399 RB/JHR

YOUNG AMERICA INSURANCE COMPANY,
LOYA INSURANCE COMPANY, and
EP LOYA GROUP, LP,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion of Defendants to Dismiss Plaintiff's First Amended Complaint, filed on August 6, 2018. (Doc. 14.) Jurisdiction arises under 28 U.S.C. § 1332. In this putative class action, Ms. Apodaca (Plaintiff) alleges that Defendants misrepresented the terms of her underinsured motorist coverage. Defendants argue that Plaintiff does not have standing to bring suit against either Loya Insurance Company (Loya) or EP Loya Group, LP (EP Loya), and that she has otherwise failed to state a claim. Having considered the submissions of counsel and the relevant law, the Court will **GRANT IN PART** the motion.

## I.   Background[1]

In 2017, Plaintiff sustained bodily injuries and damages to her car in an automobile accident with Mr. Ben Shriver. (Doc. 9 (Am. Compl.) at 3 ¶¶ 8, 10.) Mr. Shriver, who was arrested

---

[1] The facts are taken from the First Amended Class Action Complaint for Breach of Statutory, Common Law, and Contractual Duties (*see* Doc. 9 (Am. Compl.)), the exhibits attached to the original Complaint (*see* Doc. 1-1 at 41–44 (Ex. 1), 45 (Ex. 2), referenced in Am. Compl. ¶¶ 32–34), and the certified copy of Plaintiff's Insurance Policy and Declarations Page (Doc. 14-A), which Defendants attached to their motion. The Court accepts the allegations in the Amended Complaint as true and recites them in a light most favorable to Plaintiff.

for aggravated driving while under the influence, was at fault in the accident. (*Id.* ¶¶ 8, 11–12.) Plaintiff had an auto insurance policy with Young America Insurance Company (Young America). (*Id.* ¶¶ 15, 18; *see also* Doc. 14-1.) Plaintiff carried the New Mexico minimum auto insurance liability amounts, which provide bodily injury coverage of $25,000 per person and $50,000 per accident (25/50 coverage), and property damage coverage of $10,000. (Am. Compl. ¶ 23; *see also* Doc. 14-A at 1.) She had also purchased uninsured/underinsured (UM/UIM) motorist coverage in the same amounts. (Am. Compl. ¶ 23; *see also* Doc. 14-A at 1.)

Plaintiff "received the full extent of [bodily injury] liability coverage carried by [Mr. Shriver], $25,000.00." (Am. Compl. ¶ 17.) Plaintiff believed that she was also entitled to bodily injury coverage benefits from her own UM/UIM policy and filed a claim with Young America after the accident.[2] (Am. Compl. ¶¶ 30–31, 34.) Young America denied her claim for UM/UIM bodily injury coverage benefits, however, on the basis that it was "entitled to a full offset of [Mr. Shriver's] Policy payments." (*See* Doc. 1-1 at 45 (Ex. 2); *see also* Am. Compl. ¶ 34.)

When Plaintiff purchased the UM/UIM coverage, Young America told her that it would benefit her in the event of an accident with an underinsured driver. (*Id.* ¶ 24.) Plaintiff avers that Young America misrepresented information about the UM/UIM coverage, and that it knew or should have known that the 25/50 UM/UIM coverage was meaningless. (*Id.*) Young America failed to inform Plaintiff that, due to New Mexico's "offset" law, the 25/50 UM/UIM coverage would not necessarily result in a payment of benefits if triggered by an accident with a motorist who also has 25/50 coverage. (*See id.* ¶¶ 38, 40.) Additionally, Young America did not tell Plaintiff

---

[2] Plaintiff also received $7,559.87 in benefits from Mr. Shriver's property damage liability coverage. (*See* Doc. 1-1 at 45 (Ex. 2).) Plaintiff made a claim for property damage benefits with Young America and was offered $2,440.13, the amount due to her under her UM/UIM policy after Young America offset the amount she received from Mr. Shriver's policy. (*See id.*)

2

about premium costs for higher amounts of UM/UIM coverage or give her a fair opportunity to select a higher amount of coverage. (*Id.* ¶ 37.)

Plaintiff asserts that Defendants "worked together as a joint venture to sell automobile policies to New Mexico residents" and are "jointly and severally liable for the acts and resulting damages" alleged in her Amended Complaint. (*Id.* at 2 ¶ 10.) Plaintiff purports to bring this claim on behalf of herself and other New Mexico insureds "who have been deceived by Defendants' practices." (*Id.* ¶ 3.)

## II. Legal Standard

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). "To survive a motion to dismiss," the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

"[W]hile ordinarily, a motion to dismiss must be converted to a motion for summary judgment when the court considers matters outside the complaint, *see* Fed. R. Civ. P. 12(d), matters that are judicially noticeable do not have that effect . . . ." *Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Tr. 2006-3*, 825 F. Supp. 2d 1082, 1122 (D.N.M. 2011) (citing *Duprey v.*

*Twelfth Judicial Dist. Court*, 760 F. Supp. 2d 1180, 1192–93 (D.N.M. 2009) (internal citation omitted)).

> Exhibits attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss. . . . [F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record. However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein.

*Id.* at 1122–23 (quoting *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (internal quotation marks, alterations, and citations omitted)). Thus, the Court may consider the letter and Declarations pages Plaintiff attached to her Complaint and referenced in her Amended Complaint. (*See* Doc. 1-1 at 41–45 (Exs. 1, 2); Am. Compl. ¶¶ 32–34.)

The Court may also consider the insurance policy Young America attached to its motion to dismiss, as the policy "is referred to in the complaint and is central to the plaintiff's claim . . . ." *Radian Asset Assurance Inc. v. Coll. of the Christian Bros. of N.M.*, No. CIV 09-0885 JB/DJS, 2011 WL 10977180, at *17 (D.N.M. Jan. 24, 2011) (quotation and subsequent citations omitted). Young America submitted a certified copy of Plaintiff's insurance policy (*see* Docs. 14 at 2 n.1; 14-A), and Plaintiff cites to the exhibit without disputing its authenticity (*see* Doc. 21 at 16).

**III.   Analysis**

    **A.     Plaintiff fails to state a claim against Loya and EP Loya.**

Defendants contend that because Plaintiff's insurance contract is solely with Young America and she has not alleged a relationship with the other two defendants, she has failed to plead facts sufficient to confer standing to sue Loya or EP Loya. (Doc. 14 at 12–13.) Plaintiff argues that she has standing to sue because she alleges that Defendants are involved in a joint venture. (*See* Doc. 21 at 14–21.)

"In New Mexico, a party may be liable for the negligence of its joint venturers." *MS through Harris v. E. N.M. Mental Retardation Servs.*, No. CIV 13-628 RB-GBW, 2015 WL 13662789, at *15 (D.N.M. June 16, 2015) (citing *Schall v. Mondragon*, 393 P.2d 457, 460 (N.M. 1964)).

> A joint venture exists when two or more parties (1) enter into an agreement, (2) to combine their money, property or time in the conduct of some particular business deal, (3) agree to share in the profits and losses of the venture jointly, and (4) have the right of mutual control over the subject matter of the enterprise or over the property.

*Wilger Enters., Inc. v. Broadway Vista Partners*, 115 P.3d 822, 824–25 (N.M. Ct. App. 2005) (quotation omitted).

Plaintiff summarily concludes in her Amended Complaint that Defendants, who acknowledge that they are "members of the same corporate family"[3] (Doc. 14 at 13), "worked together as a joint venture to sell automobile policies to New Mexico residents, including" Plaintiff, and thus are "jointly and severally liable for the acts and resulting damages" alleged (Am. Compl. ¶ 10). In her response to Defendants' motion to dismiss, Plaintiff asserts that while she "does not yet have access to discovery . . . , a cursory look at [Defendants'] self-promotion indicates that some joint venture does, in fact, exist between" the three. (Doc. 21 at 15.) She goes on to describe certain indicators she found on Defendants' websites that purportedly support her legal theory, but the facts she discusses in her response are not detailed in the Amended Complaint. (*See id.* at 15–16.)

"While Rule 12(b)(6) does not require" Plaintiff to establish each element of her joint venture claim "at this stage of the litigation, reference to these elements is 'help[ful] to determine

---

[3] Young America "is wholly owned by Defendant Loya Insurance Group[,]" which is in turn "wholly owned by Defendant EP Loya Group, L.P." (Am. Compl. ¶¶ 8–9.)

5

whether [she has] set forth a plausible claim.'" *Hitch Enters., Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1266 (W.D. Okla. 2012) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (internal citations omitted)). In *Hitch Enterprises*, the district court found that the plaintiffs had failed to sufficiently plead that the defendants were engaged in a joint venture where the complaint alleged that one defendant "receive[d] the benefit of all of the revenue from its subsidiaries, . . . and that the defendants together receive[d] revenues and profits, . . . because they 'are the type of conclusory and formulaic recitations disregarded by the [Supreme] Court in *Iqbal*.'" *Id.* (quoting *Khalik*, 671 F.3d at 1193 (citing *Iqbal*, 129 S. Ct. at 1949)).

Similarly, in *MS through Harris*, the plaintiff alleged that two of the defendants (the Spencer Foundation and ENMRSH) shared "a number of officers and board members[,] . . . that the Spencer Foundation's Articles of Incorporation state[d] that it was organized exclusively for charitable and educational purposes including . . . the making of distributions to ENMRSH[,] . . . that the Spencer Foundation distributed just $47,000 to ENMRSH" from 2007–2011, and that "ENMRSH funneled funds and resources to the Spencer Foundation." 2015 WL 13662789, at *15 (internal quotation marks and citations omitted). Despite these allegations of "suspicious activity," the Court found that the plaintiff had "not sufficiently [pled] facts to support the conclusion that ENMRSH and the Spencer Foundation formed a joint venture." *Id.*

Here, unlike the plaintiffs in *Hitch Enterprises* and *MS through Harris*, Plaintiff fails to plead even a single fact in support of her conclusory contention that Defendants are engaged in a joint venture. (*See* Am. Compl.) Plaintiff cites to a number of cases to persuade the Court to deny Defendants' motion on this point, but all are inapposite. In *Dellaira v. Farmers Insurance Exchange*, 102 P.3d 111 (N.M. Ct. App. 2004), for example, the plaintiffs sued Farmers Insurance Company of Arizona (FICA) (the insurance company that issued their policy), as well as Farmers

6

Insurance Exchange (FIE) (the company that "directed, handled, administered, and adjusted all claims submitted by FICA's policy holders"). 102 P.3d at 112. "The district court entered a Rule 1-012(B)(6) NMRA dismissal on Plaintiffs' insurance bad faith, breach of contract, New Mexico Insurance Code, and New Mexico Unfair Practices Act claims against FIE" on the basis that FIE was not a party to the insurance contract. *Id.* at 112, 113. Plaintiffs appealed, and the Court of Appeals reversed the dismissal of all but the breach of contract claim.[4] *Id.* at 112. Plaintiff cites *Dellaira* for the proposition that the Court of Appeals did "not see any sound reason why New Mexico should not permit pursuit of [a claim for breach of the duty of good faith and fair dealing] where . . . an entity related to or pursuant to agreement with the insurer issuing the policy has control over and makes the ultimate determination regarding the merits of an insured's claim." (Doc. 21 at 17 (quoting *Dellaira*, 102 P.3d at 115).) But Plaintiff does not claim here that either Loya or EP Loya "controls the claim determination process" as FIE did in *Dellaira*. *See Dellaira*, 102 P.3d at 115.

The other two cases Plaintiff cites are inapplicable, as one was decided on summary judgment, and the other after trial. (*See* Doc. 21 at 18–19 (citing *Oliver v. Farmers Ins. Grp. of Cos.*, 941 P.2d 985, 986 (Okla. 1997) (decided on summary judgment); *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1130 (Ariz. 1982) (decided after trial)).) In neither case was the court called upon to determine whether the plaintiff had adequately pled a joint venture in the complaint.

Plaintiff's "general assertions of 'joint venture,' without any factual details whatsoever, are insufficient[,]" and the Court will dismiss Plaintiffs' claims against Loya and EP Loya. *See Hitch*

---

[4] The *Dellaira* district court also allowed the plaintiffs to file an amended complaint in order to add claims against the defendants "under theories of joint venture, civil conspiracy, and aiding and abetting." 102 P.3d at 113. The amended complaint proceeded to trial while the plaintiffs' appeal was pending, and those verdicts were not at issue in the opinion. *Id.*

7

*Enters.*, 859 F. Supp. 2d at 1266 (citations omitted).

      **B.**      **New Mexico statutory offset procedure for underinsured motorist coverage.**

State law "mandates that every motor vehicle policy include uninsured and underinsured motorist coverage for bodily injury or death and property damage." *Schwartz v. State Farm Mutual Auto. Ins. Co.*, No. 1:18-cv-00328-WJ-SCY, 2018 WL 4148434, at *3 (D.N.M. Aug. 30, 2018) (discussing N.M. Stat. Ann. § 66-5-301(A)). UM/UIM coverage is meant to protect insureds "against the hazard of culpable uninsured motorists.'" *Id.* (quoting *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 245 P.3d 1209, 1211 (N.M. 2010) (internal quotation omitted)). Like the state minimum auto insurance liability coverage level, the minimum UM/UIM coverage level is $25,000 per person and $50,000 per accident. *See id.* (citing N.M. Stat. Ann. §§ 66-5-215(A)(2)–(3); 66-5-301(C)). Insureds may purchase UM/UIM coverage in "an amount up to the liability amount in the policy" or may reject UM/UIM coverage altogether. *See id.* at *3–4 (citing N.M. Stat. Ann. § 66-5-301(C)).

"The state of being underinsured exists when the aggregate of the insured's uninsured motorist coverage reduced by the tortfeasor's liability coverage is greater than zero." *Id.* at *4 (quoting *Schmick v. State Farm Mutual Auto. Ins. Co.*, 704 P.2d 1092, 1099 (N.M. 1985)). "Thus, according to the New Mexico Supreme Court, underinsured motorist coverage does not exist where the tortfeasor carries the minimum liability amount of $25,000, and the insured has the same amount of uninsured motorist coverage." *Id.* (citing *Weed Warrior*, 245 P.3d at 1213) ("An insured carries UIM coverage only if the UM/UIM limits on her or his policy are greater than the statutory minimum of $25,000."). Consequently, the New Mexico Supreme Court in *Weed Warrior* required insurance companies to offer UM/UIM insurance at levels "greater than $25,000, reasoning that

8

an offer of underinsured motorist coverage at the minimum level is no offer at all." *Id.* (citing *Weed Warrior*, 245 P.3d at 1213).

C. **Plaintiff states a claim for negligent misrepresentation.**

Plaintiff brings a claim for "Negligence" in Count I, but the claim is more akin to negligent misrepresentation. To state a claim for negligent misrepresentation, Plaintiff must demonstrate that Young America "breached a duty of disclosure owed to" her, she "had a right to rely on the misinformation," and she sustained damages. *Id.* (quoting *Ruiz v. Garcia*, 850 P.2d 972, 977–78 (N.M. 1993) (internal and subsequent citations omitted)).

The plaintiff in *Schwartz* made an almost identical claim under similar circumstances.[5] There, the plaintiff was injured in a car accident with another motorist. *Id.* at *1. The other motorist carried bodily injury insurance at the 25/50 level, and the plaintiff carried UM/UIM coverage at the same level. *Id.* The plaintiff received $25,000 from the motorist's policy, but as her bodily injury damages exceeded that amount, she also sought benefits from her own insurance company. *Id.* As Ms. Apodaca did here, the *Schwartz* plaintiff brought claims for negligence, violations of

---

[5] *Schwartz* was published on the same day that Plaintiff filed her response to the motion to dismiss. Apparently, neither party stumbled across the case in the interim. Instead, the parties extensively discuss *Bhasker v. Kemper Cas. Ins. Co.*, 284 F. Supp. 3d 1191 (D.N.M. 2018). (*See* Docs. 14 at 10–11; 21 at 8–11; 25 at 4–5.) In *Bhasker*, a case with facts similar to those here and in *Schwartz*, Judge Browning held that the New Mexico Supreme Court "would conclude that the UM/UIM coverage [the plaintiff] purchased is illusory" because motorists are primarily benefited by the uninsured, rather than the underinsured benefits. 284 F. Supp. 3d at 1236, 1237 (citations omitted). The *Bhasker* Court largely based this conclusion on the same language in *Weed Warrior* that Chief Judge Johnson relied on to opine that the New Mexico Supreme Court would likely find that underinsured motorist coverage is nonexistent where both the tortfeasor and the motorist carry the minimum coverage levels. *See Schwartz*, 2018 WL 4148434, at *4 (citing *Weed Warrior*, 245 P.3d at 1213); *see also Bhasker*, 284 F. Supp. 3d at 1237 (citing *Weed Warrior*, 245 P.3d at 1212–13). Young America urges the Court to reject the ruling in *Bhasker*. (Doc. 14 at 10–11.)

The Court need not accept or reject that particular ruling in *Bhasker*. As discussed in this Opinion, the Court finds that Plaintiff has stated a claim based on negligent misrepresentation, which does not require the Court to find that the policy was illusory. Likewise, Judge Browning also found that the plaintiff sufficiently pled that the insurance company had "misled her about what the UM/UIM policy covered[,]" thus she had stated a claim even if the court had not found that the coverage was illusory. *Bhasker*, 284 F. Supp. 3d at 1238.

the Unfair Trade Practices Act (UPA) and Unfair Insurance Practices Act (UIPA), breach of contract and claim for motorist coverage, breach of contract and the covenant of good faith and fair dealing, injunctive relief, declaratory judgment, and punitive damages. *Compare* Am. Compl., *with Schwartz v. State Farm Mutual Auto. Ins. Co.*, No. 18-cv-0328 WJ-SCY, Doc. 1-2. The wording in the two complaints is virtually identical. *Compare*, *e.g.*, Am. Compl. ¶¶ 53–58, *with Schwartz*, No. 18-cv-328, Doc. 1-2 ¶¶ 59–64.

In New Mexico, "a negligent misrepresentation claim may sound between . . . an insurer and insured, in some circumstances." *Schwartz*, 2018 WL 4148434, at *4 (citations omitted). In denying State Farm's motion to dismiss with respect to the negligent misrepresentation claim, Chief Judge Johnson noted that the plaintiff had alleged that State Farm, which owed a duty of disclosure to the plaintiff, "misrepresented to her that she would benefit from the underinsured coverage when [it] should have known that the coverage was meaningless. In other words, [she] argue[d] that [State Farm] failed to inform her that the coverage she was purchasing would provide little to no coverage." *Id.* The court held that the plaintiff had "adequately pled sufficient facts to assert a plausible negligent misrepresentation claim." *Id.*

The same is true here. Plaintiff alleges that Young America owed her "a duty to ensure [that she] and other members of the class would be offered and obtain the maximum benefit of [UIM] coverage and would not be sold illusory [UIM] coverage." (Am. Compl. ¶ 54.) Plaintiff alleges that Young America "materially misrepresented the terms of [UIM] coverage" (*id.* ¶ 55) by telling her "that she would benefit from [UIM] coverage when [it] knew, or should have known, that the coverage was meaningless" (*id.* ¶ 24). Based on this misinformation, Plaintiff purchased the meaningless UIM coverage, sustaining monetary damages. (*Id.* ¶¶ 25, 58.)

Young America insists that [b]ecause Plaintiff received benefits under her combined UM/UIM coverage, . . . this coverage could not have been illusory as a matter of law." (Doc. 25 at 4 (citing *Emp'rs Fire Ins. Co. v. Berg*, 2007 WL 273559, at *4 (N.D. Ill. Jan. 25, 2007)); *see also* Doc. 14 at 6–7.) If Plaintiff had pled a claim based only on an illusory contract, then Defendant's argument may have merit. However, Plaintiff's "claims are not based on legal theories in which the coverage's 'illusory' nature is an element necessary to prove." *Bhasker*, 284 F. Supp. 3d at 1238. Instead, Plaintiff contends that despite the award of property damages she received, her UM/UIM policy did not provide the bodily injury coverage that she expected based on the information Young America presented. *See id.* Thus, even though Plaintiff did receive some value from the UM/UIM policy, that fact does not foreclose Plaintiff's claims that Young America "misled her about what the UM/UIM policy covered." *See id.*

Young America also contends that the coverage is not illusory, because Plaintiff might have received bodily injury benefits if the accident had involved other motorists. (*Id.* at 7–8.) Again, these arguments miss the point. The crux of Plaintiff's complaint lies in Young America's misrepresentations regarding the benefits she would receive in the event of an accident with another motorist who had the minimum level of automobile insurance coverage. Plaintiff does not simply attack the UM/UIM coverage, but how Young America frames that coverage when selling policies to its insureds. The Court finds that Plaintiff has plausibly pled a claim for negligent misrepresentation and will deny Young America's motion on this issue.

### D. Plaintiff states a claim for a violation of the UPA.

Plaintiff alleges that Young America has violated Sections 57-12-2(D) and (E) of the UPA. To state a claim under Section 57-12-2(D), Plaintiff must demonstrate that:

11

(1) [Young America] made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of [Young America's] business; and (4) the representation may, tends to, or does deceive or mislead any person.

*Schwartz*, 2018 WL 4148434, at *5 (quoting *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 621 (D.N.M. 2007) (internal and subsequent citations omitted)). Here, Plaintiff alleges that Young America, in selling her an insurance policy, knowingly made misleading statements regarding the benefits of the offered UM/UIM coverage. (Am. Compl. ¶¶ 23–25, 61–62.) Based on Young America's statements, Plaintiff purchased the policy. (*Id.* ¶ 25.) She also alleges that Young America did not offer her "a fair opportunity to . . . select a higher amount of underinsured coverage or reject such coverage altogether." (*Id.* ¶ 37.) "In other words, Defendant allowed her to pay a premium for minimum level underinsured motorist coverage, when she could have either rejected such coverage, or opted for higher coverage. These facts are sufficient to state a plausible claim for relief under" Section 57-12-2(D) of the UPA. *See Schwartz*, 2018 WL 4148434, at *6.

To state a claim under Section 57-12-2(E), Plaintiff must show: (1) she "'lacked knowledge, ability, experience, or capacity in credit consumption;' (2) '[Young America] took advantage of [her] deficits in those areas; and' (3) 'these practices took advantage of [Plaintiff] to a grossly unfair degree to [her] detriment.'" *Id.* (quoting *Tweed v. CitiMortgage, Inc.*, 2017 WL 7510687, at *4 (D.N.M. Apr. 24, 2017) (internal citations omitted)). As in *Schwartz*, Plaintiff alleges that Young America knowingly misrepresented that she would benefit from the minimum level UM/UIM coverage, it sold her the UM/UIM coverage it knew to be worthless, and it "knew that she had no knowledge that such coverage was worthless." *See id.* (citation omitted). (*See also* Am. Compl. ¶¶ 24, 26, 71.) These allegations are sufficient to state a claim under Section 57-12-2(E).

Young America does not argue that Plaintiff has not pled facts to state a claim under the UPA; rather, it argues that insurance coverage issued as required by state law, and with language and rates approved by the New Mexico Superintendent of Insurance, cannot be illusory. (*See* Docs. 14 at 8–10; 25 at 3.) Defendant cites cases out of California and South Dakota in which courts found that insurance contracts that complied with state law could not be found to be illusory. (Doc. 14 at 9–10 (citing *Fagundes v. Am. Int'l Adjustment Co.*, 2 Cal. App. 4th 1310, 1313 (1992); *Friesz ex rel. Friesz v. Farm & City Ins. Co.*, 619 N.W. 2d 677, 681 (S.D. 2000)).)[6] Yet Plaintiff does not argue that the policy is violative of state law, but that Young America made misrepresentations about the benefits she would receive when it sold her the policy.

Young America also contends that because it included reference to New Mexico's offset law in its policy, "Plaintiff is charged with knowledge of this statutory definition." (*Id.* at 11–12 (citing *Kuriyan v. N.M. Taxation & Revenue Dep't*, 2016 WL 7327695, at *5 (N.M. Ct. App. Nov. 15, 2016)).) As Chief Judge Johnson found in *Schwartz*, however, merely "reading the offset provision in the policy would not inform an insured that the underinsured motorist coverage she purchased at the minimum level would in fact have little to no value." *See Schwartz*, 2018 WL 4148434, at *6. The Court will deny Young America's motion on this issue.

E.  **Plaintiff states a claim for a violation of Section 59A-16-20(A) of the UIPA.**

The New Mexico UIPA, N.M. Stat. Ann. Sections 59A-16-1–30, "seeks to prohibit unfair or deceptive acts and practices in the insurance industry." *Id.* at *7 (quoting *Brule v. Blue Cross &*

---

[6] The defendant in *Schwartz* made a similar argument, which Chief Judge Johnson rejected. *See Schwartz*, 2018 WL 4148434, at *8 n.3. There, defendant cited *Friesz* and *Fagundes* to argue that "underinsured motorist coverage issued at mandatory minimum levels is not 'illusory.'" *Id.* As the Court finds here, however, Chief Judge Johnson rejected the argument because *Friesz* and *Fagundes* "dealt with claims that the underinsured motorist policy was an illusory term in a contract [,]" something that the *Schwartz* plaintiff had not claimed. *Id.*

13

*Blue Shield of N.M.*, 455 F. App'x 836, 840 (10th Cir. 2011)). "Insurance companies 'have a duty to disclose material facts about the policies they sell under the UIPA.'" *Id.* (quoting *Brule*, 455 F. App'x at 840 (internal citation omitted)). And both parties to an insurance contract "have a duty not to misrepresent or withhold information material to an insurance contract." *Id.* (quoting *Brule*, 455 F. App'x at 840 (internal citation omitted)). New Mexico law, therefore, "strongly encourages open and transparent dealings in the insurance context, particularly with regard to material information." *Id.* (quoting *Brule*, 455 F. App'x at 840) (subsequent citation omitted).

Plaintiff alleges that Young America violated the UIPA by:

(1) misrepresenting coverage issues to its insureds in violation of Section 59A-16-20(A);

(2) failing to promptly acknowledge and act on its insureds' claims in violation of Section 59A-16-20(B);

(3) failing to have reasonable standards for investigating and processing claims in violation of Section 59A-16-20(C);

(4) failing to "affirm and pay the coverage for claims . . . within a reasonable period of time after" Plaintiff submitted her proof of loss requirements in violation of Section 59A-16-20(D);

(5) failing to promptly and fairly settle Plaintiff's claims in violation of Section 59A-16-20(E);

(6) compelling Plaintiff to file a lawsuit to recover benefits owed under the policy in violation of Section 59A-16-20(G); and

(7) failing to provide Plaintiff "with a reasonable explanation of the basis relied upon in the policy . . . for denial of her claims" in violation of Section 59A-16-20(N). (Am. Comp. ¶¶ 76–81.)

Young America does not argue that Plaintiff has failed to plead facts sufficient to maintain a claim under the UIPA. (*See* Doc. 14.) As discussed above, Plaintiff has alleged facts sufficient to demonstrate that Young America misrepresented coverage issues contrary to Section 59A-16-

14

20(A). However, she has not pled any facts to establish that Young America failed to acknowledge her claim, failed to have reasonable standards for investigating or processing claims, failed to properly pay for her claim in a reasonable time, or failed to give her an explanation of the basis of its decision on her claim. Thus, the Court will grant Young America's motion with respect to the claims under Sections 59-16-20(B)–(D) and (N). Additionally, because Young America "followed the offset provision in both the policy and in NMSA § 66-5-301 in denying coverage[,]" and because it appears that Young America "in good faith believed that it did not have to pay anything under the underinsured motorist provision, based on the offset provision[,]" Plaintiff has failed to state a claim as a matter of law with respect to Sections 59-16-20(E) and (G). *See Schwartz*, 2018 WL 4148434, at *7 (citations omitted). Thus, the Court will deny Young America's motion with respect to Plaintiff's claim under Section 59A-16-20(A), and grant the motion with respect to the remainder of Plaintiff's claims under the UIPA.

### F. Plaintiff fails to state a claim for breach of contract.

To sustain a claim for breach of contract in New Mexico, a plaintiff must show "the existence of a contract, breach of the contract, causation, and damages." *See id.* at *8 (quoting *Abreu v. N.M. Children, Youth & Families Dep't*, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011) (internal citation omitted)). Plaintiff has not pled facts to show that Young America breached the parties' contract. Instead, it appears that Young America complied with the contract in paying only property damage benefits.

"Rather than seeking a remedy for a breach, it appears that Plaintiff seeks to somehow get around the offset provision, so that Defendant is forced to pay the full $25,000 underinsured motorist coverage." *See id.* The Court will grant Young America's motion as to Count IV.

### G. Plaintiff fails to state a claim for a violation of the covenant of good faith and fair dealing.

"[E]very contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract." *Id.* at *9 (quoting *WXI/Z Sw. Malls v. Mueller*, 110 P.3d 1080, 1087 (N.M. Ct. App.), *cert. denied*, 112 P.3d 1111 (N.M. 2005) (internal quotations omitted)). Specifically, New Mexico recognizes an obligation between parties to an insurance contract to act in good faith. *See id.* (citations omitted). "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." *Id.* (quoting *Watson Truck & Supply Co., Inc. v. Males*, 801 P.2d 639, 642 (N.M. 1990) (internal quotations omitted)).

In Count V, Plaintiff bases a claim for a breach of the covenant of good faith and fair dealing on similar grounds as her breach of contract claim. (*See* Am. Compl. ¶¶ 90–96.) In short, she asserts that Young America breached the covenant by denying coverage of UM/UIM benefits. (*See id.*) The claim fails for the same reason her breach of contract claim fails—Plaintiff has not shown that Young America breached a term of the contract or otherwise deprived her of the benefits of the agreement. While she has pled sufficient facts to argue that Young America misrepresented facts that she relied on in entering into the agreement, this does not necessarily mean she was deprived of the benefit of the agreement itself. Thus, the Court will grant Defendant's motion on this issue.

### IV. Conclusion

For the reasons stated in this Opinion, the Court will dismiss all of Plaintiff's claims against Defendants Loya and EP Loya. The Court will also dismiss Plaintiff's claims against Young America in Count III (violations of N.M. Stat. Ann. Sections 59-16-20(B)–(E), (G), and (N)),

16

Count IV (breach of contract), and Count V (breach of the covenant of good faith and fair dealing). The Court will deny the remainder of the motion to dismiss.

Plaintiff may file a Second Amended Complaint in this matter no later than **January 28, 2019**.

**THEREFORE,**

**IT IS ORDERED** that the Motion of Defendants to Dismiss Plaintiff's First Amended Complaint (Doc. 14) is **GRANTED IN PART** as described in this Opinion;

**IT IS FURTHER ORDERED** that Plaintiff may file a Second Amended Complaint no later than **January 30, 2019**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE